IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EVERTON BAILEY,

                        Plaintiff,

                                      Civ. Action No.
                                      9:09-CV-0742 (GLS/DEP)

     v.

C.O. M. FORTIER,

                        Defendant.

_____

APPEARANCES:                  OF COUNSEL:

FOR PLAINTIFF:

EVERTON BAILEY, *pro se*
60433066
M.D.C. Brooklyn
P.O. Box 329002
Brooklyn, NY 11232

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN     CHARLES E. ROBERTS, ESQ.
United States Attorney              Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7168

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

Plaintiff Everton Bailey, a federal prison inmate who is proceeding *pro se* and *in forma pauperis*, has commenced this *Bivens*[1] action against a corrections officer stationed at the facility in which he was housed at the relevant times, alleging deprivation of his civil rights. In his complaint, Bailey alleges that the defendant failed to protect him from an assault by a cellmate despite prior complaints expressing fear for his safety.  As relief, plaintiff's complaint seeks $1 million compensatory damages, as well as punitive damages in the additional sum of $50,000.

Currently pending before the court in connection with the action are two separate motions.  In response to plaintiff's complaint defendant has moved for either dismissal of his claims for failure to state a cause of action or, alternatively, for summary judgment, arguing that they are procedurally barred based upon his failure to exhaust available administrative remedies. In addition to opposing that motion plaintiff has moved for leave to amend his complaint, seeking to add the prison facility itself as a named defendant in the case.

---

[1]     *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

2

Having carefully considered defendant's motion, which has been treated as one for summary judgment, I recommend that it be denied based upon my finding that material issues of fact preclude resolution of the exhaustion defense at this procedural juncture.  I also recommend that plaintiff's motion for leave to amend be denied as futile, since in his amendment plaintiff seeks to add as a defendant a party that is not amenable to suit.

I.   BACKGROUND[2]

Plaintiff is a federal prison inmate within the custody of the United States Bureau of Prisons ("BOP") as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania.  *See generally* Plaintiff's Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 4) ¶ 5.  While he is presently housed in another BOP facility, at the times relevant to his claims Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York.  *Id.*

---

[2]     In light of my recommendation that defendant's motion be treated as seeking the entry of summary judgment, the following recitation is derived from the record now before the court with all inferences drawn and ambiguities resolved in plaintiff's favor.  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).

3

On the morning of February 23, 2009, while housed in a six person cell in the Mohawk Housing Unit at FCI Ray Brook, plaintiff was assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil.  Complaint (Dkt. No. 1) ¶¶ 8-9; *see also* VanWeelden Decl. (Dkt. No. 10-4) Exh. D.  Plaintiff reported the incident to defendant Fortier, a corrections officer at the facility, and requested that he be moved to another cell.  Complaint (Dkt. No. 1) ¶ at 10.  The request was denied, and plaintiff was directed by Corrections Officer Fortier to return to his cell for inmate count.  *Id*. at ¶ 11.

Following the inmate count, plaintiff again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto plaintiff's face.  Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10-4) Exh. D.  As a result of the incident plaintiff suffered second degree burns to his face, requiring hospitalization at an outside medical facility for extensive treatment. Complaint (Dkt. No. 1) ¶¶ 13-14.  According to the plaintiff, there were no corrections officers present in his cell unit at the time of the assault.  *Id.*

II.   <u>PROCEDURAL HISTORY</u>

4

Plaintiff commenced this action on June 29, 2009.  Dkt. No. 1.

Plaintiff's complaint identifies Corrections Officer M. Fortier as the sole

named  defendant and asserts claims against her based upon the failure to

protect him from known harm.  *Id*.

On January 8, 2010, prior to answering, defendant moved to dismiss

plaintiff's complaint for failure to state a claim upon which relief may be

granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

or, alternatively, for summary judgment pursuant to Rule 56.  Dkt. No. 10.

The sole basis for defendant's motion is her contention that plaintiff is

precluded from pursuit of his claim based upon his failure to exhaust

available administrative remedies before commencing suit, as required

under 42 U.S.C. § 1997(e)(a).  Defendant's motion was met, on January

27, 2010, with a response in opposition from the plaintiff, as well as a

separate motion for leave to amend his complaint to add FCI Ray Brook as

a named defendant.  Dkt. Nos. 11, 12.  Defendant has since submitted

papers opposing plaintiff's motion for leave to amend, Dkt. No. 13, and

additionally has filed a reply in response to plaintiff's opposition to the

original motion and in further support of that application.  Dkt. No. 16.

The parties' motions, which are now fully briefed and ripe for determination, have been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

    A.   Standards of Review

        1.   Motions to Dismiss

A motion to dismiss a complaint, brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, calls upon a court to gauge the facial sufficiency of that pleading, utilizing as a backdrop a pleading standard which, though unexacting in its requirements, "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation" in order to withstand scrutiny.  *Ashcroft v. Iqbal*, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)).  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  While modest in its requirement, that rule commands that a

complaint contain more than mere legal conclusions; "[w]hile legal

conclusions can provide the framework of a complaint, they must be

supported by factual allegations." *Ashcroft,* 129 S.Ct. at 1950.

To withstand a motion to dismiss, a complaint must plead sufficient

facts which, when accepted as true, state a claim which is plausible on its

face. *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (citing

*Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974). As the Second Circuit has

observed, "[w]hile *Twombly* does not require heightened fact pleading of

specifics, it does require enough facts to 'nudge [plaintiffs'] claims across

the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502

F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at

1974).

In deciding a Rule 12(b)(6) dismissal motion, the court must accept

the material facts alleged in the complaint as true and draw all inferences in

favor of the non-moving party. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.

Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292,

300 (2d Cir. 2003), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003);

*Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).

The burden undertaken by a party requesting dismissal of a complaint under Rule 12(b)(6) is substantial; the question presented by such a motion is not whether the plaintiff is likely ultimately to prevail, "'but whether the claimant is entitled to offer evidence to support the claims.'" *Log On America, Inc. v. Promethean Asset Mgmt. L.L.C.*, 223 F. Supp.2d 435, 441 (S.D.N.Y. 2001) (quoting *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir. 1995)) (citations and quotations omitted).

When assessing the sufficiency of a complaint against this backdrop, particular deference should be afforded to a *pro se* litigant whose complaint merits a generous construction by the court when determining whether it states a cognizable cause of action. *Erickson v. Pardus*, 551 U.S. 89, 94 127 S. Ct. 2197, 2200 (2007) ("'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976) (internal quotations omitted)); *Davis v. Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (citation omitted); *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (Hurd, J.).  In the event of a perceived deficiency in a *pro se* plaintiff's complaint, a court should not dismiss

without granting leave to amend at least once if there is any indication that a valid claim might be stated.  *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir.1991); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

Additionally, it is appropriate "to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint." *Hale v. Rao,* 2009 WL 3698420, at *3 (N.D.N.Y. 2009) (Hurd, D.J. and Lowe, M.J.) (citing *Gadson v. Goord,* 1997 WL 714878, at *1, n. 2 (S.D.N.Y. 1997)).[3]  However, this special leniency "does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12."  *Hale,* 2009 WL 3698420, at *3 (citing *Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir. 2008)).

## 2.   Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is

---

[3]     Copies of all unreported decisions have been appended for the convenience of the *pro se* plaintiff.

warranted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477

10

U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.  Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  The entry of summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party.  *See Building*

*Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d

Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S.

Ct. at 2511 (summary judgment is appropriate only when "there can be but

one reasonable conclusion as to the verdict").

     B.    <u>Exhaustion of Administrative Remedies</u>

     The sole basis for defendant's motion is her assertion that according

to BOP records, and by his own admission, plaintiff never availed himself

of the established BOP protocol for grieving the matter which forms a

basis for the claims now raised.

     The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), which imposes several restrictions on the

ability of prisoners to maintain federal civil rights actions, expressly

requires that "[n]o action shall be brought with respect to prison conditions

under section 1983 of this title, or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such

administrative remedies as are available are exhausted."  42 U.S.C. §

1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382

(2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6

12

(E.D.N.Y. Jan. 31, 2007).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532, 122 S. Ct. 983, 992 (2002) (citation omitted).   In the event a defendant named in such an action establishes that the inmate plaintiff has failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).[4]

---

[4]     While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 (2d Cir. 2004) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA,

the Second Circuit has crafted a three-part test for determining whether

dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy

the PLRA's exhaustion requirement.[5]  *Macias,* 495 F.3d at 41; *see*

*Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the

prescribed algorithm, a court must first determine whether administrative

remedies were available to the plaintiff at the relevant times.  *Macias,* 495

F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was

---

[5]     In *Macias*, which like this action involved claims brought by a federal prison inmate construed as asserting an Eighth Amendment cause of action under *Bivens*, as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.*, defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon plaintiff's failure to exhaust available administrative remedies. *Macias*, 495 F.3d at 40.  Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that while a prisoner may have substantively exhausted remedies by making informal complaints regarding the conditions at issue, the PLRA, as illuminated by *Woodford*, 548 U.S. 81, 126 S. Ct. 2378*,* requires proper procedural exhaustion through the available grievance channels. *Id.* at 41.  The court left open, however, the possibility that notwithstanding the Supreme Court's decision in *Woodford*, a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred the compliance with the PLRA exhaustion requirements, including under *Hemphill*.  *Id.* at 44-45.  The court in *Macias* also noted that the plaintiff did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules.  *See Amador v. Superintendents of Dep't of Correctional Serv.*, No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec. 4, 2007).  It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry.  *Id.* at *7.

available, the court must next examine whether the defendants have

forfeited the affirmative defense of non-exhaustion by failing to properly

raise or preserve it or whether, through their own actions preventing the

exhaustion of plaintiff's remedies, they should be estopped from asserting

failure to exhaust as a defense. *Macias,* 495 F.3d at 41; *Hemphill,* 380

F.3d at 686. In the event the proffered defense survives these first two

levels of scrutiny, the court lastly must examine whether special

circumstances nonetheless exist and "have been plausibly alleged" to

justify the plaintiff's failure to comply with the applicable administrative

procedural requirements.[6] *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at

686.

    1)   <u>Availability of Remedy</u>

The BOP has established an administrative remedy procedure

whereby inmates can seek formal review of any complaint regarding any

aspect of their imprisonment through a four-step procedure set forth in the

agency's Administrative Remedy Program ("ARP"). VanWeelden Decl.

(Dkt. No. 10-4) ¶ 7; *see also Macias,* 495 F.3d at 42; *see* 28 C.F.R. § 542.

---

[6]     In practicality these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap. *See Hargrove*, 2007 WL 389003, at *8 n.14; *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

The purpose of the ARP is to provide inmates with the procedure to seek formal review of an issue relating to any aspect of his/her confinement.  28 C.F.R. § 542.10(a).  In accordance with the established procedures, an inmate must first attempt informal resolution of his or her complaint by presenting the issue formally to staff, and staff must attempt to resolve the issue.  28 C.F.R. § 542.13(a); *see also Johnson*, 380 F.3d at 693.  If the complaint cannot be resolved informally, the inmate may submit a formal written Administrative Remedy Request to the Warden, on the appropriate form (BP-9), within twenty calendar days of the event that generated the inmate's complaint.  28 C.F.R. § 542.14(a).  If the inmate's formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director on the appropriate form (BP-10), again within twenty calendar days of the date the grievance was denied by the facility Warden. 28 C.F.R. § 542.15(a); *see also Johnson*, 380 F.3d at 693.  An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office on the appropriate form (BP-11), within twenty calendar days of the date of the Regional Director's response.  28 C.F.R. § 542.15(a).  Complete exhaustion has not occurred, for purposes of the

PLRA, until all of the foregoing steps have been taken.  *Macias*, 495 F.3d

at 44; *see also Johnson v. Rowley*, 569 F.3d 40, 45 (2d Cir. 2009); *Strong*

*v. Lapin*, No. 90-CV-3522, 2010 WL 276206, at *4 (E.D.N.Y., 2010) ("Until

the BOP'S Central Office Considers the appeal, no administrative remedy

is considered to be fully exhausted.").

.       Both plaintiff's complaint and the additional submissions of the parties

firmly establish that plaintiff failed to file and pursue an ARR under the

BOP's ARP with regard to the events of February 23, 2009.

> 2)      Presentation of Defense/Estoppel

The focus of the second prong of the *Hemphill* analysis is upon

"whether the defendants may have forfeited the affirmative defense of non-

exhaustion by failing to raise or preserve it, or whether the defendants' own

actions inhibiting the inmate's exhaustion of remedies may estop one or

more of the defendants from raising the plaintiff's failure to exhaust as a

defense."  *Hemphill,* 380 F.3d at 686 (citations omitted).

It should be noted that courts are generally hesitate to dispose of the

exhaustion defense on a motion to dismiss, and ordinarily will dismiss a

complaint at that stage only if it is patently clear from the face of plaintiff's

complaint that exhaustion has not occurred and there is no basis to excuse

PLRA exhaustion requirement. *Torrence v. Pesanti*, 239 F. Supp.2d 230,

231-232 (D. Conn. 2003).

Viewing this second element first from the perspective of defendant's

dismissal motion highlights the pitfalls associated with resolving the

exhaustion defense on such a motion.  In his complaint, the contents of

which must be accepted as true, with all inferences drawn in his favor,

Bailey asserts that he attempted to exhaust administrative remedies by

requesting BP-8, BP-9, BP-10, and BP-11 forms from his counselor, who

refused to provide the necessary forms.  Complaint (Dkt. No. 1) ¶ 6.  The

plaintiff's allegations regarding the failure of prison officials to provide him

with requested grievance forms would seem to present a question of

whether the second prong of the *Hemphill* analysis would apply and excuse

exhaustion.

A potentially different result obtains with regard to the issue when the

full record now before the court is considered against the backdrop of the

applicable summary judgment standard.  Looking to the submissions

received from both parties, however, it nonetheless seems clear that issues

of material fact exist regarding plaintiff's entitlement to a *Hemphill* exemption, and whether the plaintiff can convince a reasonable factfinder that grounds exists to excuse the exhaustion requirement in this case. Plaintiff claims to have requested the requisite forms for pursuing a grievance from his counselor, identified as a Mr. Snyder.  Complaint (Dkt. No. 1) ¶ 6.  Defendant's submissions confirm that ordinarily inmates are directed to seek grievance forms from their counselors and that at the relevant times plaintiff's counselor was Hawley Snyder.  VanWeelden Decl. (Dkt. No. 10-4) ¶ 12.

The defendant responds that even if plaintiff was denied the necessary forms for filing and pursing his grievance, however, other avenues for raising his grievance were available to him.  *See id.*  According to Robin VanWeelden, a legal assistant at the facility, members of plaintiff's unit team as well as department heads make regular rounds within the special housing unit ("SHU") where the plaintiff was housed at the relevant times for the purpose of addressing inmate concerns, and plaintiff could have requested the requisite grievance forms from any of those staff members.  *Id.*  Ms. VanWeelden also states that in her capacity as a legal

assistant, she made weekly rounds within the SHU, but at no time during any of those rounds did plaintiff raise the issue with her request grievance forms.  VanWeelden Decl. (Dkt. No. 10-4) ¶ 12.

In her declaration Legal Assistant VanWeelden goes on to note that in addition to these avenues plaintiff had other recourse, including to submit an informal "cop-out" or "request to staff" with any staff member, raising any issue, but did not do so.  *Id.* at ¶ 14.  In addition, plaintiff could have filed a "sensitive" request with prison officials in the event of his belief that his safety and well-being was in jeopardy, but once again did not do so.  *Id.* at ¶ 15.

In response to these assertions, plaintiff states he asked various staff members at the facility, including the warden, for the necessary grievance forms but was advised that it was his counselor who should supply them. *See* Bailey Decl. (Dkt. No. 11) p. 2.   Plaintiff also notes that cop-out forms are not available to inmates confined within the SHU.  *Id.*

Given these circumstances, however skeptical the court may be that plaintiff ultimately will be able to establish that through the actions of prison officials at FCI Ray Brook he was unable to perfect and pursue a grievance

regarding the claims now raised in the action, particularly in the face of the statements set forth in the declaration of Legal Assistant VanWeelden, it is plain that there exist genuine issues of material fact as to whether plaintiff was precluded by the actions of prison officials from pursuing a grievance in this matter.  Such a dispute may only be resolved by a jury at trial. [7]

Accordingly, I recommend against the granting of defendant's motion for summary judgment on this element of the tripartite exhaustion test.

### 3)    Special Circumstances

The third, catchall factor that must be considered here under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies.  *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676-77;

---

[7]    Some courts have taken the position that the actual issues surrounding the defense of failure to exhaust should properly be determined by the court, rather than by a jury. *See, e.g., Amador,* 2007 WL 4326747, at *5 n. 7 (examining cases). There does not appear to be any cogent basis, however, to distinguish failure to exhaust from other affirmative defenses including, for example, statute of limitations, which are often presented to juries or decided by the court based upon a jury's resolution of critical fact disputes.  Accordingly, when questions of fact exist regarding failure to exhaust, summary judgment is not appropriate, and the court should not engage in factfinding in order to address the defense. *Miller v. Covey,* No. 9:05-CV-649, 2007 WL 952054, at *2 (N.D.N.Y. Mar. 29, 2007) (Kahn, D.J. and DiBianco, M.J.) (citing *Pendergrass v. Sanney,* No. 01 CV 243A, 2004 WL1946458, at *2 (W.D.N.Y. Aug. 18, 2004)).

*Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially

qualifying as "special" under this prong of the test is where a plaintiff's

reasonable interpretation of applicable regulations regarding the grievance

process differs from that of prison officials and leads him or her to conclude

that the dispute is not grievable.  *Giano*, 380 F.3d at 676-77; *see also*

*Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).  Special

circumstances may also exist when a facility's "[f]ailure to provide

grievance deposit boxes, denial of forms and writing materials, and a

refusal to accept or forward plaintiff's appeals-which effectively rendered

the grievance process unavailable to him."  *Murray v. Palmer,* 2010 WL

1235591, at *6 (N.D.N.Y. Mar. 31,2010) (Suddaby, D.J.) (quoting *Sandlin v.*

*Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y. 2008) (noting that "[s]uch facts

support a finding that defendant's are estopped from relying on exhaustion

defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

    For the same reasons as were articulated with regard to the second

*Hemphill* factor, consideration of the record now before the court discloses

the existence of questions of fact concerning whether the special

circumstances prong should also apply to excuse the requirement of exhaustion in this case.

D.    Plaintiff's Motion to Amend the Complaint

Plaintiff seeks leave to amend his complaint to add FCI Ray Brook as a named defendant.  Defendant opposes plaintiff's motion, arguing that any claim against that entity would be futile.

Motions for leave to amend are governed by Rule 15(a) of the Federal Rules of Civil Procedure which provides, in pertinent part, that unless amendment as a matter of right is permitted based upon the circumstances – a circumstance that does not exist in this action – a party may amend its pleading "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a).  Under Rule 15(a), leave to amend ordinarily should be liberally granted absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Elma RT v. Landesmann Int'l Mktg. Corp.,* No. 98 CIV. 3662, 2000 WL 297197, at *3 (S.D.N.Y. Mar. 22, 2000) (citing *Foman*).

Notwithstanding the familiar and well-accepted precept that leave to amend should be granted freely and is typically permitted, if a claim contained in a proposed amended complaint would be vulnerable in the face of a Rule 12(b)(6) motion then permitting amendment would be an act of futility which should not be sanctioned.  *See, e.g., Saxholm AS v. Dynal, Inc.,* 938 F. Supp. 120, 124 (E.D.N.Y. 1996); *In re Boesky Sec. Litig.,* 882 F.Supp. 1371, 1379 (S.D.N.Y. 1995).  "In considering whether to grant a motion for leave to amend, the court may properly take into account the futility associated with the newly added claims or defenses."  *Clarke v. Max Advisors, LLC,* 235 F. Supp.2d 130, 151 (N.D.N.Y. 2002) (citing *Foman,* 371 U.S. at 182, 83 S. Ct. at 230).  "Quite sensibly, a court may properly deny leave to amend when the claim or defense sought to be added would not withstand a likely motion to dismiss for failure to state a legally cognizable claim or defense."  *Clarke,* 235 F. Supp.2d at 151 (citing *Lucente v. International Business Machines Corp.,* 310 F.3d 243, 259 (2d Cir. 2002)).  If, on the other hand, a proposed claim sets forth facts and circumstances which may entitle the pleader to relief, then futility is not a proper basis on which to deny the right to amend.  *Saxholm*, 938 F. Supp.

at 124 (citing *Allstate Ins. v. Administratia Asigurarilor De Stat,* 875 F.Supp. 1022, 1029 (S.D.N.Y. 1995) and *Mathon v. Marine Midland Bank, N.A.,* 875 F. Supp. 986, 1003 (E.D.N.Y. 1995) (leave to replead granted where court could not say that under no circumstances would proposed claims provide a basis for relief)).

To determine futility "a proposed amendment should be reviewed under a standard analogous to the standard of review applicable to a motion brought under Rule 12(b)(6)."  *Oneida Indian Nation of New York State v. County of Oneida, N.Y.,* 199 F.R.D. 61, 88 (N.D.N.Y. 2000) (McCurn, S.D.J.) (citing *Rotter v. Leahy,* 93 F. Supp.2d 487, 496 (S.D.N.Y. 2000)).  Additionally, "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered in a motion to amend."  *Lerman v. Chuckleberry Publishing, Inc.,* 521 F.Supp. 228, 231 (S.D.N.Y. 1981) (citing *Nyscoseal Inc. v. Parke, Davis & Co.,*  28 F.R.D. 24, 25 (S.D.N.Y. 1961), *rev'd on other grounds, sub nom., Lerman v. Flynt Distributing Co., Inc.*, 745 F.2d 123 (2d Cir. 1984)).

Plaintiff's effort to assert claims against FCI Raybook, an entity which in reality is a prison facility operated by the BOP, an agency of the federal government, implicates questions of sovereign immunity. *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 71-72, 122 S. Ct. 515, 522 (2001). While the United States has waived its sovereign immunity under certain circumstances, those circumstances are limited and, in an instance such as this, depends upon compliance with the Federal Tort Claims Act ("FTCA"). *See Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 217-18, 128 S. Ct. 831, 835 (2008).  It is well established that while a *Bivens* action may be brought against an individual federal employee, such a claim may not be asserted against the officer's employee, whether the United States or an agency such as the BOP.  *See F.D.I.C. v. Meyer,* 510 U.S. 471, 485-86, 114 S.Ct. 996, 1005-06 (1994).

Since plaintiff's putative claim against FCI Ray Brook is in reality one brought against the BOP, a federal agency, the proposed amendment is futile, and his motion for leave to amend should be denied on this basis.[8]

---

[8]     Ordinarily motions for leave to amend are viewed as non-dispositive and fall within my non-consensual jurisdiction based upon this court's standard referral practices.  *Cusamano v. Sobek*, 604 F. Supp.2d 416, 508-09 N.D.N.Y. 2009) (citing *Marsh v. Sheriff of Cayuga County*, 26 Fed. App'x 10, 11 (2d Cir. 2002)).  In this instance, however, I have chosen to format my ruling with regard to plaintiff's motion as a report and recommendation in light of the fact that it is accompanied by a dispositive

IV.   <u>SUMMARY AND RECOMMENDATION</u>

While defendant has sought the dismissal of plaintiff's complaint for failure to exhaust available administrative remedies, genuine issues of material fact exist as to whether plaintiff was precluded by the actions of prison personnel from fulfilling his exhaustion obligation.  It is therefore inappropriate to address and resolve the defense at this early procedural juncture.  Turning to plaintiff's motion for leave to amend, because the proposed addition of FCI Ray Brook and the assertion of claims against that entity would, in effect, be the equivalent of raising claims against the United States, plaintiff's proposed amendment is futile, and his motion for leave to amend should be denied on this basis.

It is therefore hereby respectfully

RECOMMENDED, that defendants' motion to dismiss, or in the alternative for summary judgment (Dkt. No. 10) be DENIED, and that plaintiff's motion to amend his complaint (Dkt. No. 12) be DENIED;

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed

---

motion brought by the defendant and requiring the issuance of a report and recommendation.

27

with the Clerk of the Court within FOURTEEN days of service of this report.

FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d),

72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this court's

local rules.

Dated:  August 30, 2010
        Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

28



Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
John HALE, Plaintiff,
v.
Jadow RAO; J. Ireland; Mack/s/Revell; R. Furnia; J.
Silver; John Doe # 1; John Doe # 2; Jane Doe # 1; Jane
Doe # 2; Jane Doe # 3; and Jane Doe # 4, Defendants.
**No. 9:08-CV-612.**

Nov. 3, 2009.

John Hale, Alden, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General of the State of
New York, Richard Lombardo, Esq., Asst. Attorney
General, of Counsel, Albany, NY, for Defendants.

***DECISION and ORDER***

DAVID N. HURD, District Judge.

**\*1** Plaintiff, John Hale, brought this civil rights action in
March 2008, pursuant to 42 U.S.C. § 1983. By
Report-Recommendation dated September 29, 2009, the
Honorable George H. Lowe, United States Magistrate
Judge, recommended that defendants' motions to dismiss
(Docket No. 27) be granted in part and denied in part as
follows: (1) the motion to dismiss should be granted to the
extent that plaintiff asserts claims for money damages
against defendants in their official capacities; and (2) the
motion should be denied to the extent that defendants
moved to dismiss plaintiff's Eighth Amendment claim
against defendant Rao, and moved to dismiss the
complaint against defendant Rao on the ground of
qualified immunity. The Magistrate Judge further
recommended that the motion to dismiss for failure to

prosecute, or in the alternative for an order compelling
plaintiff's responses (Docket No. 36), be denied. No
objections to the Report-Recommendation have been filed.

Based upon a careful review of the entire file and the
recommendations of Magistrate Judge Lowe, the
Report-Recommendation is accepted and adopted in all
respects. *See* 28 U.S.C. 636(b) (1).

Accordingly, it is

ORDERED that

1. Defendants' motion to dismiss (Docket No. 27) is
GRANTED IN PART and DENIED IN PART;

   a. The motion to dismiss is GRANTED to the extent
that plaintiff asserts claims for money damages against
defendants in their official capacities; and

   b. The motion is DENIED to the extent that
defendants moved to against defendant Rao on the
ground of qualified immunity;

2. Defendants' motion to dismiss for failure to prosecute,
or in the alternative, for an order compelling plaintiff's
responses (Docket No. 36) is DENIED;

3. This matter is referred back to the Magistrate Judge for
any further proceedings.

IT IS SO ORDERED.

***REPORT-RECOMMENDATION AND ORDER***

GEORGE H. LOWE, United States Magistrate Judge.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.

Currently pending is a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(c), seeking dismissal of the complaint in its entirety against Defendant Dr. Jadow Rao and against Defendants J. Ireland, R. Furnia, Mack Reyell, J. Silver, and Rao in their official capacities. Dkt. No. 27. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

Also pending is a Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. Dkt. No. 36. Plaintiff opposes the motion. Dkt. Nos. 39, 41.

For the reasons discussed below, I recommend that the Motion to Dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) be granted, in part, and denied, in part. I also recommend that the Motion to Dismiss for Lack of Prosecution pursuant to Fed.R.Civ.P. 41(b) or, in the alternative, for an Order compelling Plaintiff's responses be denied.

# I. MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) AND 12(c)

## A. BACKGROUND

**\*2** Plaintiff John Hale alleges that eleven employees ("Defendants") of the New York State Department of Correctional Services ("DOCS") violated his rights under the Eighth Amendment when (1) in or around May of 2006, Defendants Ireland, Revell, Furnia, and Silver physically assaulted and injured him without provocation at Clinton Correctional Facility ("C.F."), and (2) between May of 2006 and February of 2008, the remaining seven Defendants (Dr. Rao, John Does 1-2, and Jane Does 1-4)

were deliberately indifferent to his resulting serious medical needs at Clinton, Southport, Elmira and Attica C.F.s. Complaint at ¶¶ 16-27.

Plaintiff states that he has exhausted his administrative remedies. Complaint at ¶ 29. Plaintiff has submitted copies of decisions from the Central Office Review Committee of the Inmate Grievance Program. Dkt. No. 5, Exhibits. Plaintiff also included a copy of a decision from the Superintendent of Attica C.F. *Id.*

## B. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil Procedure 8(a)(2); [FN1] or (2) a challenge to the legal cognizability of the claim. [FN2]

> FN1. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr .S.D.N.Y.1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

> FN2. *See Swierkiewicz v. Sorema N.A.*, 534 U.S.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

506, 514 (2002) ( "These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12(b)(6)'s requirement of stating a cognizable claim and Rule 8(a)'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.,* 379 F.Supp.2d 348, 370 (S.D.N.Y.2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6) ].") (citation omitted); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91, 101-102 (E.D.N.Y.2004).

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2) (emphasis added). By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." [FN3] The main purpose of this rule is to "facilitate a proper decision on the merits." [FN4] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN5]

FN3. *Dura Pharm., Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (citation omitted; emphasis added); *see also Swierkiewicz,* 534 U.S. at 512 [citation omitted]; *Leatherman v.*

*Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 168 (1993) (citation omitted).

FN4. *Swierkiewicz,* 534 U.S. at 514 (quoting *Conley,* 355 U.S. at 48); *see also Simmons v. Abruzzo,* 49 F.3d 83, 86 (2d Cir.1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") (citation omitted); *Salahuddin v. Cuomo,* 861 F .2d 40, 42 (2d Cir.1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") (citations omitted).

FN5. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 (2d Cir.1996)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556-57, 570 (2007)). Accordingly, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

alleged-but has not *shown*-that the pleader is entitled to relief." *Iqbal,* 129 S.Ct. at 1950 (emphasis added).

**\*3** It should also be emphasized that, "[i]n reviewing a complaint for dismissal under Fed.R.Civ.P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." FN6 "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.* "FN7 In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

> FN6. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN7. *Hernandez,* 18 F.3d at 136 (citation omitted); *Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.FN8 Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." FN9 Furthermore, when addressing a *pro se* complaint, *generally* a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." FN10 Of course, an opportunity to amend is not required where the plaintiff has already amended his complaint.FN11 In addition, an opportunity to amend is not required where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." FN12

> FN8. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at \*1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 (2d Cir.1987) (considering plaintiff's response affidavit on motion to dismiss)). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

> FN9. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

> FN10. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires").

> FN11. *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119, at \*2 (E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

complaint once); *Advanced Marine Tech. v. Burnham Sec., Inc.,* 16 F.Supp.2d 375, 384 (S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

FN12. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit has observed),[FN13] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[FN14] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[FN15] Stated more plainly, when a plaintiff is proceeding *pro se,* "all normal rules of pleading are not absolutely suspended."[FN16]

FN13. *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") (internal quotation marks and citation omitted); *see also Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training ... should not be impaired by harsh application of technical rules.") (citation omitted).

FN14. *See Prezzi v. Schelter,* 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner,* 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed.R.Civ.P. 8] ); *accord,*

*Shoemaker v. State of Cal.,* 101 F.3d 108 (2d Cir.1996) (citing *Prezzi v. Schelter,* 469 F.2d 691) (unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter,* 469 F.2d 691, within the Second Circuit); *accord, Praseuth v. Werbe,* 99 F.3d 402 (2d Cir.1995).

FN15. *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed ... we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California,* 422 U.S. 806, 834, n. 46 (1975) ("The right of self-representation is not a license ... not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir.2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich,* 408 F.3d 124, 128, 130 (2d Cir.2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading [ ]or prejudice the adverse party").

FN16. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980).

Defendants also move pursuant to Fed.R.Civ.P. 12(c). Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)."[FN17]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

FN17. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

## C. ANALYSIS

### 1. Eighth Amendment

Reading the complaint generously, Plaintiff alleges that he complained to Defendant Rao, Health Services Director at Attica C.F., about his "medical problems," which included (1) the injuries he sustained during the alleged May 2006 incident, such as persistent vomiting of blood and urinating of blood, (2) surgical staples in his stomach, and (3) swollen ribs.[FN18] Complaint at ¶ ¶ 16-27. Plaintiff alleges that in response, Dr. Rao stated that he did not believe Plaintiff's complaints, consistently "denied" Plaintiff's complaints, and called Plaintiff " 'crazy.' " *Id.* at ¶¶ 26, 27. Plaintiff claims that as a result, he has endured pain, suffering, and injuries. *Id.*

FN18. Specifically, Plaintiff states, "It should be noted that *Plaintiff has been complaining about all of the above medical problems* [which include the injuries sustained during the alleged assault, the surgical staples, and swollen ribs] to medical staff here at Attica C.F. *including Defendant Dr. Rao* ... and ever since he was beaten by the Defendant Officers Ireland, Reyell, Furnia, and Silver *he has been throwing up blood and urinating blood yet the Defendants consisting* [sic] *denied his complaints;* resulting in Plaintiff's pain and suffering, and further injuries." Complaint at ¶ 27 (emphasis added).

**\*4** Defendants argue that Plaintiff has made an insufficient showing of an Eighth Amendment claim against Defendant Rao. Dkt. No. 27-2 at pp. 3-6.

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble,* 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle,* 429 U.S. at 102. Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). Thus, prison officials must "ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer,* 511 U.S. at 832 (quoting *Hudson v. Palmer,* 468 U.S. 517, 526-27 (1984)).

A viable Eighth Amendment claim must contain both an objective and a subjective component. *Farmer,* 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.' " *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord,* 467 F.3d 263, 279 (2d Cir.2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.' " *Jones v. Westchester County Dept. of Corrections,* 557 F.Supp.2d 408, 413 (S.D.N.Y.2008).

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin,* 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id.* If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

medical condition is sufficiently serious." *Id.* A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir.1990) (Pratt, J. dissenting) (citations omitted), *accord, Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1996), *cert. denied,* 513 U.S. 1154 (1995); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). Relevant factors to consider when determining whether an alleged medical condition is sufficiently serious include, but are not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain. *Chance,* 143 F.3d at 702-03.

**\*5** If the claim is that treatment was provided but was inadequate, the second inquiry is narrower. *Salahuddin,* 467 F.3d at 280. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter,* 316 F.3d 178, 185 (2d Cir.2003).

To satisfy the subjective component of an Eighth Amendment claim, the defendant's behavior must be "wanton." Where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle,* 429 U.S. at 105.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act ... that evinces 'a conscious disregard of a substantial risk of serious harm.' " *Chance,* 143 F.3d 698, 703 (quoting *Farmer v. Brennan,* 511 U.S. 825, 835 (1994)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer,* 511 U.S. at 837; *Chance,*

143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer,* 511 U.S. 825, 835; *Ross v. Giambruno,* 112 F.3d 505 (2d Cir.1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle,* 429 U.S. at 105-06. Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim ... under the Eighth Amendment." *Id.* Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter,* 316 F.3d 178, 184 (2d Cir.2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance,* 143 F.3d at 703.

Regarding the objective component, the complaint alleges that Defendant Rao provided Plaintiff with inadequate or no medical care after learning of Plaintiff's physical complaints, including persistent vomiting of blood and urinating of blood. Vomiting of blood and urinating of blood are indications of serious medical needs. *See Morgan v. Maass,* No. 94-35834, 1995 WL 759203, at \*2 (9th Cir. Dec. 26, 1995) (finding that vomiting blood constituted a serious medical need); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926, at \*3 (M.D.Fla. Oct. 4, 2006) (finding that "[e]ven to a lay person, it is obvious that blood in the urine is an indication of a serious medical need."). Thus, the allegations in the complaint satisfy the objective component.

**\*6** Regarding the subjective component, the complaint alleges that Defendant Rao was aware that Plaintiff had serious medical needs, but consciously and intentionally disregarded or ignored those needs. Dkt. No. 1. Thus, the allegations in the complaint satisfy the subjective component.

Defendants argue that Plaintiff's complaint is conclusory and fails to contain specific allegations of fact indicating

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

a deprivation of rights as against Defendant Rao. Dkt. No. 27-2, at p. 5. The Court disagrees. Plaintiff specifically stated that he informed Defendant Rao about his "medical problems," which included vomiting of blood and urinating of blood, but that Dr. Rao expressed disbelief, consistently "denied" Plaintiff's complaints, and stated that Plaintiff was "crazy." Complaint at ¶ 27. Plaintiff has set forth more than a simple conclusory allegation.

In light of the foregoing, the Court declines to conclude at this stage that Plaintiff has failed to state a claim for deliberate medical indifference against Defendant Rao.FN19 Accordingly, the motion to dismiss the Eighth Amendment claim against Defendant Rao should be denied.

FN19. *See* *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657, at *7 (E.D.N.Y. Aug. 21, 2008) (citing *Chance,* 143 F.3d at 703-04 (reversing district court's dismissal of medical indifference claim at 12(b)(6) stage because "[w]hether a course of treatment was the product of sound medical judgment, negligence, or deliberate indifference depends on the facts of the case.... It may be that Chance has no proof whatsoever of this improper motive, and that lack of proof may become apparent at summary judgment. But even if we think it highly unlikely that Chance will be able to prove his allegations, that fact does not justify dismissal for failure to state a claim, for Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations ....") (citations and quotation marks omitted) (other citations omitted); *see also* *Lloyd v. Lee,* 570 F.Supp.2d 556, 559 (S.D.N.Y.2008) (finding that amended complaint plausibly alleged that doctors knew that plaintiff was experiencing extreme pain and loss of mobility, knew that the course of prescribed course of treatment was ineffective, and declined to do anything to attempt to improve plaintiff's situation besides re-submitting MRI request forms) (citing *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616, at *23 (S.D.N.Y. Apr. 3, 2008) (despite plaintiff's sparse allegations as to defendant's conduct, at the 12(b)(6) stage plaintiff sufficiently alleged facts supporting a plausible claim that defendant

was deliberately indifferent to plaintiff's medical needs)).

**2. Qualified Immunity**

Defendant Rao asserts that he is entitled to dismissal on the ground of qualified immunity. Dkt. No. 27-2 at pp. 6-8.

"Once qualified immunity is pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Williams v. Smith,* 781 F.2d 319, 322 (2d Cir.1986) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 [1982] ). As a result, a qualified immunity inquiry in a prisoner civil rights case generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton,* 380 F.3d 57, 68-69 (2d Cir.2004) (citations omitted), *accord, Higazy v. Templeton,* 505 F.3d 161, 169, n. 8 (2d Cir.2007) (citations omitted).

In determining the second issue (i.e., whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted), courts in this circuit consider three factors:

(1) whether the right in question was defined with 'reasonable specificity'; whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citations omitted), *cert. denied,* 503 U.S. 962 (1992).FN20 "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton,* 505 F.3d 161, 169-70 (2d Cir.2007) (citations omitted). [FN21] This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).[FN22] As the Supreme Court has explained,

FN20. *See also Pena v. DePrisco,* 432 F.3d 98, 115 (2d Cir.2005); *Clue v. Johnson,* 179 F.3d 57, 61 (2d Cir.1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir.1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir.1996); *Rodriguez v. Phillips,* 66 F.3d 470, 476 (2d Cir.1995); *Prue v.. City of Syracuse,* 26 F.3d 14, 17-18 (2d Cir.1994); *Calhoun v. New York State Division of Parole,* 999 F.2d 647, 654 (2d Cir.1993).

FN21. *See also Anderson v. Creighton,* 483 U.S. 635, 639 (1987) ( "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.' ") (citation omitted); *Davis v. Scherer,* 468 U.S. 183, 190 (1984) ("Even defendants who violate [clearly established] constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard."); *Benitez v. Wolff,* 985 F.2d 662, 666 (2d Cir.1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

FN22. *See also Malsh v. Correctional Officer Austin,* 901 F.Supp. 757, 764 (S.D.N.Y.1995) (citing cases); *Ramirez v. Holmes,* 921 F.Supp. 204, 211 (S.D.N.Y.1996).

*7 [T]he qualified immunity defense ... provides ample

protection to all but the plainly incompetent or those who knowingly violate the law.

... Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.

*Malley,* 475 U.S. at 341.[FN23]

FN23. *See also Hunter v. Bryant,* 502 U.S. 224, 299 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") [internal quotation marks and citation omitted].

Here, after liberally reviewing the complaint, accepting all of its allegations as true, and construing them in Plaintiff's favor, the Court declines to conclude that Defendant Rao is entitled to qualified immunity at this stage. As noted, Plaintiff alleges that he informed Dr. Rao of his "medical problems," including persistent vomiting of blood and urinating of blood, but Dr. Rao stated that he did not believe Plaintiff's complaints, consistently denied Plaintiff's complaints, and called Plaintiff " 'crazy,' " which resulted in pain, suffering, and injuries. Complaint at ¶¶ 26-27. Therefore, the motion to dismiss the complaint on the ground of qualified immunity should be denied.[FN24]

FN24. *See Beeks,* 2008 WL 3930657, at *9 (citing *See McKenna,* 386 F.3d at 437-38 (affirming district court's denial of qualified immunity at motion to dismiss stage on deliberate indifference claim, "[h]owever the matter may stand at the summary judgment stage, or perhaps at trial....") (other citations omitted)).

**3. Eleventh Amendment**

Defendants Ireland, Furnia, Reyell, Silver, and Rao argue

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

that to the extent the complaint seeks damages against them in their official capacities, the claim is barred by the Eleventh Amendment. Dkt. No. 27-2 at pp. 8-9.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana,* 134 U.S. 1, 10-21, 10 S.Ct. 504, 33 L.Ed. 842 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf,* 506 U .S. 139, 142-47, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-06, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

The Eleventh Amendment bars suits against state officials acting in their official capacities.[FN25] Where it has been successfully demonstrated that a defendant is entitled to sovereign immunity under the Eleventh Amendment, the federal court lacks subject matter jurisdiction over the case, and "the case must be stricken from the docket." *McGinty v. State of New York,* 251 F.3d 84, 100 (2d Cir.2001) (citation omitted); *see also* Fed.R.Civ.P. 12(h)(3).

FN25. *See Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir.1993) ("The immunity to which a state's official may be entitled in a § 1983 action depends initially on the capacity in which he is sued. To the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."); *Severino v.. Negron,* 996 F.2d 1439, 1441 (2d Cir.1993) ( "[I]t is clear that the Eleventh Amendment does not permit suit [under Section 1983] for money damages

against state officials in their official capacities."); *Farid v. Smith,* 850 F.2d 917, 921 (2d Cir.1988) ("The eleventh amendment bars recovery against an employee who is sued in his official capacity, but does not protect him from personal liability if he is sued in his 'individual' or 'personal' capacity."); *see also Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.... As such, it is no different from a suit against the State itself.... We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Kentucky v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.").

**\*8** Here, each of the represented Defendants has an official position with DOCS. Therefore, any claims for money damages against these Defendants in their officials capacities are barred by the Eleventh Amendment and should be dismissed.

## II. MOTION TO DISMISS FOR LACK OF PROSECUTION, OR IN THE ALTERNATIVE, FOR AN ORDER COMPELLING RESPONSES

Defendants argue that the complaint should be dismissed on the ground that Plaintiff has failed to prosecute this action. Dkt. No. 36. Defendants argue that in the alternative, Plaintiff should be compelled to respond to paragraphs I(A)(1)(b) and (c) of the Court's Mandatory Pretrial Discovery and Scheduling Order. *Id.*

### A. ANALYSIS

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

Rule 41 of the Federal Rules of Civil Procedure provides,
"If the plaintiff fails to prosecute or to comply with these
rules or a court order, a defendant may move to dismiss
the action or any claim against it." Fed.R.Civ.P. 41(b). As
a result, Fed.R.Civ.P. 41(b) may be fairly characterized as
providing for two independent grounds for dismissal on
motion or on the Court's own initiative: (1) a failure to
prosecute the action, and (2) a failure to comply with the
procedural rules, or any Order, of the Court. *Id.*

With regard to the first ground for dismissal (a failure to
prosecute the action), it is within the trial judge's sound
discretion to dismiss for want of prosecution.[FN26] The
Second Circuit has identified five factors that it considers
when reviewing a district court's order to dismiss an action
for failure to prosecute under Rule 41(b):

   FN26. *See Merker v. Rice,* 649 F.2d 171, 173
   (2d Cir.1981).

[1] the duration of the plaintiff's failures, [2] whether
plaintiff had received notice that further delays would
result in dismissal, [3] whether the defendant is likely to
be prejudiced by further delay, [4] whether the district
judge has taken care to strike the balance between
alleviating court calendar congestion and protecting a
party's right to due process and a fair chance to be heard
and [5] whether the judge has adequately assessed the
efficacy of lesser sanctions.[FN27]

   FN27. *See Shannon v. GE Co.,* 186 F.3d 186,
   193 (2d Cir.1999) (affirming Rule 41(b)
   dismissal of plaintiff's claims by U.S. District
   Court for Northern District of New York based
   on plaintiff's failure to prosecute the action)
   (citation and internal quotation marks omitted).

As a general rule, no single one of these five factors is
dispositive.[FN28] However, I note that, with regard to the
first factor, Rule 41.2 of the Local Rules of Practice for
this Court provides that a "plaintiff's failure to take action
for four (4) months shall be presumptive evidence of lack
of prosecution." N.D.N.Y. L.R. 41.2(a). In addition, I note
that a party's failure to keep the Clerk's Office apprised of
his or her current address may also constitute grounds for

dismissal under Rule 41(b) of the Federal Rules of Civil
Procedure.[FN29]

   FN28. *See Nita v. Conn. Dep't of Env.
   Protection,* 16 F.3d 482 (2d Cir.1994).

   FN29. *See, e.g., Robinson v. Middaugh,*
   95-CV-0836, 1997 WL 567961, at *1 (N.D.N.Y.
   Sept. 11, 1997) (Pooler, J.) (dismissing action
   under Fed.R.Civ.P. 41[b] where plaintiff failed
   to inform the Clerk of his change of address
   despite having been previously ordered by Court
   to keep the Clerk advised of such a change); *see
   also* N.D.N.Y. L.R. 41.2(b) ( "Failure to notify
   the Court of a change of address in accordance
   with [Local Rule] 10.1(b) may result in the
   dismissal of any pending action.").

**1. Address Changes**

As to the first factor (the duration of Plaintiff's "failures")
Defendants argue that Plaintiff was transferred to several
different facilities, but failed to update the Court and
defense counsel of his changes of address. Dkt. No. 36-2,
Lombardo Decl., at ¶¶ 4-5, 7-12 & Dkt. Nos. 49, 50.
Defendants argue that the action should be dismissed for
this reason alone. Dkt. No. 36-8.

**\*9** Plaintiff has failed at times to update the Court and
defense counsel as to his address changes. His most recent
failure occurred on July 6, 2009 when he was transferred
from Green Haven C.F. to Auburn C.F., and subsequently
to Wende C.F., where he now remains. Dkt. No. 50-2,
Stachowski Decl., at ¶¶ 3-5. Plaintiff failed to update the
Court and defense counsel as to these changes. Thus,
Plaintiff's failure to provide an updated address has
persisted since July 6, 2009 (less than three months).
Generally, it appears that durations of this length (i.e., less
than four months) are not long enough to warrant
dismissal.[FN30]

   FN30. N.D.N.Y. L.R. 41.2(a) ("[P]laintiff's
   failure to take action for four (4) months shall be
   presumptive evidence of lack of prosecution.");

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

*Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) (plaintiff had failed to comply with order directing him to answer interrogatories for more than four months).

The Court notes that Plaintiff has been subject to frequent transfers. Since August 7, 2008, Plaintiff was transferred on seven occasions. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 4-11; Dkt. No. 50-2, Stachowski Decl. at ¶¶ 4-5. Three of the transfers occurred within a span of six days. Dkt. No. 36-3, Loiodice Decl., at ¶¶ 7-11.

Moreover, whether Plaintiff was mentally and physically capable of providing written updates of all of his address changes is unclear. Plaintiff noted in his opposition papers that he was diagnosed as suffering from schizophrenia; has "borderline intellectual" functioning; [FN31] and is unable to read or write; therefore Plaintiff's submissions to the Court are written by others. Dkt. No. 39. Plaintiff also stated that at times he has been "prohibited from possessing any type of writing utensil." Dkt. No. 41. Plaintiff further stated that while at Central New York Psychiatric Center, "any legal work whatsoever" was discouraged and "not facilitate[d]." *Id.* In light of the foregoing, I find that the first factor weighs against dismissal of Plaintiff's complaint.

FN31. Plaintiff submitted copies of medical records indicating that he was diagnosed as suffering from, *inter alia,* schizophrenia, paranoid type; has borderline intellectual functioning; and has an IQ of 71. Dkt. No. 5.

As to the second factor (whether plaintiff had received notice that further delays would result in dismissal), I find that Plaintiff has received notice that his failure to provide his current address may result in dismissal. *See* Dkt. No. 12 at 4 *(Order stating that "Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so will result in the dismissal of this action")* (emphasis in original); N.D.N.Y. L.R. 41.2(b) (stating, "Failure to notify the Court of a change of address in accordance with L.R. 10.1(b) may result in the dismissal of any pending action.") [FN32] As a result, I find that the second factor weighs in favor of dismissal of Plaintiff's

complaint.

FN32. I note that, to assist *pro se* litigants, the Clerk of the Court for the Northern District of New York has provided to all correctional facilities in New York State copies of the Northern District's Local Rules of Practice and *Pro Se* Manual.

Regarding the third factor (whether defendants are likely to be prejudiced by further delay), I am unable to find, based on the current record, that Defendants are likely to be prejudiced by a delay in the proceedings. While any delay that occurs theoretically impairs the Defendants' memories, the preservation of evidence, and the ability to locate witnesses, [FN33] Defendants have not argued that any delay has occurred due to Plaintiff's failure to update his address. As a result, I find that the third factor weighs against dismissal of Plaintiff's complaint. [FN34]

FN33. *See, e.g., Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here can only make matters worse.").

FN34. *See Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348, at *2 (S.D.N.Y. Feb. 5, 1997) (declining to dismiss action for failure to prosecute or failure to comply with court orders where plaintiff had failed to meet discovery deadlines, and noting that the fact that plaintiff "has been in lock-down and transferred to another facility during the pendency of this action also counsels leniency toward [the plaintiff's] delays") (citing *Jones v. Smith,* 99 F.R.D. 4, 14-15 (M.D.Pa.1983) (granting *pro se* plaintiff final opportunity to comply with orders of court, despite repeated wilful, dilatory and contumacious tactics), *aff 'd* 734 F.2d 6 (3d Cir.1984)).

**\*10** Regarding the fourth factor (striking the balance

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

between alleviating court calendar congestion and protecting a party's right to due process and a fair chance to be heard), I find that Plaintiff's right to receive a further chance to be heard in this matter, at this point, outweighs the need to alleviate congestion on the Court's docket. Moreover, Defendants point to no delay caused by Plaintiff's failure to update his address. As a result, I find that the fourth factor weighs against dismissal of Plaintiff's complaint.

With regard to the fifth factor (whether the judge has adequately assessed the efficacy of lesser sanctions), I find that a strong reminder to Plaintiff of his obligation to provide a current address might be effective and is warranted. Plaintiff, who alleges that he suffers from schizophrenia and is unable to read and write, Dkt. No. 39, has been responsive to prior Orders from the Court,[FN35] and has shown an interest in prosecuting this action. *See* Dkt. Nos. 39, 41 (Plaintiff's Opposition Papers). As a result, I find that the fifth factor weighs against dismissal of Plaintiff's complaint.

> FN35. *See* Dkt. Nos. 7-11 (Report-Recommendation and Order; Plaintiff's Inmate Authorization Forms; Application to Proceed *In Forma Pauperis;* and Signed Last Page of Complaint).

Weighing these five factors together, I conclude that they tip the scales against dismissing Plaintiff's complaint (one of the factors weighing in favor of such dismissal and four of the factors weighing against such dismissal).[FN36] Dismissal based on a lack of prosecution is a harsh remedy to be used only in extreme situations. The Court does not currently view the present case to be in such a situation. For these reasons, I recommend that Defendants' Motion to Dismiss based on Plaintiff's failure to provide a current address (Dkt. No. 36) be denied.

> FN36. *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993); *see also Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254, at * 3 (2d Cir. Sept. 7, 2005) (remanding case to district court to make further factual findings concerning the plaintiff's lack of responsiveness and concerning his confinement

in a prison psychiatric ward where district court dismissed for failure to prosecute).

**2. Responses to Scheduling Order**

Defendants argue that if the Court does not dismiss the complaint for a failure to prosecute, the Court should issue an order requiring Plaintiff to respond to paragraphs I(A)(1)(b) and (c) of the Court's mandatory pretrial discovery and scheduling order dated November 18, 2008 ("Scheduling Order"). Dkt. No. 36-8, Memo. of Law at pp. 3-4.

The Scheduling Order provided, in relevant part, as follows:

**I. Discovery**

**A.** *Documents.* Within sixty (60) days of the date of this order:

**1.** *Plaintiff(s)* shall provide to counsel for defendant(s) copies of all:

**a.** Documents and other materials which plaintiff(s) may use to support the claims in the complaint;

**b.** Correspondence, grievances, grievance appeals, and other documents relating to requests for administrative remedies or the inability or failure to exhaust such remedies; and

**c.** Complaints and petitions filed by plaintiff(s) in any other cases in any court relating to the same issues raised in the complaint in this action or, if such documents are not within the possession of plaintiff(s), plaintiff(s) shall provide to counsel for defendant(s) a list of any such legal proceedings stating the court in which the proceeding was filed, the caption of the case, and the court number.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

**\*11** Dkt. No. 26, at pp. 1-2.

Defendants admit that they received "what purported to be plaintiff's response to paragraph I(A)(1) of the [Scheduling Order]" in a letter to defense counsel from Plaintiff. Dkt. No. 36-2, Lombardo Decl., at ¶ 19 & Dkt. No. 36-6, Ex. C. In that letter, Plaintiff asserted the following:

> Pursuant to paragraph I(A) of the court's mandatory pretrial discovery and scheduling order dated Nov. 18, [20]08[:]

> a. Documents and materials which plaintiff will use to support the claims in this complaint is [sic] the complete Medical Records for the period of June 14, 2006 to present, and current Tier III documents and pictures surrounding the incident which you forwarded to me pursuant to mandatory pretrial discovery, in addition enclosed please find Lab work report of specimen done on plaintiff which will also be use[d].

> Plaintiff has complied with the court's mandatory pretrial discovery and scheduling order pursuant to paragraph I(A) so your office no longer has to seek dismissal of the complaint for failure to prosecute.

Dkt. No. 36-6, Ex. C.

Defendants view this letter as being nonresponsive to paragraphs I(A)(1)(b) and (c). However, regarding paragraph I(A)(1)(b), Plaintiff specifically stated in the above-quoted letter that he "will use the complete medical records for the period of June 14, 2006 to present, and *current Tier III documents and pictures surrounding the incident which you forwarded to me.*" Dkt. No. 36-6, Ex. C at p. 1 (emphasis added). Moreover, Plaintiff stated in his March 23, 2009 letter to defense counsel that he filed grievances while in Attica C.F., but that he was no longer "in possession of those grievances" because his property was lost while he was at Central New York Psychiatric Center. [FN37] Dkt. No. 39 at p. 2. Plaintiff also stated that he has "no money in his account," therefore he has been unable to obtain copies of his grievances, as well as medical records. *Id.* Accordingly, Plaintiff has responded

to paragraph I(A)(1)(b). He stated that he no longer possesses the grievances he filed at Attica C.F.; he is unable to afford copies; and he intends to use the documents that defense counsel sent to him. To the extent that defense counsel is arguing that Plaintiff must provide copies of the same documents defense counsel has already provided Plaintiff, Dkt. No. 36-7, Ex. D at p. 2, this argument is unavailing.

> [FN37.] Plaintiff also asserts that he no longer has a copy of the complaint in this action. Dkt. No. 41, at ¶ 8. Accordingly, the Clerk will be directed to provide a copy of the complaint to Plaintiff.

Regarding paragraph I(A)(1)(c), Plaintiff stated in his March 23, 2009 opposition letter that "[t]here is no other complaints or petitions filed by plaintiff in any other cases in any other court [sic]." Dkt. No. 39, at p. 2. Plaintiff reiterated this response in a supplemental opposition letter dated March 31, 2009 by stating that "there are no other known complaints, petitions, etc. filed by plaintiff in any other court with regards to the claims raised in [this case]." Dkt. No. 41, [FN38] at ¶ 6. Accordingly, Plaintiff has responded to paragraph I(A)(1)(c).

> [FN38.] To the extent that Plaintiff is seeking permission to amend his complaint via his supplemental opposition letter, (Dkt. No. 41), Plaintiff's request must be in the form of a motion. *See* N.D.N.Y. Local Rule 7.1.

**\*12** In light of the foregoing, Defendants' request for an order compelling responses to paragraphs I(A)(1)(b) and (c) of the Scheduling Order should be denied as moot.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and 12(c) (Dkt. No. 27) be GRANTED in part and DENIED in part. The motion to dismiss should be granted to the extent that Plaintiff asserts claims for money damages against Defendants in their official capacities. The motion should be denied to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 3698420 (N.D.N.Y.)
(Cite as: 2009 WL 3698420 (N.D.N.Y.))

the extent that Defendants moved to dismiss Plaintiff's Eighth Amendment claim against Defendant Rao, and moved to dismiss the complaint against Defendant Rao on the ground of qualified immunity; and it is further

**RECOMMENDED** that the Motion to Dismiss for Failure to Prosecute or in the alternative for an Order compelling Plaintiff's responses (Dkt. No. 36) be DENIED; and it is further

**ORDERED,** *that Plaintiff is required to promptly notify the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action;*

**ORDERED,** that the Clerk update Plaintiff's address to reflect that he is currently incarcerated at Wende Correctional Facility; [FN39] and it is further

FN39. Defendants' letter to the Court dated August 21, 2009 indicates that Plaintiff is now incarcerated at Wende C.F. Dkt. No. 50.

**ORDERED,** that the Clerk serve (1) copies of the electronically-available-only opinions cited herein; [FN40] (2) a copy of the Complaint (Dkt. No. 1); and (3) a copy of this Report-Recommendation and Order on Plaintiff.

FN40. Those decisions include *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997); *Yang v. New York City Trans. Auth.,* 01-CV-3933, 2002 WL 31399119 (E.D.N.Y. Oct. 24, 2002); *Sealed Plaintiff v. Sealed Defendant # 1,* No. 06-1590, 2008 WL 3294864 (2d Cir. Aug. 12, 2008); *Morgan v. Maass,* No. 94-35834, 1995 WL 759203 (9th Cir. Dec. 26, 1995); *Kimbrough v. City of Cocoa,* No. 6:05-cv-471, 2006 WL 2860926 (M.D.Fla. Oct. 4, 2006); *Beeks v. Reilly,* No. 07-CV-3865, 2008 WL 3930657 (E.D.N.Y. Aug.21, 2008); *Harris v. Westchester County Dep't of Corrections,* No. 06 Civ.2011, 2008 WL 953616 (S.D.N.Y. Apr. 3, 2008); *Robinson v. Middaugh,* 95-CV-0836, 1997 WL

567961 (N.D.N.Y. Sept. 11, 1997); *Cruz v. Jackson,* No. 94 Civ. 2600, 1997 WL 45348 (S.D.N.Y. Feb. 5, 1997); and *Jacobs v. County of Westchester,* Dkt. No. 02-0272, 2005 WL 2172254 (2d Cir. Sept. 7, 2005).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette,* 984 F.2d 85 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,2009.
Hale v. Rao
Slip Copy, 2009 WL 3698420 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
Anthony GADSON, Plaintiff,
v.
Glenn S. GOORD, Philip Coombe, Artuz, L. Zwillinger,
D. Stevens, J. Manion, G. Schneider, D. Connelly, B.
Pease, C.O. Rassman, D. Zaken, C. Bennett,
Defendants.
**No. 96 Civ. 7544(SS).**

Nov. 17, 1997.

Anthony Gadson, pro se, Terrace Health Care Center,
Bronx, NY, for plaintiff.
Dennis C. Vacco, Attorney General of the State of New
York New York, NY, of counsel: Constantine A. Speres,
Assistant Attorney General, for defendants.

**OPINION AND ORDER**

SOTOMAYOR, J.

**\*1** *Pro se* plaintiff, Anthony Gadson, formerly
incarcerated at Green Haven Correctional Facility, brings
this 42 U.S.C. § 1983 action, alleging that defendants
violated his constitutional rights by (1) failing to provide
him with an appropriate and medically necessary
wheelchair; (2) harassing him; and (3) failing to return
plaintiff's property. The twelve named defendants are or
were Department of Correctional Services administrators
and Green Haven security or medical staff.[FN1] Plaintiff
seeks an order from the Court directing defendants to: (1)
provide plaintiff with proper medical care (*e.g.,* an
appropriate wheelchair) and a proper living environment;
and (2) stop mistreating plaintiff. Additionally, plaintiff
seeks compensatory damages and punitive damages.

FN1. Defendants Goord and Coombe are named
as Department of Corrections administrators;
defendants Artuz, Schneider, Connelly, Pease,
Rassman, and Zaken are named as Green Haven
security personnel; and defendants Zwillinger,
Stevens, and Manion are named as Green Haven
medical personnel.

Defendants move to dismiss the Complaint pursuant to
Fed.R.Civ.P. 12(b)(6) for failure to state a claim. For the
reasons discussed, defendants' motion to dismiss is
**granted** in part and **denied** in part.

**BACKGROUND**[FN2]

FN2. The following information is set forth in
plaintiff's Complaint, accompanying exhibits and
memorandum entitled, "Opposition Against
Defendants [sic] Motion to Dismiss" ("Opp'n
Mem.") Generally, a court may not look outside
the pleadings when reviewing a Rule 12(b)(6)
motion to dismiss. However, the mandate to read
the papers of *pro se* litigants generously makes it
appropriate to consider plaintiff's additional
materials, such as his opposition memorandum.
*See* Gil v. Mooney, 824 F.2d 192, 195 (2d
Cir.1987) (in reviewing district court's dismissal
of *pro se* plaintiffs § 1983 claim, Second Circuit
considered plaintiff's affidavit submitted in
opposition to defendant's motion to dismiss);
*Donahue v. United States Dep't of Justice,* 751
F.Supp. 45, 49 (S.D.N.Y.1990) ("The policy
reasons favoring liberal construction of *pro se*
pleadings warrant the Court's consideration of
the allegations contained in plaintiffs'
memorandum of law, at least where those
allegations are consistent with the allegations in
the complaint ..."); *Lucas v. New York City,* 842
F.Supp. 101, 104 & n. 2 (S.D.N.Y.1994)
(considering *pro se* plaintiffs opposition papers).

Plaintiff is currently on parole status living at the Kings
Terrace Nursing Home in Bronx, New York. During the
events in question, plaintiff was incarcerated at Green

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

Haven Correctional Facility ("Green Haven") located in
Stormville, New York.

Plaintiff alleges that he is paralyzed and requires a
customized "medical wheelchair." (Complaint ¶¶ 1,7.)
Plaintiff claims that on January 28, 1994, prior to his
transfer to Green Haven from another correctional facility,
he was "medically fitted" for a wheelchair by a physical
therapist at Helen Hayes Hospital. (Complaint ¶ 1; Exhibit
("Ex.") A to Complaint.) FN3 For reasons not explained,
plaintiff received a second evaluation for a wheelchair by
a physical therapist employed at Green Haven on March
9, 1994. (Complaint ¶ 2.) Unlike the original wheelchair
prescribed at Helen Hayes, this second wheelchair
recommendation, according to plaintiff, was "not for my
Physical Condition." (Complaint ¶ 2; Ex. B.)

        FN3. All exhibits referenced are annexed to the
        Complaint.

On July 26, 1994, plaintiff claims he received a "defective
wheelchair" from the Green Haven Physical Therapy
Department. (Complaint ¶ 3; Ex. C-3.) He alleges that
unlike the chair recommended by Helen Hayes, the
delivered wheelchair was not fitted with a self-recliner nor
was it suitable for plaintiff's weight or legs. (Ex. C-1; C-3.)
Plaintiff maintains that he rejected the chair because it
lacked these medically necessary features. (Complaint ¶ 1;
Ex. C-3.)

On September 7, 1994, plaintiff filed a grievance against
Green Haven personnel complaining that he was in a
"great deal of pain" and seeking an "adequate heavy duty
wheelchair equipped with self-recliner for his proper
medical treatment." (Ex. C-1.) On December 14, 1994, the
Central Office Review Committee for the State of New
York Inmate Grievance Program ("C.O.R.C.")
unanimously approved plaintiff's request and indicated
that a new reclining wheelchair, "as prescribed," was then
on order. (Ex. C-4.)

*2 Plaintiff received a second wheelchair on or about
March 15, 1995. (Ex. D-1.) Plaintiff deemed this second
wheelchair also "improper" and refused to accept it. Id.
Specifically, plaintiff claimed the second wheelchair was

improper because: (1) the reclining handles were not
within his reach; (2) the adjustable foot pieces were not
accessible; (3) the leg rests were not "swing detachable;"
(4) the brakes had no extensions and were hard to reach;
and (5) that without a buckle, the seat belt was not strong
enough. (Ex. D-1.) On March 20, 1995, Plaintiff filed a
second grievance, again requesting a "proper made
wheelchair" for his medical condition. (Ex. D-1.) This
second grievance further requested that prison officials
"stop causing me more pain and suffering by having me lie
in bed for over a year." Id.

The C.O.R.C. denied plaintiff's second grievance on June
14, 1995, concluding that an "investigation reveals that the
wheelchair in question was a custom made reclining
wheelchair. The wheelchair was recommended and
ordered by the physical therapy department and meets the
medical needs of grievant per physical therapy." (Ex. D-4
.) The C.O.R.C. based its determination on statements and
an investigation by defendant Zwillinger, the Green Haven
Regional Health Services Administrator. Id.

Plaintiff filed a third grievance requesting a wheelchair in
August 1995 and again on October 18, 1995.FN4
(Complaint ¶ 5; Ex. E-1.) Plaintiff notes that by this time
he had been waiting almost two years for a special made
wheelchair for my medical condition." (Complaint ¶ 5.)
His grievance states that "it appears that the medical
department has determine [sic] that they are not going to
order me a wheelchair at all for my medical condition."
(Ex. E-1 .) Eight days after filing the grievance, plaintiff
was transferred to another correctional facility. (Ex. E-3.)
Thereafter, on January 17, 1996, the C.O.R.C. denied
plaintiff's third grievance, reiterating its previous finding
that a proper wheelchair had been ordered which plaintiff
had refused and suggesting that plaintiff "address the issue
of his wheelchair with the health staff at his new facility."
(Complaint ¶ 5; Ex. E-3.)

        FN4. Apparently, plaintiff's August grievance
        was misplaced or not received by Green Haven
        personnel. By his own account, plaintiff refiled
        the same grievance on October 18, 1995.

Plaintiff claims that as a result of Green Haven's failure to
provide him with an appropriate wheelchair, he spent two

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

and a half years "bed-ridden, in constant pain, feet degenerations, and emotional distress. (Opp'n Mem. ¶ 10; Ex. D-1.) Plaintiff further claims that the Green Haven Medical Department "play[ed] word games" with his grievances and attempted to deprive him of a proper wheelchair by using the second chair recommendation which was "wrong ... from the start." (Complaint ¶ 5.) Plaintiff insists he cannot use any wheelchair other than the "self recliner" chair he requested and which the C.O.R.C. approved in response to his first grievance. (Ex. K-1.) Finally, plaintiff contends that defendants "deliberately after knowing that the first wheelchair was not for Plaintiff medical condition kept on ordering the same type of wheelchair repeatedly knowing that the Plaintiff would not accept it do [sic] to the time it takes to get a wheelchair for his medical condition." (Opp'n Mem. ¶ 10.)

### The Retaliation Claims

*3 Plaintiff further alleges that while waiting for a proper wheelchair, he experienced "a great deal of harassment" by Green Haven prison officials. See (Complaint ¶¶ 7-9.) Specifically, plaintiff alleges: (1) that defendant Connelly ordered the "illegal" search of his cell, during which time his medical and legal documents were taken from him and not returned (Complaint ¶¶ 7 & 8; Ex. G-1-G-4 & I-1-I-4); (2) that defendants Pease, Zaken, and Bennett created false misbehavior reports to keep him "on some kind of restriction" or keeplock "24 hours a day" (Complaint ¶ 7; Opp'n Mem. ¶ 17); (3) that defendant Rassman, under the direction of defendant Pease, harassed him by preventing other inmates from socializing with plaintiff while on keeplock (Complaint ¶ 9; Ex. K-2); and (4) that defendants transferred him to another correctional facility on October 26, 1995, to "further delay my getting a wheelchair ... and to prolong my stay in prison." (Complaint ¶ 10, Ex. E-2.) Although plaintiff has not directly alleged that these acts of harassment were committed in retaliation for his filing of grievances, his pleadings suggest this to be his claim.[FN5]

FN5. Any claim for retaliation plaintiff may make is based solely on a permissive reading of the pleadings, interpreting them to "raise the strongest arguments that they suggest." See *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

Defendants have filed a motion to dismiss urging dismissal of the Complaint in its entirety for failure to state a claim. In particular, defendants contend that: (1) plaintiff has pled insufficient facts to support a claim of deliberate indifference to his medical needs; (2) plaintiff's claim of deprivation of property is not actionable in federal court and plaintiff does not allege any facts to demonstrate actual deprivation of access to court; (3) as against defendants Goord, Coombe, Artuz, Schneider, Zaken and Bennett, the claims must be dismissed because these defendants had no personal involvement or supervisory liability for the alleged constitutional deprivations; (4) the Eleventh Amendment protects defendants from suit in their official capacities; and (5) plaintiff's prayer for injunctive relief is moot because he is no longer incarcerated at Green Haven.

In response to defendants' motion, plaintiff provided supplemental facts addressing, *inter alia,* his claim of deliberate indifference and the personal involvement of defendant's Zaken and Bennett. For the reasons addressed in note 2, *supra,* the Court will consider these factual allegations in evaluating defendants' motion.

### DISCUSSION

### I. *Mootness*

Because plaintiff is no longer incarcerated and under the supervision of any of the named defendants, the Court rejects plaintiff's request for injunctive relief "directing defendants to provide medical care," "preventing defendants from mistreating pltf [sic]", and "directing defendant's [sic] to provide proper living environment for pltf." (Complaint at 5.) Plaintiffs claims for injunctive relief are moot and the Court lacks jurisdiction to consider them. *See Iron Arrow Honor Soc'y v. Heckler,* 464 U.S. 67, 104 S.Ct. 373, 78 L.Ed.2d 58 (1983); *see generally Courts v. Coombe,* 95 Civ. 2350(DC), 1996 WL 312357, at 2 (S.D.N.Y. June 11, 1996) (citing *Armstrong v. Ward,* 529 F.2d 1132, 1135 (2d Cir.1976)) ("The mere possibility that [plaintiff] may be returned to [the correctional facility where the incidents at issue arose] at some point in the future does not present a sufficient case

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

or controversy that the court can presently adjudicate."). Accordingly, the Court reviews plaintiff's claims only to the extent they seek compensatory and punitive damages.

## II. *Motion to Dismiss Standard*

**\*4** In considering defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6), the Court must "assess the legal feasibility of the Complaint," *Smith v. O'Connor,* 901 F.Supp. 644, 646 (S.D.N.Y.1994), accepting as true the factual allegations in the Complaint and construing all reasonable inferences in plaintiff's favor. *See generally Leatherman v. Tarrant County Narcotics Intelligence & Coord. Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993); *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994). The Court may properly dismiss a claim only if, after viewing all allegations in the light most favorable to the plaintiff, it determines "beyond doubt that the plaintiff can prove no set of facts in support of [plaintiff's] claims which would entitle [plaintiff] to relief." *Hernandez,* 18 F.3d at 136 (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Moreover, where a plaintiff proceeds *pro se,* as here, the Court must " 'read his [or her] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest.' " *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)); *Hernandez,* 18 F.3d at 136. In so doing, the Court must hold plaintiff to a pleading standard which is "less stringent ... than formal pleadings drafted by lawyers." *Haines v. Kemer,* 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curium).

## III. *Liability Under 42 U.S.C. § 1983*

In a § 1983 action, the plaintiff must establish that a person acting under color of state law deprived him or her of a federal constitutional right. 42 U.S.C. § 1983; *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Sykes v. James,* 13 F.3d 515, 519 (2d Cir.1993). Section 1983 does not create any federal rights on its own, but rather enforces rights established under the Constitution, laws, or treaties of the United States. *Sykes,* 13 F.3d at 519.

Nowhere in his Complaint does plaintiff specifically allege constitutional violations, however, liberally construed, plaintiff claims that defendants denied him adequate medical care in violation of the Eighth Amendment and retaliated against him for filing grievances in violation of the First Amendment. Furthermore, plaintiff's claim that defendants deprived him of his property may be construed as alleging a violation of the Fourteenth Amendment.

## IV. *Plaintiff's Eighth Amendment Claim*

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on prisoners. In *Estelle v. Gamble,* the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' ... proscribed by the Eight Amendment." 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), *reh'g denied,* 429 U.S. 1066 (1977)). To state a claim of deliberate indifference, plaintiff must show that prison officials intentionally denied, delayed access to, or interfered with prescribed treatment. *Estelle,* 429 U.S. at 104-05. The inadvertent or negligent failure to provide adequate medical care does not rise to the level of deliberate indifference. *Id.* at 105.

**\*5** To sustain a claim of deliberate indifference to medical needs, plaintiff must plead facts sufficient to satisfy both the objective and subjective components of the applicable standard, *i.e.,* that the alleged deprivation was sufficiently serious and that the prison officials acted with a sufficiently culpable state of mind. *Farmer v. Brennan,* 511 U.S. 825, 834-35, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *see also Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("Deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' ") (citing *Estelle,* 429 U.S. at 103-104); *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (an Eighth Amendment claim requires "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment").

Accepting the accuracy of plaintiff's allegations for purposes of defendants' motion to dismiss, the Court can

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

not conclude that plaintiff can show no set of facts sufficient to meet the deliberate indifference standard in this case. Plaintiff asserts he suffered serious injury because of the delays in his receiving a proper wheelchair, *e.g.,* that he was forced to remain bed-ridden and suffered "a great deal of pain," as well as "feet degenerations, and emotional distress" for a period of two and a half years. (Opp'n Mem. ¶ 10; Ex. D-1 & C-1.) Moreover, he alleges that defendants intentionally failed to provide him with an appropriate wheelchair despite his frequent notification to the Green Haven medical staff that he was in pain, his three grievances requesting a proper wheelchair, and the C.O.R.C.'s unanimous determination in response to his first grievance that plaintiff was entitled to a self-reclining wheelchair. Certainly, plaintiff's refusal to accept the second wheelchair offered to him, which purportedly was self-reclining, casts doubt on plaintiff's claim that defendants were purposely indifferent.[FN6] However, at this early pleading stage, without the benefit of any information on the nature of plaintiff's actual medical condition or the medical appropriateness of the wheelchairs offered to plaintiff, this Court can not conclusively say that plaintiff's Complaint fails to allege that he suffered serious injury from lack of a wheelchair. Nor can the Court, at this point, reject plaintiff's claim that defendants acted with a culpable state of mind by their intentional delay in providing him with a wheelchair customized to his particular medical needs.

FN6. Plaintiff explains his rejection of both chairs by stating that he "can not utilize any other kind of wheelchair" than the "self recliner" chair requested and approved by the C.O.R.C. (Ex. K-1.) Defendants do not dispute this allegation. While plaintiff does not explain the precise nature of his medical condition and this Court knows of no medical condition requiring use of a self-reclining wheelchair exclusively, in the absence of dispositive information to the contrary, the Court must accept these facts as true for purposes of a motion to dismiss. It is well established that claims based on a difference of opinion over matters of medical judgment do not give rise to an Eighth Amendment violation. *See Estelle,* 429 U.S. at 106-07; *Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996) ("Hathaway III"). Nevertheless, given plaintiff's stated medical need for a specific type of wheelchair, without more information, the Court

can not say that his allegation is based in mere disagreement with medical opinions.

Significantly, the Second Circuit has repeatedly held that allegations of delay in providing medical treatment to a prisoner, even in the absence of physical pain, can state a claim for deliberate indifference sufficient to survive a motion to dismiss. *See Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) ("Hathaway II") (allegations that prison doctor delayed prisoner's surgery for over two years although he knew prisoner had two broken pins in his hip, was sufficient to meet both components of deliberate indifference claim and to withstand a motion to dismiss); *Archer v. Dutcher,* 733 F.2d 14, 16 (2d Cir.1984) (if prison officials did delay "medical aid-even for 'only' five hours-in order to make [the prisoner] suffer, surely a claim would be stated under *Estelle* "); *Koehl v. Dalsheim,* 85 F.3d 86, 88 (2d Cir.1996) (deprivation of prescriptive eye glasses constitutes denial of serious medical need and satisfies objective component; although deprivation did not cause pain, it prolonged plaintiffs suffering). *See also Candelaria v. Coughlin,* No. 91 Civ. 2978, 1996 WL 88555, at 7-8 (S.D.N.Y.1996) (denying cross-motions for summary judgment because the parties disputed whether plaintiffs claims of medical injury based on failure to provide proper wheelchair were "serious").

*6 Here, plaintiff alleges delay as well as pain. Plaintiff alleges he waited in bed for six and a half months before the arrival of the first "defective" wheelchair and another eight months before the delivery of the second chair. Furthermore, plaintiff contends that, after the C.O.R.C. approved the wheelchair request in his first grievance, defendants simply reordered the same chair, knowing full well that plaintiff would reject it. Defendants have not disputed these allegations and appear to agree that at least the first wheelchair was inappropriate for plaintiffs medical needs. (Ex. C-4; Def's Mot. Dismiss at 7.) Accordingly, although some question exists as to the viability of plaintiff's claim, the Court nevertheless finds that, as alleged, and in the absence of any medical documentation dispositively evincing that the second wheelchair offered to defendant was appropriate for his medical needs, plaintiff's claim is sufficient to withstand a motion to dismiss.

**V. *Retaliation Claims***

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

Plaintiff also alleges that prison officials subjected him to a "great deal of harassment" while he waited for an appropriate wheelchair. Plaintiff insinuates that by this harassment, prison officials retaliated against him for filing grievances. Plaintiff claims this harassment to have included an illegal cell search, confiscation of legal materials he needed for court, false misbehavior reports, curtailed socializing, and a forced transfer to another correctional facility.

The Second Circuit has recognized that prison officials may not retaliate against prisoners for exercising their constitutional rights. *See Colon v. Coughlin,* 58 F.3d 865, 872 (2d Cir.1995) (citing *Franco v. Kelly,* 854 F.2d 584, 589 (2d Cir.1988)). These rights include a prisoner's constitutional right to file grievances seeking administrative redress. *Franco,* 854 F.2d at 589. Nevertheless, "because we recognized ... the ease with which claims of retaliation may be fabricated, we examine prisoners claims of retaliation with care." *Colon,* 58 F.3d at 871 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir.1983)). Given the possibilities for such abuse, the Second Circuit requires a "higher level of detail in pleading [retaliation claims]." *Gill v. Mooney,* 824 F.2d 192, 194 (2d Cir.1987).

A plaintiff alleging retaliation "bears the burden of showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating fact in the prison officials' decision to discipline plaintiff." *Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) (citing *In Mount Healthy Sch. Dist. V. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). In order for a plaintiff to maintain a retaliation claim, the plaintiff must prove that the alleged wrongful action would not have been taken but for the exercise of his constitutional rights. *See Haymes v. Montanye,* 547 F.2d 188, 191 (2d Cir.1976). Action that is taken for both valid and invalid reasons will not be deemed unconstitutional if the action would have been taken in any event for the constitutionally valid reason. *See Graham,* 89 F.3d at 79.

**\*7** Where retaliation claims may have merit, the prisoner making the claim must be accorded the full procedural and substantive safeguards available to other litigants. *See Colon,* 58 F.3d at 872. "[A] retaliation claim supported by specific and detailed factual allegations which amounts to a persuasive case ought to be pursued with full discovery. However, a Complaint which alleges retaliation in wholly conclusory terms may be safely dismissed on the pleadings alone." *Flaherty,* 713 F.2d at 13; *accord Colon,* 58 F.3d at 872.

A. *The Cell Search*

Plaintiff's cell search allegation is dismissed in its entirety because the Supreme Court has held that searches of cells implicate no protected constitutional rights, even if the search is arbitrary or retaliatory in nature. *See Hudson v. Palmer,* 468 U.S. 517, 527, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See also Payne v. Axelrod,* 871 F.Supp. 1551, 1555 (N.D.N.Y.1995); *Demaio v. Mann,* 877 F.Supp. 89, 95 (N.D.N.Y.1996).

B. *Denied Access to the Courts and Deprivation of Legal Property*

Any claim plaintiff may be making for the deprivation of his legal documents and medical records must also be dismissed. A claim for deprivation of property does not lie in federal court if state courts provide an adequate remedy for the deprivation of that property. *Hudson,* 468 U.S. at 533; *Parratt v. Taylor,* 451 U.S. 527, 542-543, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds,* 474 U.S. 327, 330-331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Marino v. Ameruso,* 837 F.2d 45, 47 (2d Cir.1988). New York provides such a remedy in § 9 of the New York Court of Claims Act, which permits an inmate to pursue a claim for deprivation of property against the State of New York in the New York Court of Claims. *See Demaio,* 877 F.Supp. at 95. Therefore, plaintiff may not pursue his deprivation of property claim in this Court.

Nor has plaintiff stated a constitutional claim that confiscation of his legal materials deprived him of reasonable access to court. While confiscation of an inmate's legal materials can be actionable as a constitutional violation, *see Tyler v. "Ron" Deputy*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

*Sheriff,* 574 F.2d 427,429 (8th Cir.1978) (citing *Sigafus v. Brown,* 416 F.2d 105 (7th Cir.1969)); *see also Tyler v. Woodson,* 597 F.2d 643 (8th Cir.1979), to prevail on such a claim, a plaintiff must establish actual injury. *See Monsky v. Moraghan,* 127 F.3d 243, 1997 WL 606487 (2d Cir. Oct 2, 1997) (quoting *Lewis v. Casey,* 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)) ("[A] plaintiff must demonstrate that a defendant caused 'actual injury,' i.e., took or was responsible for actions that 'hindered [a plaintiff's] efforts to pursue a legal claim.' ").

Here, the only allegation plaintiff makes suggesting actual injury is that, following the search of his cell in 1995, he did not receive back all of his medical records and legal papers relevant to a then pending legal matter. [FN7] (Ex. G-4.) However, plaintiff has not alleged anything to indicate that the confiscation in fact interfered with his court access in that legal action. Moreover, the exhibits to plaintiff's Complaint indicate that plaintiff's property has been returned to him. [FN8] In short, these allegations are insufficient to establish any violation of a constitutional nature. At best they provide support for a claim of deprivation of personal property, which, as mentioned above, is not properly before this Court.

> FN7. Apparently, plaintiff had filed or was intending to file a legal action in a different matter.

> FN8. The exhibits to plaintiff's Complaint reflects that plaintiff filed a grievance with the C.O.R.C. on January 9, 1995, and again on March 17, 1995, requesting that his legal documents and other property be returned. (Ex. G-1 & I-1.) On March 22, 1995, the C.O.R.C. found that all confiscated property had been returned to the plaintiff on January 12, 1995. (Ex. G-6.) On August 30, 1995, the C.O.R.C. again determined that: (1) plaintiff's property was returned on January 12, 1995; (2) plaintiff refused to sign for his property; and (3) plaintiff's refusal to sign was noted in the hospital log book. (*See* Complaint ¶ 8; Ex. I-4.)

C. *Retaliatory False Misbehavior Reports and Curtailed Socializing*

*8 Construed liberally, plaintiff alleges that defendants fabricated false misbehavior reports against him and limited his socializing in retaliation for initiating prison grievances. Plaintiff's sole allegations in this respect are that he was "accused of sex charges that never happened" and was "constantly found guilty of charges" to keep him on "some kind of restriction ... or locked up in a room 24 hours a day." Plaintiff further alleges that defendant Rassman harassed him by preventing inmates from socializing with plaintiff.

The Second Circuit has held that " '[a]lthough the filing of unfounded charges d[oes] not give rise to a per se constitutional violation action under section 1983,' ... a § 1983 claim may stand when the false charges are allegedly brought in retaliation for an inmate's exercise of his substantive due process rights." *Rodgriquez v. Phillips,* 66 F.3d 470, 477 (2d Cir.1995) (quoting *Freeman v. Rideout,* 808 F.2d 949, 953 (2d Cir.1986)). However, as noted above, claims of retaliation must be examined with skepticism and care, *Flaherty,* 713 F.2d at 13, and a "higher level of detail in pleading" is required. *Gill,* 824 F.2d at 194.

With respect to plaintiff's allegations of false misbehavior reports and curtailed socializing, the Court finds that plaintiff has failed to allege the "higher level of detail" required to sustain these claims against a motion to dismiss. *See Gill,* 824 F.2d at 194. Even viewed under liberal *pro se* pleading considerations, *Haines,* 404 U.S. at 520-21, plaintiff's allegations as to these claims are so conclusory and lacking of any detail whatsoever that the Court can not find them legally feasible. Consequently, plaintiff's claims of retaliatory false misbehavior reports and curtailed socializing are hereby dismissed.

D. *Retaliatory Transfer*

Liberally construing plaintiff's pleadings, his last claim of retaliation concerns his transfer from Green Haven to another correctional facility on October 26, 1995, eight days after plaintiff's third wheelchair grievance. Plaintiff claims he was transferred to "further delay my getting a wheelchair ... and to prolong my stay in prison."

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

While there is no right to be placed in a particular facility, *Montanye v. Haymes,* 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), an inmate can not be transferred solely in retaliation for the exercise of his constitutional rights. *See Meriwether v. Coughlin,* 879 F.2d 1037, 1047 (2d Cir.1989); *see also Lowrance v. Coughlin,* 862 F.Supp. 1090, 1099 (S.D.N.Y.1994). The filing of prison grievances is a constitutionally protected right. *Franco v. Kelly,* 854 F.2d at 589.

The temporal proximity between the grievance filing and the transfer does provide circumstantial evidence suggesting that the transfer may have been in retaliation for plaintiff's grievance. Circumstantial facts in a retaliation claim can suggest an improper motive sufficient to withstand a motion to dismiss. *See Gagliardi v. Village of Pawling,* 18 F.3d 188 (2d Cir.1994) (denying motion to dismiss where retaliation claim alleged a chronology of events from which retaliatory intent could be inferred); *see also Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir.1987) ("Chronology of events from which retaliatory animus on part of the defendants could be inferred" sufficient to overcome motion to dismiss).[FN9] Because this is a motion to dismiss and not a motion for summary judgment, the defendants properly have not provided the Court with any dispositive records or information indicating that the transfer was not retaliatory in nature. Under these circumstances, however, the Court finds that plaintiff does allege a sequence of events which may be read as providing some support for an inference of retaliation sufficient to withstand a motion to dismiss.

FN9. In contrast, circumstantial evidence of retaliatory animus is not sufficient to withstand a motion for summary judgment. *See Blue v. Koren,* 72 F.3d 1075, 1084 (2d Cir.1995) (mere temporal proximity of events may "fuel ... suspicions" but will not withstand a motion for summary judgment); *Dietz v. Damas,* 948 F.Supp. 198 (E.D.N.Y.1996).

**\*9** Nevertheless, the Court must dismiss plaintiff's retaliatory transfer claim because he has not alleged the personal involvement of any of the named defendants in the transfer decision. It is well established that as a

prerequisite to a damage award under 42 U.S.C. § 1983, a plaintiff must allege the defendant's direct or personal involvement in the alleged constitutional deprivation. *See Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). Plaintiff has not done so with respect to his transfer claim and accordingly the claim must be dismissed. The Court grants plaintiff permission, however, to amend his Complaint within thirty days of this order, reasserting claims against or adding any defendants whom he can plead with particularity had personal involvement in his retaliatory transfer claim.

## VI. *Personal Involvement*

As stated above, plaintiff must allege a defendant's direct personal involvement in a constitutional deprivation in order to receive a damage award under § 1983. *See Wright,* 21 F.3d at 501. Because the Court has dismissed the plaintiff's retaliation claims, the retaliation claims against Schneider, Connelly, Pease, Rassman, Zaken, and Bennett are dismissed.

Concerning the plaintiff's allegation of deliberate indifference to plaintiff's medical needs against defendants Zwillinger, Stevens, and Manion, plaintiff has alleged facts of their direct involvement, knowledge, and responsibility sufficient to withstand a motion to dismiss.

Plaintiff makes no claims of direct involvement by defendants Goord (Department of Correctional Services Acting Commissioner), Coombe (Former Commissioner), and Artuz (Green Haven Superintendent) in any constitutional violation. Liability for damages in a § 1983 action may not be based in respondent superior or vicarious liability doctrines. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Absent allegations of personal involvement, all claims against Goord, Coombe, and Artuz are hereby dismissed.

## VII. *Eleventh Amendment Immunity*

Finally, defendants assert that the instant Complaint is barred by the Eleventh Amendment because defendants

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)
(Cite as: 1997 WL 714878 (S.D.N.Y.))

were acting in their official capacities with regard to the claims alleged and thus are immune from suit. It is unclear, however, whether plaintiff is suing defendants in their official or in their individual capacities. In a case such as this, where doubt exists as to whether an official is sued in his individual or official capacity, the course of the proceedings will generally resolve the ambiguity by revealing the nature of the liability sought to be imposed. *See Kentucky v. Graham,* 473 U.S. 159, 167 n. 4, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (citing *Brandon v. Holt,* 469 U.S. 464, 469, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). It is improper at an early stage in the proceedings automatically to construe a Complaint as focusing on one capacity and not the other. *See Frank v. Relin,* 1 F.3d 1317, 1326 (2d Cir.). Accordingly, the Court assumes for the purposes of this motion that plaintiffs claims are asserted against defendants in both their individual and their official capacities.

**\*10** To the extent that plaintiff asserts claims for monetary damages against the defendants in their official capacities, these claims must be dismissed. A claim against an employee of the New York State Department of Corrections for actions taken in his or her official capacity is, in effect, a suit against the State. Absent the State's waiver or consent, neither of which have been given here, the Eleventh Amendment bars from federal court all § 1983 suits for legal or equitable relief brought by citizens against the State and its agencies. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (per curiam); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (reaffirming Edelman holding that § 1983 does not override the immunity granted to States under the Eleventh Amendment). Thus, plaintiffs claims for monetary damages from defendants in their official capacities are dismissed as barred under the Eleventh Amendment. *See generally Dube v. State Univ. of New York,* 900 F.2d 587, 594-95 (2d Cir.1990). However, plaintiff may maintain his claims against defendants in their individual capacities. *See generally Hafer v. Melo,* 502 U.S. 21, 30-31, 112 S.Ct. 358, 116 L.Ed.2d 301(1991) ("[T]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal' liability on state officials under sec.1983.") (citation omitted).

## CONCLUSION

Defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is GRANTED in part and DENIED in part. The Court denies the motions of defendants Zwillinger, Stevens, and Manion to dismiss plaintiff's claim against them of deliberate indifference to plaintiff's medical needs. The Court grants the motions of defendants Goord, Coombe, Artuz, Schneider, Connelly, Pease, Rassman, Zaken, and Bennett to dismiss the retaliation and other claims against them in their entirety. As noted herein, plaintiff has thirty days from the date of this Order to amend his Complaint to allege the personal involvement of defendants in his retaliatory transfer claim. If plaintiff adds new defendants, he must effect service upon them. **The Court schedules a conference for 1/16/98, at 2:00 pm, at which time defendants will advise the Court of the status of discovery. Attached is a Pro Se Conference notice that explains to the plaintiff how he may participate in the conference.**

## SO ORDERED

S.D.N.Y.,1997.
Gadson v. Goord
Not Reported in F.Supp., 1997 WL 714878 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Ⓒ  Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Wayne HARGROVE, Plaintiff,
v.
Sheriff Edward RILEY; Nassau County Correctional
Facility, et al; Nassau County University Medical Staff
and Nassau County Correctional Facility, Defendants.
**Civil Action No. CV-04-4587 (DGT).**

Jan. 31, 2007.

Wayne Hargrove, Ossining, NY, pro se.

Alexander V. Sansone, Troy & Troy, Lake Ronkonkoma,
NY, Joseph Carney, Mineola, NY, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, J.

**\*1** Inmate Wayne Hargrove ("Hargrove" or "plaintiff")
brings this *pro se* action pursuant to 42 U.S.C. § 1983
against the Nassau County Sheriff, Nassau County
Correctional Facility ("NCCF") and NCCF's medical staff,
(collectively, "defendants"), seeking damages for injuries
allegedly caused by defendants while he was incarcerated
at NCCF. Defendants now move for summary judgment
pursuant to Fed.R.Civ.P. 56 arguing, *inter alia,* that
Hargrove's claims should be dismissed because he failed
to exhaust administrative remedies, as required by the
Prison Litigation Reform Act of 1995 ("PLRA"), 42
U.S.C. § 1997e. For the following reasons, defendants'
motions for summary judgment are granted.

**Background**

On August 27, 2004,[FN1] Hargrove filed a complaint,
alleging that defendants violated his civil rights when they
forcibly administered purified protein derivative skin tests
("PPD test") to test for latent tuberculosis ("TB") in April
2002, 2003 and 2004 while he was incarcerated at NCCF.
Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A. Hargrove
named Nassau County Sheriff Edward Reilly ("Reilly"),
NCCF and Nassau County University Medical Staff[FN2] as
defendants.[FN3] On November 22, 2004, after discovery,
County Defendants and NHCC Defendants filed separate
motions for summary judgment pursuant to Fed.R.Civ.P.
56. Both defendants properly filed a Local Rule 56.1
Statement and served Hargrove a Notice to *Pro Se* Litigant
Opposing Motion for Summary Judgment, pursuant to
Local Civil Rule 56.2.

FN1. Hargrove signed the complaint August 27,
2004. The *pro se* clerk's office received and filed
the complaint on September 20, 2004. Under the
prison mail-box rule, a *pro se* prisoner's
complaint is deemed filed when it is delivered to
prison authorities. *See, e.g., Walker v.
Jastremski, 430 F.3d 560, 562 (2d
Cir.2005)*(deeming *pro* se prisoner's
action filed on date complaint was handed to
prison officials). There is no evidence in the
record as to when Hargrove handed the
complaint to prison officials. However, it is clear
the operative date is between August 27, 2004
and September 20, 2004. As discussed, *infra,*
both of these dates occur before Hargrove
properly exhausted the administrative remedies
available to him at NCCF.

FN2. The Nassau County University Medical
Staff are employed by the Nassau Health Care
Corporation ("NHCC"). Pursuant to the
Correctional Center Health Services Agreement
between the County of Nassau and NHCC, dated
September 24, 1999, NHCC provides medical
services for inmates at NCCF. County Defs.'s

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Not. of Motion, Decl., at 1.

> **FN3.** Reilly and NCCF are represented separately from NHCC. Accordingly, when a distinction is necessary, Reilly and NCCF will be referred to as "County Defendants" and Nassau County University Medical Staff and NHCC will be referred to as "NHCC Defendants."

**(1)**

**Tuberculosis Testing at NCCF**

Upon entering NCCF, new prisoners must first go through medical intake. Aff. of Kim Edwards, ("Edwards Aff.") ¶ 3. This standard process usually takes seventy-two hours. Edwards Aff. ¶ 4. During medical intake, NCCF tests inmates for TB. Aff. of Getachew Feleke ("Feleke Aff.") ¶ 3. NCCF generally uses a PPD test to detect latent TB. Feleke Aff. ¶ 3. However, if an inmate has previously tested positive for TB, it is NCCF's policy to test for TB using an x-ray instead.[FN4] Feleke Aff. ¶ 3. As part of its Infectious Disease Program, NCCF re-tests inmates for TB each year, beginning after they have been housed in that facility for one year. Edwards Aff. ¶ 5.

> **FN4.** According to WebMD, "[a] tuberculin skin test should not be done for people who have a(1) Known TB infection [or a] (2) Positive tuberculin skin test in the past. A second test may cause a more severe reaction to the TB antigens." Jan Nissl, RN, BS, *Tuberculin Skin Tests,* W E B M D , h t t p : / / www.webmd.com/hw/lab_tests/hw203560.asp (last visited Jan. 31, 2007).

**(2)**

**Hargrove's Tuberculosis Testing at NCCF**

On March 15, 2002, Hargrove was incarcerated at NCCF.

NHCC Defs.' 56.1 Statement ¶ 1. Before entering the general population, Hargrove was processed through medical intake. NHCC Defs.' 56.1 Statement ¶ 2. The NCCF Medical Intake Chart for Hargrove, dated March 15, 2002 ("3/15/02 Chart"), shows that Hargrove informed medical staff that he had previously been exposed to tuberculosis. NHCC Defs.' Notice of Mot., Ex. C, at 1; NHCC Defs.' 56.1 Statement ¶ 2. The 3/15/02 Chart also shows that Hargrove reported testing positive to a prior PPD test and that he had been treated for TB in 2000. NHCC Defs.' Notice of Mot., Ex. C, at 1. Hargrove alleges that he was exposed to and treated for TB in 1997. Hargrove's Aff. in Opp. to Mot. for Summary Judgment, ("Aff. in Opp."), Ex. A at 1-2. Defendants contend that Hargrove was given an x-ray during the medical intake process because of his reported positive PPD test, and that the x-ray was negative, showing no active TB infection. NHCC Defs.' 56.1 Statement ¶ 2; Edwards Aff. ¶ 3. Without specifying a date, Hargrove generally states that his "request to be x-rayed was denied." Aff. in Opp. at 3.

**\*2** Pursuant to NCCF's Infectious Disease Program, after being incarcerated in NCCF for a year, Hargrove was scheduled to be re-tested for TB. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. On May 24, 2003, Hargrove was given a PPD skin test. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. This test was negative. Edwards Aff. ¶ 5; NHCC Defs.' 56.1 Statement ¶ 4. According to Hargrove, he requested an x-ray instead of a PPD test because of his previous exposure to TB, but was forced to submit to the PPD test. He also alleges that defendants threatened to put him in "keep lock" or "lock up" unless he submitted to the PPD test.[FN5] Complaint, Ex. C; Aff. in Opp. at 1-4, Ex. A.

> **FN5.** Hargrove has made contradictory statements about being placed in "keep lock" or "lock up". It is unclear whether he is alleging that defendants threatened to place him in "lock up" unless he submitted to the PPD test or whether he was actually placed in "lock up" until such time that he agreed to submit to the PPD tests. For example, in his complaint, Hargrove states that when he "refused to submit to another [PPD] test, the Correctional Authorities were brought in and placed [him] in lock up." Complaint ¶ 4. In a hearing before Magistrate Judge Bloom on

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

January 31, 2005, Hargrove stated that he took the PPD tests because he was told that he would be placed in "lock up" until he submitted to the test. Hr'g Tr. 6:1-18; 9:5-10:10. In Exhibit B to his complaint, Hargrove alleges both that he was given an unwarranted TB shot and that when he refused the same shot he was placed in "keep lock." Complaint, Ex. B. There is no evidence in the record that Hargrove was ever segregated from the general population while housed at NCCF, outside of the seventy-two hour initial medical intake period. Aff. of Sgt. Neumann ("Neumann Aff.") at 1-2 (referring to prison records showing Hargrove's holding locations which demonstrate that he was never placed in "lock up"); NCCF 56.1 Statement ¶ E. Whether or not Hargrove was actually placed in "lock up" is not a material fact for purposes of this motion; as explained in detail, *infra,* Hargrove's failure to exhaust administrative remedies under the PLRA precludes a consideration of the merits of his Section 1983 claim.

The following year, in June of 2004, Hargrove was scheduled to be retested. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Because of the contradiction between the negative May 2003 PPD test and his reported positive history, NCCF contacted the Infectious Disease Department of the Nassau County Medical Center. Edwards Aff. ¶ 6. It was suggested that Hargrove be given a two-step PPD test, administered fifteen days apart. Feleke Aff. ¶ 4; Edwards Aff. ¶ 6. Hargrove was given these two PPD skin tests in June 2004. Edwards Aff. ¶ 6; NHCC Defs.' 56.1 Statement ¶ 5. Again, Hargrove alleges that these tests were administered against his will and under threat of being placed in quarantine. Complaint, Exs. A, B; Aff. in Opp., Ex. A.

On December 3, 2004, Hargrove was seen by a physician's assistant. NHCC Defs.' 56.1 Statement ¶ 6. During this meeting, Hargrove complained of a dry cough and that the site on his forearm where the June 2004 PPD tests had been administered was red and swollen. NHCC Defs.' 56.1 Statement ¶ 6; 11/28/04 Sick Call Request.

Hargrove's December 18, 2004 chart notes a positive PPD

test and an order was placed in the chart that Hargrove not be submitted for future PPD tests. Edwards Aff. ¶ 7; NHCC Defs.' 56.1 Statement ¶ 8. *See also* 11/19/2004 Grievance.

Hargrove alleges that the following physical ailments were caused by the PPD tests: chronic coughing, high blood pressure, chronic back pain, lung infection, dizzy spells, blurred vision and a permanent scar on both his forearms. Complaint, Ex. C; Aff. in Opp. at 3-4.

**(3)**

**NCCF's Inmate Grievance Procedure**

NCCF has had an inmate grievance program ("IGP") in place since 2001. Aff. of Kenneth Williams, ("Williams Aff."), at 2. NCCF's IGP is carried out in conformance with the New York State Commission of Corrections Minimum Standards and Regulations for Management of County Jails and Penitentiaries ("Minimum Standards"). *Id.*

The IGP is designed to resolve complaints and grievances that an inmate may have regarding the inmate's care and treatment while incarcerated at NCCF. Williams Aff. at 2. Upon entering NCCF, all inmates receive a copy of the NCCF inmate handbook, which outlines the IGP. *Id.*

**\*3** The record does not include an actual copy of NCCF's IGP, but the NCCF's IGP is detailed in the affidavit of NCCF Investigator Kenneth Williams. [FN6] The IGP encourages inmates to resolve their grievances informally with the staff member assigned to the inmate housing unit first. *Id.* If an acceptable resolution cannot be reached, inmates must then proceed through the formal three-step process set out in the IGP. *Id.* at 3.

FN6. Hargrove does dispute any statements made by Investigator Williams regarding the inmate grievance procedure, time limits or its availability to him. Furthermore, Hargrove does

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

not dispute that he received a handbook outlining the IGP.

The first step requires an inmate to submit his grievance form FN7 to the Inmate Grievance Unit by placing it in a locked box located in each housing area, "within five days of the date of the act or occurrence giving rise to the grievance." FN8 *Id.* at 2-3. NCCF indexes all grievance forms filed by inmates in a log book and in a computer system. *Id.* at 1, 3. Once a grievance form is received by the Inmate Grievance Unit, the grievance is investigated and the inmate will receive a written determination of the outcome from the Inmate Grievance Coordinator in Section II of the grievance form. FN9 *Id.* at 3. The inmate is then given a choice to accept or appeal the decision by checking the desired selection and signing his name in Section III of the grievance form. *See, e.g.,* 11/19/2004 Grievance form. If the inmate is not satisfied with the decision of the Inmate Grievance Coordinator, the inmate may appeal the determination to the Chief Administrative Officer. Williams Aff. at 3. Finally, if the inmate is not satisfied with the Chief Administrative Officer's determination, the inmate may appeal to the New York State Commission of Correction Citizen's Policy and Complaint Review Council ("Council"). *Id.* at 3. The Council will then render a final determination. *Id.* at 3.

FN7. The grievance forms contain four sections to be utilized throughout all three steps of the IGP. Section I provides space for the inmate to explain his complaint and the actions he requests as relief. Section II is for the decision of the Inmate Grievance Coordinator. Section III is titled "Acceptance/Appeal of Grievance Coordinator's decision" and contains two mutually exclusive options in which the inmate must choose one or the other: "I have read and accept the Grievance Coordinator's decision," or "I have read and appeal the Grievance Coordinator's decision." Section IV provides space for the decision of the Chief Administrative Officer.

FN8. Hargrove has not argued that he was unaware of this five-day deadline.

FN9. There is no evidence in the record specifying the how long an inmate has to appeal inaction by the Inmate Grievance Unit.

(4)

**Authenticity of the Grievance Forms and Other Documents Submitted by Hargrove**

In support of his allegations that he continuously informed defendants that he had been exposed to TB and, therefore, should not have been given PPD tests, Hargrove submitted three letters with his complaint, two of which were addressed to the Inmate Grievance Committee and one of which was addressed to "To whom it may concern." Complaint, Exs. A-C. He also submitted five complaint letters written to Sheriff Reilly, seventeen sick call requests and nine grievance forms during discovery and with his Affidavit in Opposition to Defendants' Motion for Summary Judgment, explaining that some of the medical records and notarized letters were "missing." Aff. in Opp, Ex. A at 2. Defendants call the authenticity of most of these documents into question, contending that Hargrove never submitted any grievance form or complaint letter before he filed his complaint. County Defs.' Mem. of Law at 16-21; County Defs.' 56.1 Statement at ¶¶ B2, C3, D3.

Kenneth Williams, an investigator at NCCF in the Inmate Grievance Unit, testified that he reviewed all of the grievance forms, complaint letters and sick call requests annexed to Hargrove's Complaint and to Hargrove's Affidavit in Opposition to Defendants' Motion for Summary Judgment. Williams Aff. at 2. Williams testified that he examined the grievance records at NCCF and searched "for any grievances by plaintiff/inmate Hargrove" and found "only two." FN10 Williams Aff. at 1. The first grievance, dated November 19, 2004, complained that the medical staff continued "forcing [Hargrove] to take a T.B. shot while [he] keep[s] telling them that [he] has been exposed to T.B." 11/19/2004 Grievance; Williams Aff. at 1. In response to this grievance, Hargrove's "positive" TB status was noted in his medical records and an order was placed in Hargrove's medical chart, stating that Hargrove not be subjected to future PPD tests. 11/19/2004 Grievance, Section II;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

Williams Aff. at 1; NHCC Defs.' 56.1 Statement ¶ 8; Edwards Aff. ¶ 7. In Section III of the 11/19/2004 Grievance, Hargrove acknowledged that he had read the Grievance Coordinator's decision, and that he chose to accept the decision instead of appealing it. 11/19/2004 Grievance. The other grievance received by the Grievance Unit, dated May 11, 2005, complained of an unrelated matter. 5/11/2005 Grievance (complaining of back problems and requesting the return of his medical shoes); Williams Aff. at 1. Thus, Williams concluded that, beside the 11/19/2004 and 5/11/2005 Grievance Forms, none of the other documents were "received by the grievance unit, and, given the locked box system, the grievance-forms were never submitted by plaintiff/inmate." Williams Aff. at 2.

FN10. It is NCCF's procedure to forward to the attention of the Grievance Unit all official grievance forms and complaint letters-even ones not specifically addressed to the Grievance Unit. Williams Aff. at 3.

*4 A visual examination of the grievance forms Hargrove submitted in support of his claims suggests forgery. Five of the nine grievance forms were requests to stop PPD testing. See April 19, 2002 grievance; April 28, 2002 grievance; April 20, 2003 grievance; April 28, 2003 grievance; November 19, 2004 grievance. The remaining grievance forms concerned Hargrove's requests for medical shoes. See March 18, 2002 grievance; July 6, 2002 grievance; February 20, 2003 grievance; May 11, 2005 grievance. Of the grievance forms complaining of unwanted PPD tests, the April 28, 2002 grievance form is a patent photocopy of the April 19, 2002 grievance form, and the April 28, 2003 grievance form is a patent photocopy of the April 20, 2003 grievance form, with only the handwritten dates changed. The only potentially authentic grievance forms relating to Hargrove's complaint about the PPD testing are dated April 19, 2002, April 20, 2003, and November 19, 2004. Of these grievance forms, only the November 19, 2004 has been authenticated by NCCF personnel. See generally Williams Aff. at 1-4.

Turning to the complaint letters addressed to Reilly, many contain notary stamps cut from the bottom of unrelated

documents and photocopied onto the bottom of the complaint letters. See County Defs.' Mem. of Law at 18-21. C.O. Thomas McDevitt and C.O. Paul Klein, both of whom perform notary services for prisoners at NCCF, have submitted sworn affidavits, stating that they kept individual Notary Log Books covering all dates relevant to this litigation. Aff. of C.O. Klein, ("Klein Aff."), at 1; Aff. of C.O. McDevitt, ("McDevitt Aff."), at 1. McDevitt's Notary Log Book shows that he notarized only one document for Hargrove. This document, dated May 13, 2002, was a motion related to Hargrove's criminal trial. McDevitt Aff. at 1-2. Hargrove signed the Notary Log Book acknowledging receipt of that notarized motion. McDevitt Aff. at 2. McDevitt states that he never notarized any other documents for Hargrove. McDevitt Aff. at 2. However, McDevitt's stamp and signature dated May 13, 2002 (the date of the legitimate notarization) appear on Hargrove's letter to Sheriff Reilly dated May 10, 2002. County Defs.' Not. of Motion, Ex. A.

These facts repeat themselves in regard to the documents bearing the notary stamp and signature of Klein. Klein had performed several legitimate notarizations for Hargrove in connection to Hargrove's criminal trial. Klein Aff. at 1-2. Hargrove signed Klein's Notary Log Book acknowledging receipt of those notarized documents. Klein Aff. at 2. However, Klein states that he never notarized any of Hargrove's letters addressed to Sheriff Reilly that bear Klein's stamp and signature. Klein Aff. at 2. On all of the documents that Hargrove submitted bearing Klein's stamp and signature, the dates and signatures of Klein match identically to the dates on which he had performed legitimate notarizations for Hargrove in connection with his criminal trial. Defendants argue it is clear that the documents bearing the stamps and signatures of McDevitt and Klein were not actually notarized by these notaries. County Defs.' Mem. of Law at 17-22.

*5 Hargrove does not deny these allegations. Instead, he resubmits the documents that McDevitt and Klein testify they did not notarize with his Affidavit in Opposition and insists that the documents "refute[ ] the assertions put forth by the defendants." Aff. in Opp. at 2.

**Discussion**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

**(1)**

**Summary Judgment Standard**

A motion for summary judgment is granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A court ruling on a summary judgment motion must construe the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Williams v. Metropolitan Detention Center,* 418 F.Supp.2d 96, 100 (E.D.N.Y.2005). Defendants, the moving party in this action, bear the burden of demonstrating the absence of a genuine issue of material fact. *Baisch v. Gallina,* 346 F.3d 366, 371 (2d Cir.2003).

As Hargrove is proceeding *pro se,* his complaint must be reviewed carefully and liberally, and be interpreted to "raise the strongest argument it suggests," *Green v. United States,* 260 F.3d 78, 83 (2d Cir.2001), particularly when civil rights violations are alleged, *see, e.g., McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir.2004). Plaintiff's complaint does not specify the legal theories upon which it relies, but, in construing his complaint to raise its strongest arguments, it will be interpreted to raise claims under 42 U.S.C. § 1983. *See, e.g., Dufort v. Burgos,* No. 04-CV-4940, 2005 WL 2660384, at *2 (E.D.N.Y. Oct. 18, 2005) (liberally construing plaintiff's complaint, which failed to specify the legal theory or theories upon which it rested, as, *inter alia,* a claim under 42 U.S.C. § 1983); *Williams,* 418 F.Supp.2d at 100 (same).

**(2)**

**Prison Litigation Reform Act**

**a. Purpose of the Prison Litigation Reform Act**

The PLRA was intended to "reduce the quantity and improve the quality of prisoner suits." *Woodford v. Ngo,* --- U.S. ----, 126 S.Ct. 2378, 2387 (2006) (quoting *Porter v. Nussle,* 534 U.S. 516, 524 (2002)). It seeks to eliminate unwarranted interference with the administration of prisons by federal courts, and thus " 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.' " *Woodford,* 126 S.Ct. at 2387 (quoting *Porter,* 534 U.S. at 525).*See also Booth v. Churner,* 532 U.S. 731, 739 (2001). Formal grievance procedures allow prison officials to reconsider their policies, implement the necessary corrections and discipline prison officials who fail to follow existing policy. *See Ruggiero v. County of Orange,* 467 F.3d 170, 177-78 (2d Cir.2006).

**b. The Exhaustion Requirement**

The PLRA's "invigorated" exhaustion provision, 42 U.S.C. § 1997e(a), provides the mechanism to reduce the quantity and improve the quality of prisoners' suits by requiring that prison officials have the opportunity to address prisoner complaints through internal processes before allowing a case to proceed in federal court. *Woodford,* 126 S.Ct. at 2382 (citing *Porter,* 534 U.S. at 524).Section 1997e(a) provides that:

**\*6** [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement is a mandatory condition precedent to any suit challenging prison conditions, including suits brought under Section 1983. *Woodford,* 126 S.Ct. at 2383;*Ruggiero,* 467 F.3d at 174;*Williams,* 418 F.Supp.2d at 100-01. The exhaustion provision is applicable to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. *Giano v. Goord,* 380 F.3d 670, 675 (2d Cir.2004); *see also Woodford,* 126 S.Ct. at 2382-83 ("[A] prisoner must now exhaust

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.") (citing *Booth*, 532 U.S. at 734).

In June 2006, the Supreme Court held that the PLRA requires "proper exhaustion" before a case may proceed in federal court. *Woodford*, 126 S.Ct. at 2387. "Proper exhaustion" requires a prisoner to use " 'all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).' " *Ruggiero*, 467 F.3d at 176 (citing *Woodford*, 126 S.Ct. at 2385 (emphasis in original)). Although the level of detail necessary to properly exhaust a prison's grievance process will vary from system to system, *Jones v. Bock*, 127 S.Ct. 910, 2007 WL 135890, at *12 (Jan. 22, 2007), "proper exhaustion" under the PLRA " 'demands compliance with [that] agency's deadlines and other critical procedural rules.' " *Ruggiero*, 467 F.3d at 176 (quoting *Woodford*, 126 S.Ct. at 2386). Thus, the PLRA's exhaustion requirement is not satisfied by "untimely or otherwise procedurally defective attempts to secure administrative remedies." *Ruggiero*, 467 F.3d at 176 (citing *Woodford*, 126 S.Ct. at 2382).

(3)

**Exhaustion Analysis: Hargrove did not Exhaust the Administrative Remedies Made Available by NCCF prior to Bringing Suit**

Section 1997e(a) of the PLRA applies to Hargrove's complaint; Hargrove was and continues to be confined in a correctional facility, *see Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir.2004), and Hargrove's claim is about a "prison condition" within the meaning of the PLRA, *see Williams*, 418 F.Supp.2d at 101. *See also Sloane v. W. Mazzuca*, No. 04-CV-8266, 2006 WL 3096031, at *4 (S.D.N.Y. Oct. 31, 2006) (recognizing PLRA's application to complaint alleging retaliation by prison officials for plaintiff's refusal to consent to a PPD test). Accordingly, the merits of Hargrove's Section 1983 claims can only be addressed if it is first determined that Hargrove properly exhausted each claim under Section 1997e(a) of the PLRA before filing his complaint in federal court.

*7 Hargrove has submitted both forged [FN11] and authentic grievance forms in opposing defendants' motions for summary judgment. Excluding, for the moment, the forged documents, NCCF's records reflect that Hargrove did not submit his first grievance until after he filed the instant complaint. Williams Aff. at 1. Hargrove's first grievance complaining of unwanted PPD testing is dated November 19, 2004, Williams Aff. at 1, two to three months after Hargrove filed his complaint. Additionally, this first grievance, dated November 19, 2004, was submitted five months after the last PPD test was administered to him in June 2004. NHCC Defs.' 56.1 Statement ¶¶ 5,6. This five-month period far exceeds the five-day window provided by NCCF's IGP. Since Hargrove failed to comply with the IGP's deadlines, he did not properly exhaust the available administrative remedies. *Ruggiero*, 467 F.3d at 176 (" 'untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement.' ") (quoting *Woodford*, 126 S.Ct. at 2382).

> FN11. Based on an examination of the documents themselves, as well as the uncontradicted testimony of the notaries performing services for prisoners at NCCF, *see generally* Klein Aff.; McDevitt Aff., and of the investigator in the Inmate Grievance Unit, *see generally* Williams Aff., it appears that many of the documents submitted by Hargrove are forgeries. However, in order to view the facts in the light most favorable to Hargrove, and so as to avoid making findings of fact in a summary judgment motion, for the purposes of the exhaustion analysis, all of the documents will be considered to be authentic. However, for purposes of the sanctions analysis, the documents will be explored and the consequences of Hargrove's misrepresentations will be addressed.

Furthermore, even if the falsified grievance forms Hargrove submitted in support of his claim are considered authentic, they are still untimely. The diagnostic TB tests (whether x-ray or PPD tests) were given to Hargrove on March 15, 2002, May 24, 2003 and in June of 2004, but the grievance forms Hargrove submitted complaining of unwanted PPD tests are dated April 19, 2002, April 28, 2002, April 20, 2003, April 28, 2003 and November 19,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2004. None of these grievances were filed "within five days of the of the date of the act or occurrence giving rise to the grievance." Williams Aff. at 3. There is no evidence in the record suggesting that NCCF's IGP allows for a tolling of the five-day time limit in which to file a grievance.[FN12]

> FN12. Even if the submitted grievances had been filed within the proscribed time period, they only show that Hargrove's grievances reached an Inmate Grievance Coordinator, the first formal step of NCCF's three-step administrative grievance process; Hargrove never appealed to the Chief Administrative Officer. By failing to take the next available step in NCCF's IGP, Hargrove failed to satisfy the mandatory exhaustion requirement. *See, e.g., Williams, 418 F.Supp.2d at 101, 102* (dismissing *pro se* complaint where plaintiff could only show he exhausted two of the four-step process mandated by prison's administrative process).

While the letters to Reilly and sick call requests show that Hargrove attempted to bring his complaints about the PPD testing to the attention of the prison staff, *see, e.g.,* Aff. in Opp., Exs. A-D, NCCF's IGP requires use of formal grievance forms. Thus, writing complaint letters and submitting sick call requests did not properly exhaust NCCF's available administrative remedies. *See, e .g., Hernandez v. Coffey,* No. 99-CV-11615, 2006 WL 2109465, at *4 (S.D.N.Y. July 26, 2006) (holding letters did not satisfy plaintiff's exhaustion obligation); *Williams, 418 F.Supp.2d at 101* (holding that because plaintiff's efforts to convey his medical condition through letters and conversations with the warden and medical staff did "not include the required steps of the PLRA's administrative remedy process," plaintiff failed to exhaust); *Mills v. Garvin,* No. 99-CV-6032, 2001 U.S. Dist. LEXIS 3333, at *8 (S.D.N.Y. Mar. 2, 2001) ("letter writing is not the equivalent of an exhaustion of administrative remedies under the PLRA").

As Hargrove failed to properly exhaust his administrative remedies, this action is precluded by 42 U.S.C. § 1997e(a) unless Hargrove can establish excuse for his failure to exhaust.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4)

**No Grounds to Excuse Plaintiff's Failure to Exhaust**

*8 Exhaustion is an affirmative defense that defendants have the duty to raise. *Jones,* 2007 WL 135890, at * 8-11; *Sloane,* 2006 WL 3096031, at *4; *Williams, 418 F.Supp.2d at 101.* Once argued by the defendants, a plaintiff has an opportunity to show why the exhaustion requirement should be excused or why his failure to exhaust is justified. *See Ruggiero,* 467 F.3d at 175; *Collins v. Goord,* 438 F.Supp.2d 399, 411 (S.D.N.Y.2006) ("[T]he Second Circuit has cautioned that 'while the PLRA's exhaustion requirement is 'mandatory,' certain caveats apply.' ")(internal citations omitted). Thus, before concluding that a prisoner failed to exhaust available administrative remedies as required by Section 1997e(a) of the PLRA, the following three factors must be considered: (1) whether administrative remedies were actually available to the prisoner; (2) whether defendants have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; and (3) whether special circumstances, such as a reasonable misunderstanding of the grievance procedures, exist justifying the prisoner's failure to comply with the exhaustion requirement. *Ruggiero,* 467 F.3d at 175 (citing *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004)).[FN13]

> FN13. Courts in the Second Circuit have questioned what effect, if any, the Supreme Court's recent decision in *Woodford* requiring "proper exhaustion" may have on the three-step *Hemphill* inquiry. The Second Circuit has yet to address this issue. *See Ruggiero,* 467 F.3d at 175-76 (declining to "determine what effect *Woodford* has on our case law in this area ... because [plaintiff] could not have prevailed even under our pre-*Woodford* case law"). To date, district courts have acknowledged the tension, but resolved to apply *Hemphill* to exhaustion claims until instructed otherwise by the Second Circuit. *See, e.g., Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *9, n. 4 (S.D.N.Y. Dec. 6,

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

2006) (applying the current law of the Second Circuit to exhaustion claims); *Sloane,* 2006 WL 3096031, at *5 ("Until such time as the Court of Appeals considers the impact of *Woodford,* if any, on its prior rulings, this Court must follow the law of the Second Circuit. The Court will therefore apply the current law of this circuit to the exhaustion claims."); *Collins v. Goord,* 438 F.Supp.2d at 411 n. 13 (acknowledging that *Woodford* and *Hemphill* may be in tension, but deciding exhaustion claims under *Hemphill* inquiry); *Hernandez v. Coffey,* No.99-CV11615, 2006 WL 2109465, at *3 (S.D.N.Y. July 26, 2006) (same). Here, Hargrove does not prevail under *Hemphill;* therefore, there is no occasion to address the potential effect *Woodford* may have had in his case.

**a. Whether administrative remedies were "available" to Hargrove**

The first step in the *Hemphill* inquiry requires a court to determine whether administrative remedies were available to the prisoner. *Hemphill,* 380 F.3d at 686. The test for assessing availability is an "objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available." *Id.* at 688 (internal quotation marks omitted). In making this determination, "courts should be careful to look at the applicable set of grievance procedures." *Abney v. McGinnis,* 380 F.3d 663, 668 (2d Cir.2004). Exhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, see *Ruggiero,* 467 F.3d at 179, or where defendants' behavior prevents plaintiff from seeking administrative remedies,[FN14] *Hemphill v. State of New York,* 380 F.3d 680, 686 (2d Cir.2004).

FN14. Case law does not clearly distinguish between situations in which defendants' behavior renders administrative remedies "unavailable" to the plaintiff and cases in which defendants are estopped from asserting non-exhaustion as an affirmative defense because of their behavior. As such, there will be some overlap in the analyses.

Here, Hargrove has not claimed that NCCF's administrative grievance procedure was unavailable to him. In fact, Hargrove demonstrated his access to and knowledge of NCCF's IGP by filing proper grievances on November 19, 2004 and on May 10, 2005. Hargrove did not dispute any part of Investigator Williams's affidavit detailing the IGP and its availability to inmates since 2001. Specifically, Hargrove did not dispute, upon entering the facility, that he received a copy of the inmate handbook outlining the IGP. He has not claimed that he is unfamiliar with or unaware of NCCF's IGP. Hargrove has not alleged that prison officials failed to advance his grievances [FN15] or that they threatened him or took any other action which effectively rendered the administrative process unavailable.

FN15. Although not specifically alleged, interpreting the evidence to "raise the strongest argument," Hargrove may be arguing that NCCF's IGP was not available to him because the Grievance Coordinator failed to respond to his grievances. In the single grievance regarding PPD tests that defendants concede is authentic, Hargrove writes, "[n]ow for the third time your office refused to answer my grievances so please look into this matter because the T.B. shot is [sic] effecting my health." 11/19/04 Grievance. This language implies that Hargrove filed grievances in the past and received no response from the Inmate Grievance Coordinator. Furthermore, Hargrove wrote on one of the submitted copies of the November 19, 2004 grievance that "[t]his is the only accepte[sic] that Plaintiff got back from all grievances and letters that the Plaintiff sent to Sheriff Riley and his medical staffs about his staff making [sic] take T.B. test for 3 year[s]." County Defs'. Not. of Motion, Ex. A, 11/19/2004 grievance.

First, it must be reiterated that filing of the initial grievances was untimely. However, even assuming *arguendo* that the original grievances had been timely filed, district courts in the Second Circuit have held that the "lack of a response from the [Inmate Grievance Review Committee] does not excuse an inmate's obligation to exhaust his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

remedies through available appeals." *Hernandez v. Coffey*, 2006 WL 2109465, at *3-5. *See also Hemphill*, 380 F.3d. at 686 ("Threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system"); *Acosta v. Corr. Officer Dawkins*, No. 04-CV-6678, 2005 WL 1668627, at *3 (S.D.N.Y. July 14, 2005) (inmate required to appeal lack of response to exhaust administrative remedies); *Mendoza v. Goord,* No. 00-CV-0146, 2002 U.S. Dist. LEXIS 22573, at *6 (S.D.N.Y. Nov. 21, 2002) ("If, as a result of a negligent error by prison officials-or even their deliberate attempt to sabotage a prisoner's grievance-the prisoner [does not receive a response] on his complaint, he is not thereby forestalled from appealing"). Hargrove did not assert or offer evidence suggesting that he appealed the unresponsiveness or that those appeals were not advanced.

**\*9** Additionally, Hargrove's transfer from NCCF to Sing Sing Correctional Facility ("Sing Sing") in July 2005 did not excuse his previous failure to properly exhaust. *See, e.g., Sims v. Blot,* No. 00-CV-2524, 2003 WL 21738766, at *4 (S.D.N.Y. July 25, 2003) (determining that failure to exhaust administrative remedies is not excused by transfer to another facility); *Santiago v. Meinsen,* 89 F.Supp.2d 435, 440-41 (S.D.N.Y.2000) (determining that plaintiff should not be "rewarded" for failing to participate in grievance procedure before being transferred). Hargrove had ample opportunity to properly file his grievances and to appeal their results as required by NCCF's procedures while he was imprisoned at NCCF. The last PPD test Hargrove complains of was given in 2004; therefore, Hargrove had until June or July of 2004 to timely file his grievance in accordance with NCCF's IGP. Hargrove was not transferred to Sing Sing until July 2005. County Defs.' Mem. of Law at 2. Thus, Hargrove's transfer cannot excuse his previous failure to properly exhaust.

**b. Estoppel**

The second step of the inquiry asks whether defendants are estopped from raising exhaustion as a defense. Specifically, "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (internal citations omitted).

Here, Hargrove has not made any statements that would permit a finding that defendants should be estopped from raising the affirmative defense of exhaustion or that defendants waived the right to raise the defense. Defendants first raised the PLRA's exhaustion requirement as an affirmative defense in their respective answers. *See* County Defs.' Am. Answer at 3; NHCC Defs.' Answer at 1. County Defendants raised it again in their motion for summary judgment. *See* County Defs.' Mem of Law at 15-23. Thus, defendants are not estopped from raising the affirmative defense now. *See, e.g., Sloane,* 2006 WL 3096031, at *8 (exhaustion defense not waived where defendants first raised it in their motion to dismiss).

Additionally, defendants have not threatened Hargrove or engaged in other conduct preventing him from exhausting the available administrative remedies. *Cf. Ziemba v. Wezner,* 366 F.3d 161, 162 (2d Cir.2004) (holding defendants were estopped from asserting non-exhaustion because of prison officials' beatings, threats and other conduct inhibiting the inmate from filing proper grievances); *Feliciano v. Goord,* No. 97-CV-263, 1998 WL 436358, at *2 (S.D.N.Y. July 27, 1998) (holding defendants were estopped from asserting non-exhaustion where prison officials refused to provide inmate with grievance forms, assured him that the incidents would be investigated by staff as a prerequisite to filing a grievance, and provided prisoner with no information about results of investigation). Hargrove has not argued otherwise. *See Ruggiero,* 467 F.3d at 178 (holding defendants were not estopped from asserting a failure to exhaust defense where plaintiff pointed to no affirmative act by prison officials that would have prevented him from pursing administrative remedies); *Sloane,* 2006 WL 3096031, at *8 (finding no estoppel where plaintiff did not argue that defendants prevented him from pursuing the available administrative remedies); *Hernandez,* 2006 WL 2109465,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

at *4 (finding no estoppel where plaintiff did not argue that any threats or intimidation prevented him from pursuing his appeals). Thus, for the same reasons that administrative remedies were not deemed unavailable to Hargrove, defendants are not estopped from raising a failure to exhaust defense.

### c. Special circumstances

**\*10** Even where administrative remedies are available and the defendants are not estopped from arguing exhaustion, the court must "consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.' " *Hemphill,* 380 F.3d at 688 (quoting *Giano,* 380 F.3d at 676). For example, plaintiff's reasonable interpretation of regulations differing from prison official's interpretation has been held to constitute a "special circumstance." *Giano,* 380 F.3d at 676-77. No special circumstances have been alleged that would excuse Hargrove from availing himself of administrative remedies. *See Sloane,* 2006 WL 3096031, at *8; *Freeman v. Goord,* No. 02-CV-9033, 2004 U .S. Dist. LEXIS 23873, at * 9-10 (S.D.N.Y.2004) (granting motion to dismiss where "there is no evidence in the record ••• of any 'special circumstances' in this action.")

**(5)**

### Hargrove's Failure to Exhaust, in Addition to his Fraud on the Court, Warrants Dismissal with Prejudice

Hargrove has not sufficiently rebutted the defendants' assertion of failure to exhaust, and a liberal reading of his submissions does not reveal any grounds to excuse that failure.

Because Hargrove filed a complaint in federal court before filing a grievance, permitting his unexhausted and unexcused claim to proceed would undercut one of the goals of the exhaustion doctrine by allowing NCCF to be haled into federal court without the "opportunity to correct its own mistakes with respect to the programs it administers." *Woodford,* 126 S.Ct. at 2385. *See also Ruggiero,* 467 F.3d at 178 (citing *Porter,* 534 U.S. at 525). Thus, his complaint must be dismissed.

In general, dismissal without prejudice is appropriate where plaintiff has failed to exhaust but the time permitted for pursuing administrative remedies has not expired. *Berry v. Kerik,* 366 F.3d 85, 87 (2d Cir.2004). Dismissal with prejudice is appropriate where "administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." *Berry,* 366 F.3d at 88. Here, Hargrove's administrative remedies were available to him during his entire period of confinement at NCCF. He remained incarcerated in NCCF throughout the time period in which he alleges the PPD tests are given. He could have exhausted remedies for his grievances at any time. Therefore, Hargrove had ample opportunity to seek administrative remedies but failed to do so. Because there is no evidence in the record that administrative remedies are still available to Hargrove, as the five-day time period had run, and because Hargrove has alleged no special circumstances justifying his failure to exhaust, his complaint is accordingly dismissed with prejudice. *Berry,* 366 F.3d at 88 (upholding dismissal with prejudice where plaintiff had no justification for his failure to pursue administrative remedies while they were available.)

**\*11** Additionally, defendants' have moved for sanctions based on Hargrove's alleged submission of falsified evidence. If a party commits a fraud on the court, the court has the inherent power to do whatever is reasonably necessary to deter abuse of the judicial process. *Shangold v. The Walt Disney Co.,* No. 03-CV-9522, 2006 WL 71672, at *4 (S.D.N.Y. January 12, 2006) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44 (1991)). Fraud upon the court has been defined as "fraud which seriously affects the integrity of the normal process of adjudication." *Gleason v. Jandrucko,* 860 F.2d 556, 559 (2d Cir.1988); *McMunn v. Mem'l Sloan-Kettering Cancer Center,* 191 F.Supp.2d 440, 445 (S.D.N.Y.2002). In order for a court to grant sanctions based upon fraud, it must be established by clear and convincing evidence that a party has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by ... unfairly hampering

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)
(Cite as: 2007 WL 389003 (E.D.N.Y.))

the presentation of the opposing party's claim or defense." *McMunn,* 191 F.Supp.2d at 455 (quoting *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1119 (1st Cir.1989).

After carefully reviewing the allegedly fraudulent documents, it must be concluded that Hargrove consciously falsified these documents. *See, e.g., Shangold,* 2006 WL 71672, at *1, *3 (finding clear and convincing evidence of fraud where plaintiffs fabricated a timeline and plot outlines to advance their claims); *McMunn,* 191 F.Supp.2d at 446 (finding clear and convincing evidence of fraud where plaintiff edited audio tapes and represented that they were unedited during discovery). The notaries performing services for prisoners at NCCF testify that they never notarized many of the documents supplied by Hargrove. *See* Klein Aff.; McDevitt Aff. Furthermore, a visual examination of the documents themselves makes it clear that many of the documents submitted by Hargrove are forgeries.

In considering what sanction to impose, courts consider the following five factors: (i) whether the misconduct was the product of intentional bad faith; (ii) whether and to what extent the misconduct prejudiced the plaintiffs; (iii) whether there was a pattern of misbehavior rather than an isolated instance; (iv) whether and when the misconduct was corrected; and (v) whether further misconduct is likely to occur in the future. *Scholastic, Inc. v. Stouffer,* 221 F.Supp.2d 425, 444 (S.D.N.Y.2002) (citing *McMunn,* 191 F.Supp.2d at 461).

Here, Hargrove's deception was not an isolated instance; he fabricated the dates on many grievance forms, in addition to improperly duplicating notary stamps on complaint letters to make them look authentic. Klein Aff. at 2; McDevitt Aff. at 2; County Defs.' 56.1 Statement ¶¶ C3, D3. He submitted these forgeries to defendants during discovery and again as exhibits to his Affidavit in Opposition to Defendant's Motion for Summary Judgment. A severe sanction is warranted as Hargrove's forgeries were intentional, he never corrected them once their authenticity was challenged and he continues to insist on their veracity. Aff. in Opp. at 1-4. Given that there is clear and convincing evidence that Hargrove has continuously and consciously perpetrated a fraud on the court through his submission of fraudulent documents and sworn

affirmations of those documents' authenticity, dismissal with prejudice is especially appropriate. *See, e.g., Shangold,* 2006 WL 71672, at *5 (dismissing with prejudice where plaintiffs fabricated evidence to advance their claims); *Scholastic,* 221 F.Supp.2d at 439-444 (dismissing with prejudice where plaintiff produced seven pieces of falsified evidence); *McMunn,* 191 F.Supp.2d at 445 (dismissing with prejudice where plaintiff "lie[d] to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process").

**Conclusion**

**\*12** Because Hargrove did not satisfy the exhaustion requirement under the PLRA, defendants' motions for summary judgment are granted. Further, considering the fraud Hargrove perpetrated on the court, the claims are dismissed against all defendants with prejudice. The Clerk of the Court is directed to close the case.

SO ORDERED:

E.D.N.Y.,2007.
Hargrove v. Riley
Not Reported in F.Supp.2d, 2007 WL 389003 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
James PETTUS, Plaintiff,
v.
Jospeh McCOY, Superintendent, Deputy Ryan,
Defendants.
**No. 9:04-CV-0471.**

Sept. 13, 2006.

James Pettus, Comstock, NY, pro se.

Charles J. Quackenbush, New York State Attorney
General, The Capitol Albany, NY, for Defendants.

**DECISION and ORDER**

THOMAS J. McAVOY, Senior District Judge.

**\*1** Plaintiff commenced the instant action asserting
various violations of his constitutional rights arising out of
his placement at the Southport Correctional Facility. In his
Complaint, Plaintiff alleges that he was improperly sent to
the Special Housing Unit ("SHU") at a maximum security
facility and that being in SHU has put his life in jeopardy.
Currently before the Court is Defendants' motion for
summary judgment pursuant to Fed.R.Civ.P. 56 seeking
dismissal of the Complaint in its entirety for failure to
exhaust administrative remedies.

**I. FACTS**[FN1]

> FN1. The following facts are taken from
> Defendants' statement of material facts submitted

pursuant to N.D.N.Y.L.R. 7.1(a)(3). These facts
are deemed admitted because they are supported
by the record evidence and Plaintiff failed to
submit an opposing statement of material facts as
required by Rule 7.1(a)(3). Plaintiff was
specifically advised by Defendants of his
obligation to file an opposing statement of
material facts and to otherwise properly respond
to the motion for summary judgment.

Plaintiff is an inmate in the custody of the New York State
Department of Correctional Services. Plaintiff signed the
instant Complaint on April 7, 2004. On his Complaint
form, Plaintiff indicated that there is a grievance
procedure available to him and that he availed himself of
the grievance procedure by filing a complaint with the
IGRC [FN2], followed by an appeal to the superintendent of
the facility, and then to the Central Office Review
Committee in Albany. The Complaint indicates that
Plaintiff is "waiting for response from Albany." The
Complaint was filed on April 27, 2004.

> FN2. Inmate Grievance Review Committee.

On April 12, 2004, prior to the filing of the instant
Complaint, Plaintiff filed a grievance relating to the issues
presented in this case. On April 19, 2004, the IGRC
recommended that Plaintiff's grievance be denied. Plaintiff
then appealed that decision to the facility Superintendent.
In the meantime, on April 27, Plaintiff commenced the
instant litigation. On May 3, 2004, after Plaintiff filed the
Complaint in this case, the Superintendent denied
Plaintiff's grievance. On May 5, 2004, Plaintiff appealed
the decision to the Central Office Review Committee in
Albany. On June 23, 2004, the Central Office Review
Committee denied Plaintiff's appeal. Plaintiff did not file
any other grievances in connection with the matters raised
in this lawsuit.

Defendants now move to dismiss on the ground that
Plaintiff commenced the instant action before fully
exhausting his available administrative remedies.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)
(Cite as: 2006 WL 2639369 (N.D.N.Y.))

## II. DISCUSSION

The sole issue presented is whether Plaintiff was required to complete the administrative process before commencing this litigation. This issue has already been addressed by the Second Circuit in *Neal v. Goord,* 267 F.3d 116 (2d Cir.2001). The issue in that case was "whether plaintiff's complaint should have been dismissed despite his having exhausted at least some claims during the pendency of his lawsuit." *Id.* at 121. The Second Circuit held that "exhausting administrative remedies after a complaint is filed will not save a case from dismissal." *Id.*

In this case, Defendants have established from a legally sufficient source that an administrative remedy is available and applicable. *Mojias v. Johnson,* 351 F.3d 606, 610 (2d Cir.2003); *see also* 7. N.Y.C.R.R. § 701.1, *et seq.* Plaintiff's Complaint concerns his placement in SHU at a maximum security facility. These are matters that fall within the grievance procedure available to NYSDOCS inmates and are required to be exhausted under the Prison Litigation Reform Act, 42 U.S.C. § 1997e. Plaintiff has failed to demonstrate any applicable exception to the exhaustion requirement. Because Plaintiff commenced the instant litigation prior to fully completing the administrative review process, the instant Complaint must be dismissed without prejudice. *Neal,* 267 F.3d 116.

## III. CONCLUSION

**\*2** For the foregoing reasons, Defendants' motion for summary judgment is GRANTED and the Complaint is DISMISSED WITHOUT PREJUDICE. The Clerk of the Court shall close the file in this matter.

IT IS SO ORDERED.

N.D.N.Y.,2006.
Pettus v. McCoy
Not Reported in F.Supp.2d, 2006 WL 2639369 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

H
Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.
Lucy AMADOR, Stacie Calloway, Tonie Coggins,
Stephanie Dawson, Latasha Dockery, Tanya Jones,
Bobbie Kidd, Bette Jean McDonald, Kristina
Muehleisen, Jeanette Perez, Laura Pullen, Corilynn
Rock, Denise Saffioti, Shantelle Smith, Shenyell Smith,
Hope Susoh a/k/a Hope Susoh Brevard, and Nakia
Thompson, on behalf of themselves and all others
similarly situated, Plaintiffs,
v.
SUPERINTENDENTS OF the DEPARTMENT of
CORRECTIONAL SERVICES ("DOCS") Anginell
Andrews, Roberta Coward, Dennis Crowley,
Alexandreena Dixon, Elaine Lord, Ronald Moscicki and
Melvin Williams; DOCS Deputy Superintendent Donald
Wolff; DOCS Director of Personnel Terry Baxter;
DOCS Inspector General Richard Roy; DOCS Director
of the Sex Crimes Unit of the Inspector General's Office
Barbara D. Leon; DOCS Director of the Bureau of
Labor Relations Peter Brown; DOCS Commissioner
Glenn S. Goord; Office of Mental Health Commissioner
James Stone; DOCS Correction Officers Frederick
Brenyah, Charles Davis, Michael Evans, Sergeant
Michael Galbreath, Officers John E. Gilbert III,
Hudson, Rick Larue, Rico Meyers, Mario Pique, Jeffrey
Shawver, Robert Smith, Sergeant Smith, Officers
Sterling, Delroy Thorpe, and Pete Zawislak, Defendants.
No. 03 Civ. 0650(KTD)(GWG).

Dec. 4, 2007.

*OPINION & ORDER*

KEVIN THOMAS DUFFY, District Judge.

I. *Background*

**\*1** Plaintiffs in this case are seventeen current and former
female inmates of the New York State Department of
Correctional Services ("DOCS"). On October 14, 2003,
Plaintiffs filed their First Amended Complaint against
several line officers employed at seven New York state
prisons ("Line Officer Defendants") and various
supervisors of certain New York state prisons and other
DOCS officials ("Supervisory Defendants").[FN1] Plaintiffs
alleged that they were sexually abused and harassed by the
Line Officer Defendants and that the Supervisory
Defendants contributed to this abuse and harassment
through the maintenance of inadequate policies and
practices. Pursuant to 42 U.S.C. § 1983, Plaintiffs seek
monetary damages as well as declaratory and injunctive
relief. Both groups of defendants have filed various
motions to dismiss and Plaintiffs have filed a motion for
class certification.

> FN1. The Supervisory Defendants are Anginell
> Andrews, Terry Baxter, Peter Brown, Roberta
> Coward, Alexandreena Dixon, Glenn S. Goord,
> Barbara D. Leon, Elaine Lord, Richard Roy,
> James Stone, Melvin Williams, and Donald
> Wolff. This group also included Dennis Crowley
> and Ronald Moscicki who were dismissed by my
> previous Order of September 13, 2005.

On September 13, 2005, I issued an Order addressing the
parties' motions. I dismissed, for lack of standing, the
claims for injunctive relief and declaratory judgment of
Plaintiffs who had been released from DOCS custody
prior to the filing of the Amended Complaint.[FN2] I also
dismissed one plaintiff who had already filed a separate
action elsewhere.[FN3] After denying the Supervisory
Defendants' motion to dismiss for improper venue, I
reserved ruling on the Supervisory Defendants' motion to
transfer venue pending my consideration of the joinder
and related issues. I also converted the Supervisory
Defendants' motion to dismiss Plaintiffs' injunctive claims
for failure to exhaust administrative remedies into a
motion for summary judgment, and invited the parties to
supplement the record on this narrow issue. Because they
may have become moot after my resolution of the
exhaustion issue, I further reserved ruling on the
Supervisory Defendants' motions to dismiss for failure to
state a claim. Finally, I reserved ruling on Plaintiffs'

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

motion for class certification until I determined whether any of the Plaintiffs have exhausted any, or all, of their claims for injunctive relief. Thereafter, Plaintiffs filed a motion for reconsideration of the September 13, 2005 Order, which I denied by Order on November 10, 2005.

> FN2. These plaintiffs include Lucy Amador, Bette Jean McDonald, Jeannette Perez, Laura Pullen, and Corilynn Beth Rock.

> FN3. Bobbie Kidd was dismissed pursuant to the "first filed" rule, having been enjoined by the Western District of New York from participating in this action.

In the September 13, 2005 Order, I requested the parties submit supplemental briefs on the issues of: (1) mootness of the claims of the Plaintiffs who were released from prison after the Amended Complaint was filed; (2) exhaustion of administrative remedies; (3) joinder and severance of each Plaintiff's individual claim for damages against the specific Line Officer Defendants with the purported class claims against the Supervisory Defendants for injunctive relief; and (4) joinder and severance of each Plaintiff's individual claim for damages against the specific Line Officer Defendants with the Plaintiffs' individual claims. As the parties have had ample time to supplement the record, I now rule on the mootness of two Plaintiff's claims and on the issue of exhaustion of the remaining Plaintiffs' claims.

## II. *Mootness of Released Plaintiffs' Claims*

**\*2** Before addressing the sufficiency of Plaintiffs' exhaustion, I address the mootness of the claims of Plaintiffs Stephanie Dawson and Shantelle Smith. Dawson and Smith have been released from their respective correctional facilities. In my prior Order, I declined to dismiss their claims as moot because they had merely been transferred to other facilities which they alleged employed the same policies and practices as where their abuse occurred. However, as they have both since been released, their claims for injunctive and declaratory relief have become moot and are hereby dismissed.[FN4]

> FN4. Contrary to Plaintiffs' contention, this court may dismiss these claims as moot. To avoid mootness of their claims, Plaintiffs Dawson and Smith would have to show that they were still in custody at the time the class was certified. *See Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11 (1975). As I have yet to certify Plaintiffs as a class, such a showing is not possible. Moreover, this case does not present an exception to that rule, unlike in *Gerstein* where there was no way of ascertaining the length of pretrial custody at the outset of the case and such custody could end at any time in various ways. *Id.* In any event, the "relation back" doctrine serves to preserve the viability of class claims and not claims of individual plaintiffs. As I have my doubts as to the propriety of class certification in this case, I believe the doctrine would be inapplicable here.

## III. *Legal Standard for Summary Judgment*

In deciding this motion for summary judgment, I must construe the evidence in the light most favorable to the Plaintiffs, as the non-moving parties, and draw all reasonable inferences in their favor. *Wray v. City of New York,* 490 F.3d 189 (2d Cir.2007). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56(c); Hellstrom v. Pep't. of Veterans Affairs,* 201 F.3d 94, 97 (2d Cir.2000). For the reasons below, I must grant the Supervisory Defendants' motion for summary judgment as to the issue of exhaustion.

## IV. *New York's Inmate Grievance Program*

Formal exhaustion in New York generally requires compliance with the DOCS's three-step grievance and appeal procedure outlined in the Inmate Grievance Program. *See* N.Y. Com.Codes R. & Regs. tit. 7 ("7 N.Y.C.R.R."), § 701.5. The first step requires an inmate to file a complaint with the Inmate Grievance Resolution Committee ("IGRC") within twenty-one calendar days of the alleged occurrence for an attempt at informal

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

resolution. 7 N.Y.C.R.R. § 701.5(a) and (b). The IGRC is comprised of inmates and DOCS employees. Next, after receiving a response from the IGRC, the inmate may appeal to the superintendent of the facility by completing and signing the appeal section of the IGRC response form and submitting it within seven days of receipt. *Id.* at § 701.5(c). Finally, after receiving a response from the Superintendent, the inmate may seek further review from the Central Office Review Committee ("CORC") by appealing the superintendent's decision within seven days of receipt. *Id.* at § 701.5(d). Generally, "a prisoner has not exhausted his administrative remedies until he goes through all three levels of the grievance procedure." *Lunney v. Brureton,* No. 04-CV-2438, 2007 U.S. Dist. LEXIS 38660 at *20 (S.D.N.Y. May 25, 2007) (internal citation omitted). Moreover, if the inmate does not receive a timely response, she may still appeal to the next level, and a failure to do so constitutes a failure to exhaust her administrative remedies. *Tackman v. Goord,* 2005 WL 2347111 at *17 (W.D.N.Y. Sept. 26, 2005).

**\*3** The DOCS also provides for an expedited procedure for the review of grievances alleging harassment [FN5] by DOCS employees as follows:

> FN5. "Harassment" includes "employee misconduct meant to ... harm an inmate." 7 N.Y.C.R.R. § 701.2(e). Such conduct includes assault. *See Larry v. Byno,* No. 9:01-CV-1574, 2006 WL 1313344 at *3 (N.D.N.Y. May 11, 2006)* ("There is also an expedited grievance procedure for prisoners who, as in the present case, allege that they have been harassed or assaulted by correctional officers.").

(a) An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.5(a) of this Part.

*Note:* An inmate who feels that he/she has been the victim of harassment should report such occurrences to the immediate supervisor of that employee. However, this is not a prerequisite for filing a grievance with the IGP.

(b) A grievance alleging harassment shall be given a grievance calendar number and recorded in sequence with all other grievances on the grievance clerk's log (form # 2136). All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.

(c) The superintendent or his/her designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in section 701.2 of this Part. If not, then it shall be returned to the IGRC for normal processing.

(d) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall:

> (1) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance;

> (2) request an investigation by the inspector general's office; or

> (3) if the superintendent determines that criminal activity may be involved, request an investigation by the New York State Police, Bureau of Criminal Investigation.

(e) Once a grievance has been referred to the superintendent and determined to be an allegation of harassment, that grievance cannot be withdrawn. The superintendent must address the grievant's allegations.

(f) Within 25 calendar days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the grievance clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.

(g) If the superintendent fails to respond within the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

required 25 calendar day time limit the grievant may appeal his/her grievance to CORC. This is done by filing a notice of decision to appeal (form # 2133) with the inmate grievance clerk.

(h) If the grievant wishes to appeal the superintendent's response to CORC, he/she must file a notice of decision to appeal (form # 2133) with the inmate grievance clerk within seven calendar days of receipt of that response.

(i) Unless otherwise stipulated in this section, all procedures, rights, and duties pertaining to the processing of any other grievance as set forth in section 701.5 of this Part shall be followed.

7 N.Y.C.R.R. § 701.8.

V. *Exhaustion Requirement of the Prison Litigation Reform Act*

As amended by the Prison Litigation Reform Act ("PLRA") of 1995, 42 U.S.C. § 1997e(a) provides that a prisoner must exhaust all administrative remedies before pursuing a federal claim in federal court:

   **\*4** "[n]o action shall be brought with respect to prison conditions under section 1983 ... or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted."*

42 U.S.C. § 1997e(a) (emphasis added). Since the filing of the Amended Complaint in this case, several developments in the area of administrative exhaustion have been made by the Supreme Court and the Second Circuit. Therefore, it is necessary to review the present exhaustion requirement under the PLRA.

The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a

federal case." *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). Thus, exhaustion serves two major purposes. First, it protects administrative agency authority by giving an agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures." *Woodford v. Ngo,* 126 S.Ct. 2378, 2385 (2006). Second, exhaustion promotes efficiency as claims are generally settled faster and more economically in proceedings before an agency than in federal court. *Id.* Through exhaustion of administrative procedures, federal courts are provided a "useful record" for cases that proceed beyond the administrative level. *Id.*

The PLRA's exhaustion requirement is an affirmative defense for which the defendants bear the burden of proof. *Rivera v. Goord,* 253 F.Supp.2d 735, 745 (S.D.N.Y.2003). Exhaustion "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532. Exhaustion is required even when a prisoner seeks a remedy that cannot be awarded through administrative avenues. *Booth v. Turner,* 532 U.S. 731, 741 (2001).

Exhaustion must be complete and in proper accordance with the prison's administrative procedures, *Woodford,* 126 S.Ct. at 2382, and cannot be achieved during the pendency of the federal case, *Baez v. Kahanowicz,* 469 F.Supp.2d 171, 179 (S.D.N.Y.2007). Complete exhaustion requires pursuing administrative remedies through the highest level for each claim. *Veloz v. New York,* 330 F.Supp.2d 505, 514 (S.D.N.Y.2004), *affirmed,* 178 Fed. Appx. 39 (2d Cir.2004). Proper exhaustion demands compliance with all of the agency's deadlines and other critical procedural rules. *Woodford,* 126 S.Ct. at 2386. Additionally, there is no "total exhaustion,"-that is, failing to exhaust one claim does not necessarily affect any other claim that has been completely and properly exhausted. *Jones v. Bock,* 127 S.Ct. 910, 924 (2007). Moreover, the Second Circuit has held that exhaustion requires the prisoner's grievance to be sufficient on its face to alert the prison of his complaint. *Brownell v. Krom,* 446 F.3d 305, 310-11 (2d Cir.2006).

**\*5** Although the Second Circuit has recognized that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

exhaustion is mandatory, it has also stated that "certain caveats apply." *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004). More specifically, the Second Circuit has recognized that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." *Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir.2004). Therefore, the Second Circuit has constructed a three-part inquiry in cases where a prisoner plaintiff seeks to counter a defendant's contention that the prisoner has failed to exhaust all available administrative remedies pursuant to 42 U.S.C. § 1997e(a).[FN6] *See id.* First, the court must determine whether the administrative remedies were in fact "available" to the prisoners.[FN7] *Id.* "To the extent that the plaintiff lacked 'available' remedies, the PLRA's exhaustion requirement is inapplicable." *Id.* Second, the court must determine which defendants, if any, are estopped from raising the affirmative defense of non-exhaustion because of their own actions inhibiting the prisoners' complete and proper exhaustion. *Id.* Finally, if administrative remedies were "available" to the prisoners and the defendants are not estopped, but Plaintiffs nevertheless did not exhaust available remedies, the court must consider whether "special circumstances" have been plausibly alleged to justify the prisoners' failure to comply with administrative procedural requirements. *Id.*

> FN6. In *Hemphill,* the Second Circuit "read together" the holdings of a series of five Second Circuit cases to formulate the three-part inquiry. *See Hemphill v. New York,* 380 F.3d 680 (2d Cir.2004); (citing *Giano v. Goord,* 380 F.3d 670 (2d Cir.2004), *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004), *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004), *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004), and *Ziemba v. Wezner,* 366 F.3d 161 (2d Cir.2004)).

> FN7. It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury. There is case law suggesting that a jury should determine if a remedy was "available" or not. This line of cases seem to support the idea that, like a statute of limitations, exhaustion is an affirmative defense with disputed issues of fact that generally should be submitted to a jury. *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d

238, 243 n. 2 (2d Cir.1984). However, there is also case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. *See Lunney,* 2007 U.S. Dist. LEXIS 38660 at *35 n. 4 (citing *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003) (court may decide disputed issues of fact in motion to dismiss for nonexhaustion); *Priester v. Rich,* 457 F.Supp.2d 1369, 1377 (S.D.Ga.2006) (same); *Dukes v. Doe,* No. 03-CV4639, 2006 WL 1628487 at *6 (S.D.N.Y. June 12, 2006) (ordering an evidentiary hearing on question of exhaustion)). I find it proper that this issue be decided by the court.

Regarding the issue of whether remedies were available, the Second Circuit has recognized that a defendant's threats of retaliation may cause a remedy to be "effectively unavailable" for exhaustion purposes. *Id.* at 687-88; *Ortiz v. McBride,* 380 F .3d 649, 654 (2d Cir.2004). The test for deciding whether the ordinary grievance procedures were available is an objective one: whether a "similarly situated individual of ordinary firmness" would have deemed them available. *Hemphill,* 380 F.3d at 688. If the remedies were "unavailable" because of defendants' threats, the PLRA requirements would be considered automatically satisfied as to all defendants. *Id.* at 690 n. 8. However, in the context of estoppel, a prisoner may be excused from exhaustion only as to those defendants who made such threats, depending on the facts pertaining to each defendant. *Id.* at 689.

Finally, the Second Circuit has stated that there are "special circumstances" in which prisoners' failure to exhaust is justified despite the existence of available remedies and the nonexistence of estoppel. Justification is determined by "looking at the circumstances which might understandably lead usually uncounselled prisoners to fail to grieve in the normally required way." *Giano,* 380 F.3d at 678. For example, a prisoner's reasonable interpretation of ambiguous DOCS regulations may justify his failure to exhaust if, based on his interpretation, he reasonably believed the remedies were unavailable to him. *Id.*

*6 After the Supreme Court's decision in *Woodford,* the viability of *Hemphill* 's three-part inquiry has been called

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

into question. *See Ruggiero v. County of Orange,* 467 F.3d 170, 176 (2d Cir.2006) ("[w]e need not determine what effect *Woodford* has on our case law"); *Collins v. Goord,* 438 F. Supp 2d 399, 411 n. 13 (S.D .N.Y.2006) ("it is open to doubt whether *Woodford* is compatible with the results reached in some of the cases in this Circuit applying *Hemphill,* and part of the *Hemphill* inquiry may be in tension with *Woodford* ").[FN8]

> FN8. In *Collins v. Goord,* the district court noted that Justice Breyer, concurring in *Woodford,* cited with approval the Second Circuit's holding in *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004), that the exhaustion requirement is not absolute and encouraged district courts to consider whether prisoner plaintiffs' cases fall into a "traditional exception that the [PLRA] implicitly incorporates." 438 F.Supp.2d 399, 411 n. 13 (S.D.N.Y.2006) (citing *Woodford,* 126 S.Ct. at 2393 (Breyer, J., concurring)). The district court also stated that although parts of *Hemphill* may be in tension with *Woodford,* it did "not read *Woodford* to foreclose an exception to the PLRA's exhaustion requirement where prison authorities actively obstruct an inmate's ability to 'properly' file a prison grievance." *Collins,* 438 F.Supp.2d at 415.

Recently, the Second Circuit decided *Macias v. Zenk,* No. 04-6131, 2007 WL 2127722 (2d Cir. July 26, 2007), which addresses some of *Woodford* 's effects on the law in this Circuit. In *Macias,* the prisoner-plaintiff, Macias, filed two administrative tort claims and made informal complaints to prison officials before filing his complaint in federal court. *Macias,* 2007 WL 2127722 at *5. Macias argued that under *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004), these tort claims and informal requests for medical attention excused his failure to exhaust because, although he did not use the formal administrative remedy system, his actions "provided enough information about the conduct of which he complained to allow prison officials to take appropriate responsive measures." *Macias,* 2007 WL 2127722 at *5 (quoting *Johnson,* 380 F.3d at 697). *Johnson* 's holding, however, was that that a prisoner satisfied the PLRA's requirement if he both (1) *substantively* exhausted his remedies by providing correction officials an opportunity to address complaints internally; *and* (2) *procedurally* exhausted his remedies

because the prison's remedial system was so confusing that he reasonably believed he had exhausted all available remedies. *Id.* Macias only alleged that he should be excused from exhaustion because his informal complaints put the prison on notice of his grievance. *Id.* Therefore, the Second Circuit held that Macias failed to procedurally exhaust his administrative remedies. Because Macias did not allege that the remedial system was so confusing that he reasonably believed he had exhausted all available remedies, the Second Circuit did not decide what effect *Woodford* has on *Hemphill* 's holding that a reasonable misinterpretation of the internal remedial scheme is a "special circumstance" justifying an inmate's failure to follow procedural rules to the letter. *Id.* at *6 n. 1.[FN9]

> FN9. The court did, however, rule that as far as its decision in *Braham v. Clancy,* 425 F.3d 177, 183 (2d Cir.2005), might provide support for Macias's argument that he procedurally exhausted his remedies by providing sufficient notice of his grievance, *Braham* is overruled by *Woodford. Braham* expanded *Johnson* by permitting prisoners to procedurally exhaust claims by taking enough informal steps to put prison officials on notice of their concerns, regardless of whether they used the prison's formal grievance procedures. *Macias,* 2007 WL 2127722 at *6. The court held that, after *Woodford,* notice alone is insufficient as it does not satisfy *Woodford's* requirement of "proper exhaustion." *Id.*

Macias also alleged that the defendant threatened him, and argued that these threats rendered his administrative remedies unavailable, or alternatively, estopped the defendant from raising non-exhaustion as an affirmative defense. *Id.* at *7. The court remanded to the district court to determine whether Macias's remedies were rendered unavailable by the defendant's allegedly threatening behavior, using the "ordinary firmness" test from *Hemphill,* and, "depending on the facts pertaining to each defendant," whether defendant should be estopped from raising non-exhaustion because of the alleged threats. *Id.* at *8 (quoting *Hemphill,* 380 F.3d at 688).

**\*7** The first two parts of the *Hemphill* analysis-regarding effectively unavailable remedies and estoppel-appear to

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

remain viable after *Woodford.* Therefore, these concepts will be applied here.

VI. *Analysis of Plaintiffs' Exhaustion Attempts*

The Supervisory Defendants moved to dismiss the entire Amended Complaint on the basis of nonexhaustion. I previously converted their motion to dismiss to a motion for summary judgment and now rule in favor of the Supervisory Defendants as to Plaintiffs' injunctive and declaratory claims.[FN10]

> FN10. At the outset, I reject the Supervisory Defendants' argument that the entire action must be dismissed for failure to exhaust as the Supreme Court has ruled that there is no "total exhaustion" rule and only non-exhausted claims need be dismissed. *See Jones v.. Bock,* 127 S.Ct. 910, 924 (2007).

Plaintiffs argue that they exhausted their administrative remedies by complying with one or more of the "alternative avenues" for grieving described in the prison orientation documents, thereby providing sufficient notice of their claims. Each Plaintiff alleges that she complained to the Inspector General about her sexual abuse. Several Plaintiffs also complained to the immediate supervisor of the alleged abuser.[FN11] A few other Plaintiffs also complained to a DOCS official that they felt comfortable approaching.[FN12] Three Plaintiffs utilized the formal procedure by filing grievances and appealing them to the CORC.[FN13] Plaintiffs also argue that the Supervisory Defendants are estopped from raising nonexhaustion and that "special circumstances" justify their nonuse of the formal grievance procedure because the DOCS caused Plaintiffs to believe it was sufficient to report the abuses to the Inspector General or any staff member, and because the DOCS provided misleading instructions concerning the mechanism for complaining. Finally, Plaintiffs alternatively argue that administrative remedies were made "unavailable" by virtue of threats towards them. Plaintiffs' arguments are unavailing.

> FN11. These Plaintiffs include Tonie Coggins, Stephanie Dawson, and Kristina Muehleisen.

> FN12. These Plaintiffs include Stephanie Dawson, Tanya Jones, Denise Saffioti, and Shenyell Smith.

> FN13. Stephanie Dawson filed a formal DOCS grievance on February 25, 2003. The Superintendent responded that the Inspector General's Office was undergoing an investigation. Finally, the Central Office denied her grievance and upheld the Superintendent's decision. Shantelle Smith filed a formal grievance on June 27, 2003. The Superintendent denied the grievance as the complaint was referred to the Inspector General for investigation. The Amended Complaint alleges that Ms. Smith appealed this decision to the Central Office. Finally, Shenyell Smith filed a formal grievance on January 3, 2002, which was denied by the Superintendent and the Central Office after appeal based on the referral of her complaint to the Inspector General for investigation.

Generally, failure to pursue *all* of an inmate's available remedies precludes that inmate's lawsuit. *See Porter,* 534 U.S. at 524; *Braswell v. Johnson,* 2002 U.S. Dist. LEXIS 25294 at *14 (S.D.N.Y. Mar. 5, 2002); *see also Boddie v. Bradley,* 2007 U.S.App. LEXIS 3759 at *4-5 (2d Cir. Feb 16, 2007) (holding that simply sending informal letters directly to DOCS officials instead of submitting a complaint on an inmate grievance form, as required by DOCS regulations, does not satisfy the exhaustion requirement). Moreover, as *Macias* states, inmates must follow the formal grievance procedures to achieve proper *procedural* exhaustion, as mere notice is not sufficient. 2007 WL 2127722 at *6. Pursuant to *Macias,* plaintiffs do not procedurally exhaust all of their remedies where they fail to argue that because of a confusing or misleading administrative remedial system, they justifiably believed that informal complaints were their "*only* available remedies." 2007 WL 2127722 at *6 (emphasis added). Thus, unless Plaintiffs allege that the DOCS remedial system was so confusing that it made them think their informal complaints and letters were the *only* available means of grieving, their estoppel argument must fail.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

**\*8** As Plaintiffs argue that the DOCS three-step grievance procedure is just one of the many perceived available avenues for grieving a complaint, they fail to demonstrate that they believed their informal complaints and letters were the *"only"* available remedies." Also, even if Plaintiffs misconstrued the grievance instructions, it would have been unreasonable to conclude that the three-step grievance procedure was foreclosed to them. *See Giano,* 380 F.3d at 678; *Tackman,* 2005 WL 2347111 at *28. Therefore, Plaintiffs' estoppel and special circumstances arguments must fail.

Plaintiffs further argue that administrative remedies were rendered "unavailable" by virtue of threats made against them. In support, Plaintiffs assert the blanket proposition that the three-step grievance procedure is not available to victims of sexual abuse simply because it requires inmates to self-initiate the process, which sexual abuse victims have a difficult time doing. This argument is unavailing for several reasons. First, the fact that three of the Plaintiffs filed formal grievances directly cuts against Plaintiffs' argument that the process is unavailable to victims of sexual abuse. Moreover, every Plaintiff complained in some way or another about the abuse they allegedly received as inmates, whether by complaining to the Inspector General, supervisors, or other DOCS officials. *See Hemphill,* 380 F.3d at 687 (stating it is unlikely that a plaintiff would claim administrative remedies were "unavailable" because of threats where that plaintiff did in fact write a grievance letter to the Superintendent). The evidence does not demonstrate that Plaintiffs' efforts at grieving properly were thwarted, but rather shows that they merely selected to pursue informal avenues instead of the formal grievance procedure. As such, Plaintiffs' argument that administrative remedies were "unavailable" fails.

One cannot exhaust *all* administrative remedies by merely pursuing an informal avenue over the formal grievance procedure. Thus, because Plaintiffs Stacie Calloway, Tonie Coggins, Latasha Dockery, Tanya Jones, Kristina Muehleisen, Denise Saffioti, Hope Susoh, and Nakia Thompson did not complete the three-step grievance procedure, they have not properly exhausted all of their administrative remedies.[FN14] *See Porter,* 534 U.S. at 524. Therefore, I grant the Supervisory Defendants summary judgment as to the issue of exhaustion and these Plaintiffs' claims for injunctive and declaratory relief are hereby dismissed without prejudice.[FN15]

> **FN14.** While Plaintiff Coggins filed a formal grievance on July 17, 2003, she had not appealed it through all levels of the grievance procedure by the time of the Amended Complaint, and an inmate's attempt at exhaustion during the pendency of a federal case does not satisfy the PLRA. *See Baez,* 469 F.Supp.2d at 179.

> **FN15.** *See Braswell,* 2002 U.S. Dist. LEXIS 25294 at *16 (holding that where an inmate fails to exhaust, "the appropriate disposition is ... to dismiss the complaint without prejudice to refiling once the plaintiff has pursued to exhaustion all currently available procedures under the state prison grievance program").

Plaintiff Shenyell Smith is the only remaining Plaintiff who utilized the formal three-step procedure for grieving. Her grievance, however, raises a separate concern with regard to exhaustion. "[T]he mere fact that plaintiff filed *some* grievance, and fully appealed all the decisions on that grievance, does not automatically mean that [s]he can now sue anyone who was in any way connected with the events giving rise to that grievance." *Collins,* 438 F.Supp.2d at 412-13 (emphasis in original) (citing *Turner v. Goord,* 376 F.Supp.2d 321, 325 (W.D.N.Y.2005)). If a grievance alleges nothing more than maltreatment at the hands of a particular defendant, that grievance is not sufficient to exhaust all administrative remedies as against other defendants later claimed to have been aware of the systematic problems and who failed to correct them. *Id.; See also Strong v. Edwards,* 2005 U.S. Dist. LEXIS 23187 at *6-10 (S.D.N.Y. Oct. 7, 2005) (holding that plaintiff failed to exhaust administrative remedies as to a Superintendent where the original grievances did not name the Superintendent nor explain how he was connected to the alleged incidents of maltreatment).

**\*9** In this case, Plaintiff Shenyell Smith only complained of one particular defendant, identified as "CO Thorpe," in her grievance.[FN16] In this grievance, she states that CO Thorpe opened her shower door while she was disrobing and had sexually assaulted and harassed her. She did not mention any other Supervisory Defendant or state how

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)
(Cite as: 2007 WL 4326747 (S.D.N.Y.))

they were connected to CO Thorpe's alleged improper conduct. As such, her claims for injunctive and declaratory relief against the Supervisory Defendants have not been adequately exhausted at the administrative level and are hereby dismissed.

> FN16. "CO Thorpe" refers to Defendant Delroy Thorpe.

VII. *Conclusion*

All of Plaintiffs' claims for injunctive and declaratory relief against the Supervisory Defendants have now been dismissed for the reasons stated above and in the previous Order of September 13, 2005. Therefore, there is no need to grant Plaintiffs' motion for class certification, which is hereby denied. Summary judgment dismissing the complaint will be entered for all Supervisory Defendants and for all defendants with the exception of the claims of Shenyell Smith against Delroy Thorpe.

SO ORDERED.

S.D.N.Y.,2007.
Amador v. Superintendents of Dept. of Correctional Services
Not Reported in F.Supp.2d, 2007 WL 4326747 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

**C**
Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Douglas STRONG, Petitioner,
v.
Harry LAPIN, Director of the Federal Bureau of
Prisons, Cameron Lindsay, Warden of MDC Brooklyn,
Respondents.
No. 09-CV-3522 (ARR).

Jan. 15, 2010.

JUDGMENT

**\*1** An Opinion and Order of Honorable Allyne R. Ross,
United States District Judge, having been been filed on
January 15, 2010, adopting the Report and
Recommendation of Magistrate Judge Cheryl L. Pollak,
dated November 9, 2009, after a *de novo* review of the
record; and denying the petition for a writ of mandamus;
it is

Douglas Strong, Fairton, NJ, pro se.

Seth D. Eichenholtz, United States Attorney's Office,
Brooklyn, NY, for Defendants.

ORDERED and ADJUDGED that petitioner take nothing
of the respondents; that the Report and Recommendation
of Magistrate Judge Cheryl L. Pollak is adopted; and that
the petition for a writ of mandamus is denied.

ROBERT C. HEINEMANN

Clerk of Court

*REPORT AND RECOMMENDATION*

CHERYL L. POLLAK, United States Magistrate Judge.

Petitioner Douglas A. Strong, proceeding *pro se,* brings
this petition, seeking a writ of mandamus to vacate certain
sanctions, specifically, the loss of good conduct time and
his return to a secure facility, which were imposed by
respondents after petitioner failed to comply with the
terms of his work release program. Petitioner alleges that
in imposing these sanctions, defendants violated his rights
to due process by failing to give petitioner notice of the
charges that were pending against him, by failing to
provide him with a copy of the report that formed the basis
for the charges, and by depriving petitioner of the right to
attend the disciplinary hearing that resulted in the
imposition of sanctions.

By Order dated October 20, 2009, the petition for
mandamus was referred to the undersigned to issue a
Report and Recommendation. For the reasons set forth
below, it is respectfully recommended that petitioner
Strong's petition for a writ of mandamus be denied.

*FACTUAL BACKGROUND*

On November 9, 2007, petitioner was sentenced to a term
of 33 months imprisonment and 2 years of supervised
release after his conviction for bringing illegal aliens into
the country in violation of 8 U.S.C. § 1324(a)(2)(B). (Gvt.
Mem.[FN1] at 2). On April 14, 2009, he was transferred to a
work release program at a Community Corrections Center
("CCC") in Brooklyn to serve out the remainder of his
sentence. (*Id.;* Pet'n[FN2] at 1). Petitioner alleges that he
paid his subsistence fees and remained drug and alcohol
free while in the program. (Pet'n at 1). The rules of the
CCC (the "Rules") and the Community Based Program
Agreement (the "Agreement"), which petitioner was
required to sign, provide that: "[a]ny unauthorized absence
from the facility will be considered an as escape."
(Eichenholtz Dec.,[FN3] Ex. A). The Agreement clearly

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

provides that if an inmate fails to call the facility to report that he will be returning late from a pass, that would be considered an escape and a disciplinary report would be generated. (*Id.*)

> **FN1.** Citations to "Gvt Mem." refer to Government's Memorandum of Law in Opposition to Petition Seeking a Writ of Mandamus, dated October 15, 2009.

> **FN2.** Citations to "Pet'n" refer to the Petition for a Writ of Mandamus pursuant to 28 U.S.C. § 1361, filed on July 22, 2009.

> **FN3.** Citations to "Eicenholtz Dec." refer to the Ddclaration of Seth D. Eichenholtz, Assistant United States Attorney, dated October 14, 2009.

According to petitioner, on June 20, 2009, he went to work and was granted a weekend pass to visit his sister on Long Island. (Pet'n at 2). He claims that on June 21, 2009, he made a call to the half way house and was told that he was considered an escapee. (*Id.*) Petitioner told the staff that he had a weekend pass, but they indicated that because it was the weekend, they were unable to access the records. (*Id.*) He was told to turn himself in at the United States Marshal's office, which he did the following morning. (*Id.*)

**\*2** Respondents' story is slightly different. They contend that on June 20, 2009, at approximately 5:30 a.m., petitioner signed out of the CCC to go to work at his job at Conceptual Restoration in the Bronx. (Eichenholtz Dec., Ex. B). The work pass allowed him to be out of the CCC between 5:00 a.m. and 6:00 p.m. (*Id.*) When petitioner failed to return to the CCC by 6:00 p.m., the CCC contacted both the local police and local hospitals but he was nowhere to be found. (*Id.*) Effective as of 6:00 p.m., petitioner was declared on escape status. (*Id.*)

On June 22, 2009, petitioner was taken into custody and housed at the MDC Brooklyn. (Colvin Dec.**FN4** ¶ 3; Garcia Dec.**FN5** ¶ 7). According to the government, petitioner was charged with "Escape from Unescorted Community

Programs and Activities and Open Institutions (Minimum) and from Outside Secure Institutions-*without* Violence, Code 200." (Garcia Dec. ¶ 6) (emphasis in original). The government contends that a notice of this Bureau of Prisons ("BOP") charge was served on defendant on June 24, 2009, and he signed a form stating that he received the notice on that day. (Eichenholtz Dec., Ex. C).

> **FN4.** Citations to "Colvin Dec." refer to the Declaration of Crista M. Colvin, dated Oct. 14, 2009.

> **FN5.** Citations to "Garcia Dec." refer to the Declaration of Daniel Garcia, dated October 14, 2009.

According to the government, residents of the CCC who violate the rules have a right to a Center Discipline Committee ("CDC") hearing relating to the violation. (Garcia Dec. ¶¶ 3-4). The initial hearing was held on June 25, 2009. (*Id.* ¶ 9). However, because BOP regulations require at least 24 hours notice and petitioner only received the notice 21 hours prior to the hearing, a new hearing was set for July 13, 2009. (*Id.* ¶ 10) According to the government, petitioner chose not to be represented by a staff member at the hearing, chose not to present any witnesses, and simply made a statement in which he admitted that he had gone to a bar after work, gotten into an altercation and chosen not to return to the CCC in accordance with his curfew, (Eihenholtz Dec., Ex. E). Based on the CDC's finding that petitioner had committed the charges, a recommendation was made that petitioner be transferred to a more secure facility and that he lose available good conduct time. (*Id.*) Daniel Garcia, MDC Brooklyn's Disciplinary Hearing Officer, reviewed the CDC's recommendation to ensure that the proper procedures had been followed. (Garcia Dec. ¶¶ 8-10).

Petitioner disputes the government's claim that he received a copy of the incident report, asserting that as of the date of the Petition, "Strong still has never received a copy of the report." (Pet'n at 4). Petitioner contends that when he questioned his Unit Manager as to why he did not receive a report and was not afforded a hearing, the Unit Manager responded: " 'Strong if you or anyone else violates the half way house rules your hearing is held in absentia and your

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

[sic] returned to prison.' " (*Id.*) Accordingly, because petitioner contends that he was not afforded the procedural protections required in a prison disciplinary proceeding, he brings this mandamus petition seeking an order restoring his good time, his original release date of December 7, 2009, and restoring him to the work release program. (*Id.* at 6).

### *DISCUSSION*

A. *Requirements for Mandamus Relief*

**\*3** Under 28 U.S.C. § 1361, the district court has "original jurisdiction in any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." Before a writ of mandamus may issue, petitioner must demonstrate that there is: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Anderson v. Bowen,* 881 F.2d 1, 55 (2d Cir.1989); *see also Aguiar v. Laird,* No. 07 CV 1081, 2008 WL 795303, *2 (E.D.N.Y. Mar. 12, 2008)* (defining the conditions that the plaintiff must demonstrate: 1) he must show that there is "no other adequate means to attain the relief he desires;" 2) he must demonstrate that his right to mandamus is "clear and indisputable:" and 3) the court must be satisfied that the writ is appropriate under the circumstances) (internal quotations omitted).

Mandamus "is an extraordinary remedy that is 'granted only in the exercise of sound discretion.' " *Miller v. French,* 530 U.S. 327, 340, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000) (citation omitted); *see also In re Dow Corning Corp.,* 261 F.3d 280, 285 (2d Cir.2001) (noting that the remedy of mandamus is "rarely granted"). Indeed, the common law writ of mandamus, as codified in 28 U.S.C. § 1361, only provides a remedy "if [the petitioner] has exhausted all other avenues of relief and only if the [respondent] owes him a clear nondiscretionary duty." *Kerr v. United States Dist., Court,* 426 U.S. 394, 402-03, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). To this end, a federal court's jurisdiction under the statute is "limited to actions seeking to compel the performance of a non-discretionary duty." *Duamutef v. INS,* 386 F.3d 172,

180 (2d Cir.2004); *see also Defeo v. Lapin,* No. 08 CV 7513, 2009 WL 1788056, *2 (S.D.N.Y. June 22, 2009).* Thus, a court must dismiss a petition for a writ of mandamus if the petition seeks to compel a discretionary action by a government agency. *Defeo v. Lapin,* 2009 WL 1788056, at *2 (holding that the court lacked jurisdiction to issue a writ of mandamus where petitioner sought an order compelling the director of the BOP to file a motion for a reduction in petitioner's sentence on the grounds that such a decision was discretionary on the part of the BOP); *see also Wilbur v. United States ex rel. Kadrie,* 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930) (holding that a writ of mandamus may not compel "the exercise of judgment or discretion in a particular way").

B. *Exhaustion of Administrative Remedies*

As an initial matter, the government contends that the petition should be dismissed because petitioner has failed to exhaust his administrative remedies.

Under the Prison Litigation Reform Act ("PLRA"), "no actions shall be brought with respect to prison conditions under section 1983 [of Title 42], or any other Federal law, by a prisoner confined in jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Complete pre-suit exhaustion is required." *Barney v. Bureau of Prisons,* No. 02 CV 5284, 2004 WL 2810108, at *6 (E.D.N.Y. Dec.8, 2004); *see also Williams v. United States,* No. 02 CV 6523, 2004 WL 906221, at *5 (S.D.N.Y. Apr.28, 2004).* Thus, before filing suit, an inmate must challenge the condition to the highest level of administrative review. *Id.* at *1. The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 532; *see also Baez v. Bureau of Prisons,* No. 02 CV 9216, 2004 WL 1777583, at *4 (S.D.N.Y. May 11, 2004).* The purpose behind the exhaustion requirement is to afford corrections officials time to address complaints internally. *See Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002).

**\*4** The government represents that the BOP has

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

established a procedure which allows inmates to seek administrative review of any complaint regarding their incarceration. (*See* Gvt. Mem. at 5); *see also* 28 C.F.R. § 542.10; *Baez v. Bureau of Prisons,* 2004 WL 1777583, at *4 (discussing the BOP procedures when an inmate seeks to challenge any issue relating to an aspect of his confinement). The BOP Administrative Remedy Program requires that an inmate first attempt to resolve his dispute informally through the staff and the staff is required to try to resolve the issue. *See* 28 C.F.R. § 542.13(a); *see also Baez v. Bureau of Prisons,* 2004 WL 1777583, at *2. If that method is not successful, the inmate may, within 20 days of the event, seek the Warden's review by submitting a Form BP-9, which is a written "Administrative Remedy Request to the Warden." *See* C.F.R. § 542.15(a). If the inmate's BP-9 request is denied, the inmate may file a Form BP-10 appeal to the Regional Director of the BOP. 28 C.F .R. § 542.15(a). Disciplinary sanctions can be challenged initially through the filing of a BP-10 Form. 28 C.F.R. § 542.14(d)(2). If the Regional Director denies the appeal, that decision in turn may be appealed through a BP-11 appeal to the General Counsel's Office within 30 days of the Regional Director's decision. 28 C.F.R. § 542 .15(a); *see Baez v. Bureau of Prisons,* 2004 WL 1777583 at *2. Until the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted.

In opposing Mr. Strong's petition, the government acknowledges that petitioner filed a BP-10 on July 30, 2009, appealing the sanctions imposed as a result of his escape from the CCC. (Colvin Dec. ¶ 5). Before filing a BP-11, however, petitioner commenced this instant lawsuit. (*Id.* ¶ 6). Thus, petitioner has failed to completely exhaust his administrative remedies. *See Barney v. Bureau of Prisons,* 2004 WL 2810108, at *6. Moreover, even if petitioner has since taken steps to completely exhaust his administrative remedies under Section 1997e, this would nonetheless be insufficient because petitioner must have pursued all institutional remedies before filing suit; "it is not enough to take steps toward exhaustion or even to exhaust a claim, during the pendency of the case." *Baez v. Bureau of Prisons,* 2004 WL 1777583, at *5.

Accordingly, it is respectfully recommended that the petition be dismissed based on Mr. Strong's failure to exhaust all administrative remedies prior to filing this petition.

C) *Requirements for Mandamus Relief*

1) *Disciplinary Procedures are Discretionary*

The government contends that even if petitioner had exhausted his administrative remedies, a writ of mandamus is not warranted because the BOP has discretion to decide how to implement its disciplinary procedures and therefore, petitioner's " 'right to relief is [not] clear and indisputable.' " (Gvt. Mem. at 7-9 (quoting *In re FCC,* 217 F.3d 125, 134 (2d Cir.2000)). The government asserts that the procedures for disciplinary action are established by BOP regulation and require that an inmate be given notice of the charges and a hearing. *See* 28 C.F.R. § 541.17. The procedures also allow for an inmate to be present during the hearing. *Id.* However, the procedures are subject to modification in the exercise of BOP discretion when institutional concerns and individual circumstances require deviation. *Id.* Thus, when an inmate escapes, the hearing may be held in absentia with notice served on the inmate when he is taken back into custody. *Id.* § 541.17(d).

**\*5** To the extent that petitioner's claim is based on a perceived deviation from agency procedure, the BOP is afforded discretion to modify the procedures and therefore, no clearly defined peremptory duty exists for which a writ of mandamus may issue.

2) *No Due Process Violation*

Petitioner alleges that the government violated his right to procedural due process. (Pet'n at 4-7). To make out such a claim, petitioner must first prove the existence of a protected interest, and then prove government deprivation of that interest without due process of law. *See, e.g., Tellier v. Fields,* 208 F.3d 69, 79-90 (2d Cir.2000). The government argues that petitioner fails on both prongs of the test. (Gvt. Mem. at 9-13).

The Court agrees that petitioner's removal from his work release program did not implicate a liberty interest upon

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

which petitioner may base his due process claim. As the court in *Tellier v. Scott,* No. 94 CV 3459, 2004 WL 224499, at * 3 (S.D.N.Y. Feb. 5, 2004), noted: "the violation of a BOP regulation itself does not constitute a violation of due process." Rather, the question for the court is whether a liberty interest has been created by statute or regulation such that a due process right exists.

Congress has given the BOP broad discretion to "designate the place of a prisoner's imprisonment." 18 U.S.C. § 3621(b). It follows that no liberty interest exists that would apply to plaintiff's placement in a half way house or rehabilitation program. *See Castellar v. Federal Bureau of Prisons,* No. 07 CV 3952, 2009 WL 1674642, * 1 (E.D.N.Y. May 29, 2009); *see also Sealey v. Giltner,* 116 F.3d 47, 52 (2d Cir.1997) (noting that an inmate's confinement only implicates a protected interest if it constitutes a "deprivation [that] is atypical and significant and the state has created the liberty interest by statute or regulation"). Given that petitioner has no liberty interest or right to be placed in a work release program, he cannot claim a due process violation based on the BOP's decision to remove him from that program. *See Castellar v. Federal Bureau of Prisons,* 2009 WL 1674642, * 1.

Even if petitioner could establish a liberty interest that was implicated here, his due process claim still must fail because the procedures that were followed did comport with the requirements of due process. In *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), the Supreme Court indicated that in the context of disciplinary process for inmates, constitutional due process requires that the inmate receive notice of the charges against him and an opportunity to be heard. As long as a disciplinary sanction is based on some evidence, it satisfies the standard for due process, *See, e.g., Superintendent, Mass. Corr. Inst. v. Hill,* 472 U.S. 445, 454-56, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985).

Here, the government argues that the BOP paperwork indicates that petitioner was taken into custody at the Brooklyn MDC on June 24, 2009, where petitioner was given prompt notice of the charges. (Gvt. Mem. at 12). Along with the notice, petitioner was given an incident report completed by one of the supervisors at petitioner's work release program detailing the evidence against him, including that petitioner failed to report back to the facility

at 6:00 p.m. and had neither been arrested nor admitted to a hospital. (Eichenholtz Dec., Ex. B). The notice, which petitioner signed for, further states that there would be a hearing on June 25, 2009 at 12:46 p.m. (*Id.,* Ex. C). Moreover, there were two hearings held in this case: one on June 25, 2009, and a second hearing held July 13, 2009 because petitioner had received less than 24 hours notice of the first proceeding. (*Id.,* Ex. D). In the report prepared by the hearing committee, petitioner is reported to have explained at the hearing that he "went to a bar after work" and subsequently "decided not to return to the facility." (*Id.,* Ex. E) (quoting "Summary of Inmate Statements" section in report). These statements in the report are actually initialed by petitioner, demonstrating that he had an opportunity to be heard, and was given an opportunity to review his statements, before the committee rendered its decision.

**\*6** Accordingly, in light of the documents presented by the BOP, it appears that petitioner does not have a clear right to any of the relief that he seeks and therefore he cannot satisfy the requirements needed before a writ of mandamus may issue. *See Anderson v. Bowen,* 881 F.2d at 55.

*CONCLUSION*

For the reasons stated above, this Court respectfully recommends that the petition for a writ of mandamus be denied.[FN6] Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72; *Small v. Secretary of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989). The Clerk is directed to mail copies of this Report and Recommendation to the parties.

FN6. By Motion dated August 28, 2009, petitioner seeks discovery relating to similar incidents involving other BOP inmates, including, *inter alia,* "[a]ll BOP forms BP-37 which is the form for an inmate to sign if he waives his right to be present for a hearing in front of the DHO;" "[a]ll incident reports written

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 276206 (E.D.N.Y.)
(Cite as: 2010 WL 276206 (E.D.N.Y.))

by the Brooklyn and Bronx half-way houses that
resulted in the inmates['] return to custody ...";
and "[a]ll the DHO reports on the hearings
conducted for inmates that were returned for rule
violations from the half way house." Given the
Court's recommendation that the petition be
denied, the Court has not reviewed petitioner's
motion for discovery and denies it as moot.


SO ORDERED.


E.D.N.Y.,2010.
Strong v. Lapin
Slip Copy, 2010 WL 276206 (E.D.N.Y.)


END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

C

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
Jerrell MILLER, Plaintiff,
v.
Lieutenant COVEY, Defendant.
**No. 9:05-CV-649(LEK/GJD).**

March 29, 2007.

Jerrell Miller, Brooklyn, NY, pro se.

Roger W. Kinsey, Office of Attorney General, Albany, NY, for Defendant.

### *DECISION AND ORDER*

LAWRENCE E. KAHN, U.S. District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on March 7, 2007, by the Honorable Gustave J. DiBianco, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern District of New York. Report-Rec. (Dkt. No. 19).

Within ten days, excluding weekends and holidays, after a party has been served with a copy of a Magistrate Judge's Report-Recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations," FED.R.CIV.P. 72(b), in compliance with L.R. 72.1. No objections have been raised in the allotted time with respect to Judge DiBianco's Report-Recommendation. Furthermore, after examining the record, the Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 19) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Defendant's Motion for summary judgment (Dkt. No. 17) is **GRANTED;** and it is further

**ORDERED,** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED IN ITS ENTIRETY;** and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N .Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendant violated plaintiff's right to due process in connection with a Tier II disciplinary hearing held against plaintiff on August 7, 2002. (Dkt. No. 1). Plaintiff also alleges that he was subjected to cruel and unusual punishment due to his placement in the Special Housing Unit. (SHU). Plaintiff seeks substantial monetary relief.

Presently before the court is defendant's motion for summary judgment pursuant to FED.R.CIV.P. 56. (Dkt. No. 17). Plaintiff has not responded to the motion. For the following reasons, this court agrees with defendant and

Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

will recommend dismissal of the complaint.

## DISCUSSION

### 1. *Summary Judgment*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED.R.CIV.P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).

**\*2** At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id. See also Burt Rigid Box v. Travelers Prop. Cas. Corp.,* 302 F.3d 83, 91 (2d Cir.2002) (citations omitted). However, only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. *Salahuddin v. Coughlin,* 674 F.Supp. 1048, 1052 (S.D.N.Y.1987) (citation omitted).

### 2. *Facts*

In his complaint, plaintiff states that he received a Tier II misbehavior report on August 4, 2002 for violations of Department of Correctional Services (DOCS) Rules 109.10 (out of place) and 181.10 (hearing disposition). Complaint p. 6. Plaintiff states that the disciplinary hearing for these violations was held on August 7, 2002, with defendant Covey presiding as hearing officer. *Id.* Plaintiff states that defendant Covey found plaintiff guilty of the misbehavior and imposed 60 days of confinement in SHU. Plaintiff claims that his confinement for 60 days in SHU was "unlawful or otherwise illegal" because the

maximum period of confinement after a Tier II hearing is only 30 days.

In plaintiff's "Causes of Action", plaintiff states that defendant Covey violated plaintiff's right to "substantive" and "procedural" due process. Complaint at p. 7 (First and Second Causes of Action). Plaintiff also claims that defendant violated plaintiff's rights under the Eighth Amendment because his excessive confinement was an "atypical and significant" hardship. *Id.* (Third Cause of Action).

### 3. *Exhaustion of Administrative Remedies*

Defendant argues that plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act, (PLRA), 42 U.S.C. § 1997e(a). The PLRA exhaustion requirement applies to *all inmate suits about prison life,* whether they involve general circumstances or particular episodes and regardless of the subject matter of the claim. *See e.g. Giano v. Goord,* 380 F.3d 670, 675-76 (2d Cir.2004). The Supreme Court has recently held, agreeing with the Second Circuit, that the exhaustion requirement is an *affirmative defense,* not a jurisdictional prerequisite. *Jones v. Bock,* 127 S.Ct. 910, 921 (2007); *Giano v. Goord,* 380 F.3d at 675-76. The Second Circuit has also held that there are instances in which the exhaustion requirement may either be waived or excused. *Id.* at 675. (citations omitted).

Additionally, as with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies. *McCoy v. Goord,* 255 F.Supp.2d 233, 247-48 (S.D.N.Y.2003). Where questions of fact exist as to exhaustion, summary judgment is not appropriate. *Pendergrass v. Corrections Officers,* 01-CV-243A, 2004 U.S. Dist. LEXIS 28224, \*6-7 (W.D.N.Y. Sept. 1, 2004). At the same time that the Second Circuit decided *Giano,* it also decided four other related cases, clarifying the law in the Second Circuit regarding the PLRA's exhaustion requirement and specifying various instances in which the requirement could be waived or excused. *See Hemphill v. State of New York,* 380 F.3d 680 (2d Cir.2004)(remanding case to determine if defendant's alleged threats constituted "special circumstances" justified plaintiff's failure to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

exhaust); *Abney v. McGinnis,* 380 F.3d 663 (2d Cir.2004)(whether failure to exhaust may be justified because plaintiff obtained favorable rulings on his grievances, but the relief that he was supposed to obtain was never forthcoming); *Johnson v. Testman,* 380 F.3d 691 (2d Cir.2004) (whether including claims in a disciplinary appeal may suffice for the exhaustion requirement); *Ortiz v. McBride,* 380 F.3d 649 (2d Cir.2004)(complete dismissal is not required when plaintiff brings both exhausted and unexhausted civil rights claims).

**\*3** Pursuant to these cases, the Second Circuit has developed a "three part inquiry" to determine whether an inmate fulfilled the PLRA exhaustion requirement. *See Brownell v. Krom,* 446 F.3d 305, 311-12 (2d Cir.2006)(citing *Hemphill,* 380 F.3d at 686). The inquiry asks (1) whether the administrative remedies were available to the inmate; (2) whether defendants' own actions inhibiting exhaustion estops them from raising the defense; and (3) whether special circumstances justify the inmate's failure to comply with the exhaustion requirement. *Id.*

The court notes that the Supreme Court's decision in *Woodford v.. Ngo,* 126 S.Ct. 2378 (2006) may have changed the law regarding possible exceptions to the exhaustion requirement. In *Woodford,* the Supreme Court held that the PLRA's exhaustion requirement mandates "proper" exhaustion of administrative remedies. In *Woodford,* the plaintiff filed a grievance that was rejected as "untimely." *Id.* at 2384. Woodford appealed the procedural denial through the administrative process, and "technically" exhausted his administrative remedies because there were no administrative remedies "available" to him. *Id.* However, the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Id.* at 2387. "Proper" exhaustion means that the inmate must complete the administrative review process ***in accordance with the applicable procedural rules,*** including deadlines, as a prerequisite to bringing suit in federal court. *See id.* at 2385-93 (emphasis added).

It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. In fact, based upon the concurring opinion in *Woodford,* it appears that these decisions have **not** been overruled in that respect. In that concurring opinion, Justice Breyer specifically noted that two circuits, the **Second** Circuit and the Third Circuit that have interpreted the PLRA "in a manner similar to that which the [Supreme] Court today adopts [in *Woodford]* have concluded that the PLRA's proper exhaustion requirement is not absolute." *Woodford,* 126 S.Ct. at 2393 (citing *Spruill v. Gillis,* 372 F.3d 218, 232 (3d Cir.2004); *Giano v. Goord,* 380 F.3d 670, 677 (2d Cir.2004))(Breyer, J. concurring). Justice Breyer then stated that on remand, the lower court should "similarly" consider any claims that the inmate might have concerning whether his case "falls into a ***traditional exception that the statute implicitly incorporates.***" *Id.* (emphasis added).

The Second Circuit has not specifically considered the effect that *Woodford* may have had on *Giano-Hemphill* line of cases. However, in *Ruggiero v. County of Orange,* 467 F.3d 170, 175-76 (2d Cir.2006), the Second Circuit stated that it did not need to determine what effect *Woodford* has upon the Second Circuit case law in the exhaustion area because in *Ruggiero,* the court found that plaintiff would not have prevailed even assuming the continued validity of the ability to "excuse" non-exhaustion. In *Sloane v.. Mazzuca,* the court stated that it would follow the "current" law in the Second Circuit until the Second Circuit specifically addressed the issue. *Sloane v. Mazzuca,* 04-CV-8266, 2006 U.S. Dist. LEXIS 79817, \*19-20 (S.D.N.Y. Oct. 31, 2006) (citation omitted).

**\*4** The Supreme Court cited *Woodford* in *Jones v. Bock,* explaining that the holding in *Woodford* only imposed a requirement that in order to properly exhaust administrative remedies, the inmate must " 'complete the administrative review process in accordance with the applicable procedural rules.' " *Jones,* 127 S.Ct. at 922 (citing *Woodford,* 126 S.Ct. at 2384). These rules are defined by the prison grievance process itself, and not by the PLRA. *Id.* In *Jones,* the Court ultimately held that exhaustion was not *per se* inadequate simply because a defendant that was later named in the civil rights complaint was not named in the grievance. *Id.* at 923.

In this case, plaintiff is complaining about a disciplinary hearing. He claims that defendant Covey violated

Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

plaintiff's constitutional rights when he imposed a sentence of sixty days in SHU following a Tier II hearing that was held on August 7, 2002.

In support of his motion for summary judgment, defendant has submitted the affidavit of Donald Selsky, the director of Special Housing and Inmate Disciplinary Hearings for DOCS. Selsky Aff. ¶ 1. Mr. Selsky explains that there are three levels of inmate disciplinary hearings: Tier I; Tier II; and Tier III.[FN1] Selsky Aff. ¶¶ 5-7, 9 (citing N.Y. COMP.CODES R. & REGS. (N.Y.CRR), tit. 7, §§ 250, 252.5, 253.7, 254.7). Mr. Selsky also explains in his affidavit that each disciplinary tier addresses violations in order of seriousness, with Tier I hearings being reserved for the least serious infractions, which can only be punished by loss of privileges; Tier II hearings addressing more serious infractions, for which the punishment can include up to 30 days confinement; and Tier III hearings being reserved for the most serious infractions, for which inmates may be sentenced to unlimited periods of SHU, together with a forfeiture of "good time" credits. *Id.*

> FN1. The court would point out that Tier I hearings are also referred to in the regulations as "Violation Hearings." 7 N.Y.C.R .R. Part 252. Tier II hearings are also referred to as "Disciplinary Hearings." 7 N.Y.C.R.R. Part 253. Tier III hearings are also referred to as "Superintendent's Hearings." 7 N.Y.C.R.R. Part 254.

The results of all levels of disciplinary hearings may be appealed. Appeals of Tier II dispositions must be made to the Superintendent of the facility. Selsky Aff. ¶ 8. (citing N.Y.C.R.R. § 253.8). Appeals of Tier III dispositions must be made within 30 days to the Commissioner, who has designated the Special Housing Unit/Inmate Disciplinary Programs department to review those appeals. Selsky Aff. ¶ 10 (citing 7 N.Y.C.R.R. § 254.8).

Defendant has also submitted the affidavit of Carole Greene, Inmate Records Coordinator II for DOCS, assigned to Great Meadow Correctional Facility. Greene Aff. In Ms. Greene's affidavit, she also explains the three-tier procedure for disciplinary hearings, together with the appeal procedures for Tier II hearing dispositions.

Greene Aff. ¶¶ 3-6. Ms. Greene states that plaintiff in this case has **never filed any administrative appeal of his August 7, 2002 hearing disposition,** wherein he was found guilty of being out of place and non-compliance with a hearing disposition.[FN2] Since he has never filed an appeal of the hearing disposition that he now challenges, he has failed to exhaust his available administrative remedies.

> FN2. Plaintiff pled guilty to both charges. Covey Aff. Ex. F at pp. 1-2 (8/7/02 Hearing Transcript).

**\*5** The court must then determine whether there are any exceptions to the exhaustion requirement in plaintiff's case. In his complaint, plaintiff admits that he did not file any "grievances" with respect to this problem because he was "ignorant towards [sic] life, mentally ill with suicidal thoughts and could barely read and write." Complaint at p. 3. Plaintiff also stated that he did not even have a chance to find out that a grievance procedure existed. *Id.* He also states in the complaint, that he **chose** not to complain about the facts that form the basis for this complaint because he was under heavy psychotic medication in SHU that caused him to sleep constantly.

The court must point out that although both are procedural vehicles for inmate complaints, **grievances** that are addressed to general aspects of prison life are different than **appeals** from disciplinary infractions. New York State provides inmates with a grievance procedure to follow by which inmates may file complaints and appeal adverse decisions. N.Y. CORRECT. LAW § 139; N.Y. COMP.CODES R. & REGS. tit. 7 §§ 701.1 *et seq.* (N.Y.CRR). While an inmate must affirmatively seek to file a grievance and appeal the denial of that grievance through the proper procedures, an inmate is specifically told of his rights to appeal the adverse ruling **at a disciplinary hearing.** The inmate is also informed to whom the appeal must be addressed and how much time he has to appeal. Plaintiff in this case was **given all of that information, verbally, and in writing, at the conclusion of the August 7, 2002 disciplinary hearing.** Covey Aff. Exs. F & G (8/7/02 Hearing Transcript and Disposition). Plaintiff did not have to "find out" whether a grievance procedure existed because the exhaustion of administrative remedies would have been complete if plaintiff had simply appealed the disciplinary hearing result as explained to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

him by the hearing officer. Covey Aff. Ex. F at p. 6.

Plaintiff was also deposed in this action. Defendant has submitted portions of the plaintiff's deposition as Defendant's Ex. A. Plaintiff clearly stated during his deposition that he "should have" appealed the Tier hearing, but he "didn't want to." Ex. A at p. 2 (Deposition Transcript page 14). Plaintiff then cryptically stated "stay in the box is the whole idea or get assaulted again." *Id.* It is unclear to what plaintiff is referring, but it is clear that he made a *conscious decision* not to appeal the hearing disposition, and that he wished to remain in SHU for whatever reason. *Id.*

The court would also point out that plaintiff did not give all of the facts surrounding his alleged "60 day" sentence to SHU after a Tier II hearing. It is clear from the exhibits submitted by defendant that the sentence that plaintiff received as a result of the infractions handled in the Tier II hearing was only 30 days keeplock. Covey Aff. Ex. G. However, plaintiff had a previous *Tier III* disciplinary hearing on August 1, 2002, after which he was found guilty of committing an unhygienic act as well as damaging property.[FN3] Covey Aff. Ex. B. Plaintiff pled guilty to the unhygienic act. Covey Aff. Ex. C at p. 2. He was sentenced to 30 days in SHU, but that sentence was "suspended" for a period of three months. Covey Aff. Ex. C (8/1/02 Hearing Transcript at p. 7). The 30 day "suspended" sentence was added to the 30 day keeplock sentence imposed by defendant Covey after the Tier II hearing, bringing plaintiff's total confinement to 60 days. Covey Aff. Ex. G (8/7/02 Hearing Disposition).

> FN3. The misbehavior that resulted in the August 1, 2002 hearing was committed at Ulster Correctional Facility. Covey Aff. Ex. A (July 26, 2002 Misbehavior Report). The two hearings, however, were both conducted at Green Correctional Facility. Covey Aff. Exs. C & F (disciplinary hearing transcripts from 8/1/02 and 8/7/02).

**\*6** At the August 1, 2002 hearing, the hearing officer (Captain Padyk) explained the meaning of a "suspended" sentence. Covey Aff. Ex. C at p. 9. Captain Padyk told plaintiff that he would have "thirty days over [his] head for

a period of three months." *Id.* This meant that if plaintiff had another misbehavior report within three months, "[t]hat thirty days can be picked up and then added [sic] whatever else you did at that time." *Id.* Captain Padyk also carefully explained how plaintiff could appeal the disposition if he chose to do so. *Id.* Plaintiff *never appealed the August 1, 2002 disposition.* Selsky Aff.¶ 12.

Since plaintiff's August 4, 2002 disciplinary infraction, resulting in his August 7, 2002 disciplinary hearing was certainly within three months of the August 1, 2002 disciplinary hearing, the suspended sentence from August 1, 2002 Tier III hearing was justifiably added to the sentence of 30 days keeplock from the August 7, 2002 hearing. Captain Padyk explained this to plaintiff at the end of the August 1, 2002 hearing. This was only four days before plaintiff committed the August 4, 2002 infraction. There was little time for plaintiff to have forgotten Captain Padyk's admonition.

Although plaintiff states in his complaint that he did not file a grievance or complain about the hearings because he was "ignorant towards life," plaintiff's deposition transcript shows just the opposite. He concedes that he understood the hearing officer's statement at the time of the August 1, 2002 Tier III hearing that if plaintiff got "another ticket" the suspended sentence "would be revoked." Ex. A at p. 5 (Deposition Transcript page 22). Plaintiff then claims that after the August 7, 2002 Tier II hearing, he thought that the hearing officer should have either sentenced him to thirty days keeplock *or* imposed the suspended sentence of 30 days in SHU.

Although it is true that plaintiff ultimately served sixty days as the "result" of a Tier II hearing, the extra thirty days was imposed after a Tier III hearing and plaintiff was well aware after that Tier III hearing that if he committed any more misbehavior within three months, the suspended sentence of thirty days would be added to any other sentence he received.[FN4] Thus, it is clear that plaintiff had available remedies to challenge his sentence, no one prevented him from utilizing these methods of appeal, and there are no "special circumstances" that would justify plaintiff's failure to exhaust.

> FN4. The court notes that although the hearing

Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)
(Cite as: 2007 WL 952054 (N.D.N.Y.))

disposition states that 30 days was keeplock, and 30 days was SHU time, plaintiff apparently spent the entire sentence in SHU. Keeplock is generally confinement to an inmate's own cell for a period of time. *Gittens v. LeFevre,* 891 F.2d 38, 39 (2d Cir.1989). The SHU is a separate housing unit. However, the regulations provide that the sentence after a Tier II hearing may be a maximum of 30 days confinement to a cell or room continuously or to a Special Housing Unit under keeplock confinement. 7 N.Y.C.R.R. § 253.7(a)(iii). Defendant Covey's affidavit in this case states that he has no control over **where** the inmate serves his sentence after a Tier Hearing disposition. Covey Aff. ¶ 23. Thus, the fact that plaintiff spent the entire 60 days in SHU does not change this court's findings.

To the extent that the complaint appears to allege a separate Eighth Amendment violation for sixty days confinement in SHU, plaintiff never filed a grievance regarding the conditions in SHU and would not have exhausted his administrative remedies as to an Eighth Amendment claim. Additionally a review of plaintiff's deposition shows that he was only claiming that he received cruel and unusual punishment because the sentence was excessive, not because of any "conditions" in SHU. Plaintiff stated that although he was placed in a double room with another inmate, they never had any problems, and plaintiff was afforded all the items that he needed. Defendant's Ex. A at 15-17 (Deposition Transcript at 32-34).

**\*7** In fact, when defense counsel asked plaintiff if he ever filed a grievance about the conditions in SHU, plaintiff stated that "[i]t wasn't horrible, no." *Id.* at 17, Deposition Transcript at 34). Thus, to the extent that plaintiff's complaint appears to allege a separate Eighth Amendment claim, it is also not exhausted, and there is no reason to excuse the failure to exhaust.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant's motion for summary judgment (Dkt. No. 17) be **GRANTED,** and the complaint be **DISMISSED IN ITS ENTIRETY.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2007.
Miller v. Covey
Not Reported in F.Supp.2d, 2007 WL 952054 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2004 WL 1946458 (W.D.N.Y.)
(Cite as: 2004 WL 1946458 (W.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Michael PENDERGRASS, Plaintiff,
v.
Corrections Officers T. SANNEY et al., Defendants.
**No. 01 CV 243A.**

Aug. 18, 2004.

Michael Pendergrass, Pine City, NY, pro se.

Ann C. Williams, Buffalo, NY, for Defendant.

Order and Report & Recommendation

SCOTT, Magistrate J.

**\*1** The following motions are before the court: the defendants' motion to dismiss based upon a failure to exhaust (Docket No. 11) and the plaintiff's motion for appointment of counsel (Docket No. 20).[FN1]

> FN1. The Court notes that the plaintiff's motion for reconsideration (Docket No. 9) was denied on December 18, 2003. (Docket No. 17).

Background

In this inmate civil rights action brought pursuant to 42 U.S.C. § 1983, the plaintiff, Michael Pendergrass ("Pendergrass"), alleges that on July 7, 2001 he was assaulted by Corrections Officer T. Sanney with the assistance or acquiescence of other corrections officers.

He also alleged that various corrections officers conspired to coverup the attack. (See Complaint, Docket No. 1).

The defendant's move to dismiss this action on the grounds that Pendergrass allegedly failed to exhaust his administrative remedies as required under the Prisoner Litigation Reform Act, codified at 42 U.S.C. § 1997(e).

Discussion

Exhaustion

The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." It is well settled that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). This requirement applies even to suits seeking relief, such as money damages, that may not be available in prison administrative proceedings, as long as other forms of relief are obtainable through administrative channels. Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The Second Circuit has held that administrative exhaustion is not a jurisdictional predicate, Richardson v. Goord, 347 F.3d 431 (2d Cir.2003), and that plaintiffs are entitled to notice and an opportunity to be heard before a court can dismiss their complaints for failure to exhaust administrative remedies. Snider v. Melindez, 199 F.3d 108 (2d Cir.1999).

The regular grievance procedure established by the New York State Department of Correctional Services ("DOCS"). consists of three tiers. First, the inmate files a level 1 grievance (either on an Inmate Grievance Complaint Form, or on plain paper if the form is not readily available) with the Inmate Grievance Resolution Committee ("IGRC"), which is composed of fellow

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1946458 (W.D.N.Y.)
(Cite as: 2004 WL 1946458 (W.D.N.Y.))

inmates and prison officials.[FN2] The IGRC must convene a hearing, if necessary, within seven working days, and issue a written decision within two days of the hearing. Next, the inmate has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the Central Office Review Committee ("CORC"). The inmate's final opportunity for resolution of his grievance is to appeal to the CORC within four working days of the superintendent's decision. The CORC then has 20 working days to render a decision. 7 N.Y.C.R.R. § 701.7(c)(4).[FN3]

> FN2. The PLRA's exhaustion requirement is designed to "afford [ ] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter, 534 U.S. at 524-25. As such, it is not dissimilar to the rules of notice pleading, which prescribe that a complaint "must contain allegations sufficient to alert the defendants to the nature of the claim and to allow them to defend against it." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 234 (2d Cir.2004). If prison regulations do not prescribe any particular content for inmate grievances, "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. As in a notice pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." Johnson v. Testman, 2004 WL 1942669 at *5 quoting Strong v. David, 297 F.3d 646, 650 (7th Cir.2002).

> FN3. In cases alleging harassment or other misconduct by corrections employees, an inmate may attempt to expedite the administrative process by reporting the conduct to the direct supervisor of the employee. 7 N.Y.C.R.R. § 701.11. However, it appears that an inmate cannot seek expedited relief until he has filed a formal grievance under § 701.7. See Hemphill v. New York, 2004 WL 1842658 (2d Cir.2004).

**\*2** Section 1997(e) of the PLRA mandates dismissal of

any unexhausted inmate claims brought under § 1983. There is often a dispute as to whether the plaintiff has exhausted his administrative remedies. In Hemphill v. New York, 2004 WL 1842658 (2d Cir.2004), the Second Circuit reaffirmed that a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA. Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. Hemphill, 2004 WL 1842658 at *5 citing Ziemba v. Wezner, 366 F.3d 161, 163 (2dCir.2004). If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should then consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements." Hemphill, 2004 WL 1842658 at *5.

It should be noted that the failure to exhaust is an affirmative defense which may be waived by the defendants. See Johnson v. Testman, 2004 WL 1842669 (2d Cir.2004); [FN4] Jenkins v. Haubert, 179 F.3d 19, 28-29 (2d Cir.1999). In addition, the defendants' actions "may ... estop[ ] the State from asserting the exhaustion defense," Ziemba, 366 F.3d at 163. In Abney v. McGinnis, 2004 WL 1842647 (2d Cir.2004), the Court held that an inmate who receives a favorable disposition after filing a grievance need not file additional grievances prior to commencing a § 1983 action based upon a failure of the defendants to implement the favorable relief granted in the initial grievance. In Hemphill, the Second Circuit held that threats by corrections officers against an inmate to dissuade him from filing a grievance may in some instances be sufficient to estop the government from asserting the affirmative defense of non-exhaustion. Hemphill, 2004 WL 1842658 at *8; see also Giano v. Goord, 2004 WL 1842652 at *4 (2d Cir.2004).[FN5] Where questions of fact exist as to these issues, summary

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1946458 (W.D.N.Y.)
(Cite as: 2004 WL 1946458 (W.D.N.Y.))

judgment is inappropriate. *Giano,* 2004 WL 1842652 at *4. Exhaustion may not be required where an inmate reasonably believes that the grievance process in not available. *Giano,* 2004 WL 1842652 at *6-7. Finally, in *Ortiz v. McBride,* 2004 WL 1842664 (2d Cir.2004), the Second Circuit held that total exhaustion was not necessary with respect to § 1983 complaints. Where a complaint includes both exhausted and unexhausted claims, the Court may dismiss the unexhausted claims and proceed with the exhausted claims. In such cases, the Second Circuit contemplated that in the ordinary case the Court would proceed to decide the exhausted claims "without waiting for the plaintiff to attempt to exhaust available remedies with respect to the dismissed claims." *Ortiz,* 2004 WL 1842664 at *12.

> FN4. In *Johnson,* the Court also held that in some situations, the raising of a prisoner complaint in a disciplinary hearing may amount to exhaustion of administrative remedies. Johnson, 2004 WL 1842664 at *6.

> FN5. Where a prison fails to provide access to grievance forms, a prisoner's complaint cannot be dismissed for failure to exhaust. See *Feliciano v. Goord,* 1998 WL 436358 (S.D.N.Y. July 27, 1998) (denying dismissal on failure to exhaust grounds where corrections officers refused to provide inmate with grievance forms); *Burns v. Moore,* 2002 WL 91607, at *5 (S.D.N.Y. Jan.24, 2002) ("if an inmate is not allowed to file a grievance by prison authorities, a question exists as to whether he ... had any available administrative remedies"). The plain language of the statute requires only "available" administrative remedies to be exhausted. *See Miller v. Norris,* 247 F.3d 736, 740 (8th Cir.2001) ("a remedy that prison officials prevent a prisoner from utilizing is not an "available" remedy under § 1997e(a)") (internal quotations omitted). See also *Kendall v. Kittles,* 2004 WL 1752818, *4 (S.D.N.Y.2004).

Pendergrass' Claim

**\*3** In the instant case, the defendant's contend that the

plaintiff made no attempt to file a grievance relating to the July 7, 2001 attack which serves as the basis of the Pendergrass' complaint. (Docket No. 13 at page 6). In support of this argument, the defendant's submit the Affidavit of Thomas G. Eagen, Director of the Inmate Grievance Program ("IGP") for the New York State Department of Correctional Services ("DOCS"), attesting that a search of IGP records does not reveal any grievance filed by Pendergrass relating to the July 7, 2001 incident. (Docket No. 12).

In his reply to the instant motion, however, Pendergrass represents that he did file a grievance with respect to the July 7, 2001 attack. (Docket No. 16). Attached to his response is a copy of a handwritten document dated July 12, 2001 labeled as a "Grievance." This document starts out with the following complaint: "On July 7, 2001 I was assaulted by Officer T. Sanney, E. Emminger, Robinson, Buckly, Connolly and numerous John Does for no reason." (Docket No. 16, Exhibit 1). The plaintiff also attaches another purported grievance dated July 24, 2001 in which he complains that the corrections officers are tampering with his mail. (Docket No. 16, Exhibit 2). Pendergrass alleges in this grievance that the officers "are not letting [his] mail out that's going to [his] family or any agency who [he is] trying to reach out to for help concerning [his] situation with their fellow officers." He also attaches a third document which appears to be a letter dated July 24, 2001 to the "Correspondence Office" in which he again complains that correction officers are tampering with his mail. (Docket No. 16, Exhibit 3).

In their reply, the defendant's assert that the correspondence attached to the plaintiff's response relates only to a problem he was allegedly experiencing with the mail room. (Docket No. 19 at page 2). To the contrary, as quoted above, at least one of the purported grievances directly addresses the July 7, 2001 incident that underlies this complaint.

A question of fact exists as to whether or not the plaintiff in fact filed a grievance regarding the alleged attack in this matter. Further, the additional correspondence attached to the plaintiff's response, to the effect that the correction officers tampered with his mail to prevent him from sending mail to address his concerns, raises factual questions as to the plaintiff's ability to take advantage of

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 1946458 (W.D.N.Y.)
(Cite as: 2004 WL 1946458 (W.D.N.Y.))

the grievance process notwithstanding any efforts on his part to do so. These questions of fact are sufficient to preclude summary judgment under *Hemphill* and *Giano,*

Based upon the record before the Court, questions of fact exist as to whether the plaintiff exhausted his administrative remedies as required under § 1997(e). Thus, it is recommended that the defendants' motion to dismiss be denied.

The plaintiff has also moved for the appointment of counsel. (Docket No. 20). This motion is denied at this time. The plaintiff has demonstrated the ability to adequately prosecute his claims in this case.

Conclusion

**\*4** Based on the forgoing, the plaintiff's motion for the appointment of counsel (Docket No. 20) is denied. It is recommended that the defendants' motion to dismiss (Docket No. 11) also be denied.

Pursuant to 28 USC § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as WDNY Local Rule 72.3(a)(3).

FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d

435 (1985); *F.D.I.C. v. Hillcrest Associates,* 66 F.3d 566 (2d. Cir.1995); *Wesolak v. Canadair Ltd.,* 838 F.2d 55 (2d Cir.1988);* see also 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and WDNY Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See *Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir.1988).*

Finally, the parties are reminded that, pursuant to WDNY Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." *Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.*

So ordered.

W.D.N.Y.,2004.
Pendergrass v. Sanney
Not Reported in F.Supp.2d, 2004 WL 1946458 (W.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
James MURRAY, Plaintiff,
v.
R. PALMER; S. Griffin; M. Terry; F. Englese; Sergeant
Edwards; K. Bump; and K.H. Smith, Defendants.
**No. 9:03-CV-1010 (GTS/GHL).**

March 31, 2010.

James Murray, Malone, NY, pro se.

Bosman Law Office, AJ Bosman, Esq., of Counsel, Rome,
NY, for Plaintiff.

Hon. Andrew M. Cuomo, Attorney General for the State
of New York, Timothy Mulvey, Esq., James Seaman,
Esq., Assistant Attorneys General, of Counsel, Albany,
NY, for Defendants.

***DECISION and ORDER***

Hon. GLENN T. SUDDABY, District Judge.

**\*1** The trial in this prisoner civil rights action, filed *pro se*
by James Murray ("Plaintiff") pursuant to 42 U.S.C. §
1983, began with an evidentiary hearing before the
undersigned on March 1, 2010, regarding the affirmative
defense of seven employees of the New York State
Department of Correctional Services-R. Palmer, S. Griffin,
M. Terry, F. Englese, Sergeant Edwards, K. Bump, and
K.H. Smith ("Defendants")-that Plaintiff failed to exhaust
his available administrative remedies, as required by the
Prison Litigation Reform Act, before filing this action on
August 14, 2003. At the hearing, documentary evidence

was admitted, and testimony was taken of Plaintiff as well
as Defendants' witnesses (Darin Williams, Sally Reams,
and Jeffery Hale), whom Plaintiff was able to
cross-examine through *pro bono* trial counsel. At the
conclusion of the hearing, the undersigned indicated that
a written decision would follow. This is that written
decision. For the reasons stated below, Plaintiff's Second
Amended Complaint is dismissed because of his failure to
exhaust his available administrative remedies.

**I. RELEVANT LEGAL STANDARD**

The Prison Litigation Reform Act of 1995 ("PLRA")
requires that prisoners who bring suit in federal court must
first exhaust their available administrative remedies: "No
action shall be brought with respect to prison conditions
under § 1983 ... by a prisoner confined in any jail, prison,
or other correctional facility until such administrative
remedies as are available are exhausted." 42 U .S.C. §
1997e. The PLRA was enacted "to reduce the quantity and
improve the quality of prisoner suits" by "afford[ing]
corrections officials time and opportunity to address
complaints internally before allowing the initiation of a
federal case." Porter v. Nussle, 534 U.S. 516, 524-25, 122
S.Ct. 983, 152 L.Ed.2d 12 (2002). In this regard,
exhaustion serves two major purposes. First, it protects
"administrative agency authority" by giving the agency
"an opportunity to correct its own mistakes with respect to
the programs it administers before it is haled into federal
court, and it discourages disregard of the agency's
procedures." Woodford v. Ngo, 548 U.S. 81, 89, 126 S.Ct.
2378, 165 L.Ed.2d 368 (2006). Second, exhaustion
promotes efficiency because (a) "[c]laims generally can be
resolved much more quickly and economically in
proceedings before an agency than in litigation in federal
court," and (b) "even where a controversy survives
administrative review, exhaustion of the administrative
procedure may produce a useful record for subsequent
judicial consideration." Woodford, 548 U .S. at 89. "[T]he
PLRA's exhaustion requirement applies to all inmate suits
about prison life, whether they involve general
circumstances or particular episodes, and whether they
allege excessive force or some other wrong." Porter, 534
U.S. at 532.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

In accordance with the PLRA, the New York State Department of Correctional Services ("DOCS") has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.FN1 *First,* an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.FN2 If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. *Second,* a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. *Third,* a grievant may appeal to the central office review committee ("CORC") within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

> FN1. *See also White v. The State of New York,* 00-CV-3434, 2002 U . S. Dist. LEXIS 18791, at *6 (S.D.N.Y. Oct 3, 2002).

> FN2. The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

**\*2** Moreover, there is an expedited process for the review of complaints of inmate harassment or other misconduct by corrections officers or prison employees. 7 N.Y.C.R.R. § 701.8. In the event the inmate seeks expedited review, he or she may report the misconduct to the employee's supervisor. The inmate then files a grievance under the normal procedures outlined above, but all grievances alleging employee misconduct are given a grievance number, and sent immediately to the superintendent for review. Under the regulations, the superintendent or his designee shall determine immediately whether the allegations, if true, would state a "bona fide" case of harassment, and if so, shall initiate an investigation of the complaint, either "in-house," by the Inspector General's Office, or by the New York State Police Bureau of Criminal Investigations. An appeal of the adverse decision of the superintendent may be taken to the CORC as in the regular grievance procedure. A similar "special" procedure is provided for claims of discrimination against an inmate. 7 N.Y.C.R.R. § 701.9.

It is important to note that these procedural requirements contain several safeguards. For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances. If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.FN3 Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can-and must-be appealed to the next level, including CORC, to complete the grievance process.FN4 There appears to be a conflict in case law regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.FN5 After carefully reviewing this case law, the Court finds that the weight of authority appears to answer this question in the affirmative.FN6 The Court notes that, if the plaintiff adequately describes, in his appeal to the superintendent, the substance of his grievance (or if the plaintiff attaches, to his appeal, a copy of his grievance), it would appear that there is something for the superintendent to review.

> FN3. *Groves v. Knight,* 05-CV-0183, Decision and Order at 3 (N.D.N.Y. filed Aug. 4, 2009) (Suddaby, J.).

> FN4. 7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *Hemphill v. New York,* 198

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

F.Supp.2d 546, 549 (S.D.N.Y.2002), *vacated and remanded on other grounds,* 380 F.3d 680 (2d Cir.2004); *see, e.g .,* DOCS Directive 4040 dated 8/22/03, ¶ VI.G. ("Absent [a time limit extension granted by the grievant], matters not decided within the time limits may be appealed to the next step.); *Pacheco v. Drown,* 06-CV-0020, 2010 WL 144400, at *19 & n. 21 (N.D.N.Y. Jan.11, 2010) (Suddaby, J.) ("It is important to note that any failure to the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can be appealed to the next level, including CORC, to complete the grievance process."), *accord, Torres v. Caron,* 08-CV-0416, 2009 WL 5216956, at *5 & n. 28 (N.D.N.Y. Dec.30, 2009) (Mordue, C.J.), *Benitez v. Hamm,* 04-CV-1159, 2009 WL 3486379, at *13 & n. 34 (N.D.N.Y. Oct.21, 2009) (Mordue, C.J.), *Ross v. Wood,* 05-CV-1112, 2009 WL 3199539, at *11 & n. 34 (N.D.N.Y. Sept.30, 2009) (Scullin, J.), *Sheils v. Brannen,* 05-CV-0135, 2008 WL 4371776, at *6 & n. 24 (N.D.N.Y. Sept.18, 2008) (Kahn, J.), *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *15 & n. 46 (N.D.N.Y. June 20, 2008) (Hurd, J.), *McCloud v. Tureglio,* 07-CV-0650, 2008 WL 17772305, at *10 & n. 25 (N.D.N.Y. Apr. 15, 2008) (Mordue, C.J.), *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *14 & n. 114 (N.D.N.Y. Nov.5, 2007) (McAvoy, J.); *Nimmons v. Silver,* 03-CV-0671, Report-Recommendation, at 15-16 (N.D.N.Y. filed Aug. 29, 2006) (Lowe, M.J.) (recommending that the Court grant Defendants' motion for summary judgment, in part because plaintiff adduced no evidence that he appealed the lack of a timely decision by the facility's IGRC to the next level, namely to either the facility's superintendent or CORC), *adopted by* Decision and Order (N.D.N.Y. filed Oct. 17, 2006) (Hurd, J.); *Gill v. Frawley,* 02-CV-1380, 2006 WL 1742738, at *11 & n. 66 (N.D.N.Y. June 22, 2006) (McAvoy, J.) ("[A]n inmate's mere attempt to file a grievance (which is subsequently lost or destroyed by a prison official) is not, in and of itself, a reasonable effort to exhaust his administrative remedies since the inmate may still appeal the loss or destruction of that grievance."); *Walters v. Carpenter,* 02-CV-0664, 2004 WL 1403301, at *3 (S.D.N.Y. June 22, 2004) ("[M]atters not decided within the prescribed time limits must be appealed to the next level of review."); *Croswell v. McCoy,* 01-CV-0547, 2003 WL 962534, at *4 (N.D.N.Y. March 11, 2003) (Sharpe, M.J.) ("If a plaintiff receives no response to a grievance and then fails to appeal it to the next level, he has failed to exhaust his administrative remedies as required by the PLRA."); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002) ("Even assuming that plaintiff never received a response to his grievance, he had further administrative avenues of relief open to him.").

FN5. *Compare Johnson v. Tedford,* 04-CV-0632, 616 F.Supp.2d 321, 326 (N.D.N.Y.2007) (Sharpe, J.) ("[W]hen a prisoner asserts a grievance to which there is no response, *and it is not recorded or assigned a grievance number,* administrative remedies may be completely exhausted, as there is nothing on record for the next administrative level to review.") [emphasis in original, and citations omitted] *with Waters v. Schneider,* 01-CV-5217, 2002 WL 727025, at *2 (S.D.N.Y. Apr.23, 2002) (finding that, in order to exhaust his available administrative remedies, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to his grievance, of which no record existed).

FN6. *See, e.g., Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *16, 18 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) (finding that, in order to exhaust his available administrative remedies with regard to his grievance of August 30, 2000, plaintiff had to file an appeal with the superintendent from the IGRC's non-response to that grievance, which included a failure to acknowledge the receipt of the grievance and assign it a number); *Midalgo v. Bass,* 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept.26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

grievance of April 26, 2003, which was never assigned a grievance number); *Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available to him where his grievance of March 20, 2004, was not assigned a grievance number); *Veloz v. New York,* 339 F.Supp.2d 505, 515-16 (S.D.N.Y.2004) (rejecting inmate's argument that the prison's grievance procedure had been rendered unavailable to him by the practice of prison officials' losing or destroying his grievances, because, *inter alia,* "there was no evidence whatsoever that any of [plaintiff's] grievances were filed with a grievance clerk," and he should have "appeal[ed] these claims to the next level once it became clear to him that a response to his initial filing was not forthcoming"); *cf. Hernandez v. Coffey,* 582 F.3d 303, 305, 309, n. 3 (2d Cir.2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

It is also important to note that DOCS has a *separate and distinct* administrative appeal process for inmate misbehavior hearings:

A. For Tier III superintendent hearings, the appeal is to the Commissioner's designee, Donald Selsky, D.O.C.S. Director of Special Housing/Inmate Disciplinary Program, pursuant to 8 N.Y.C.R.R. § 254.8;

B. For Tier II disciplinary hearings, the appeal is to the facility superintendent pursuant to 7 N.Y.C.R.R. § 253.8; and

C. For Tier I violation hearings, the appeal is to the facility superintendent or a designee pursuant to 7 N.Y.C.R.R. § 252.6.

**\*3** "An individual decision or disposition of any current or subsequent program or procedure having a written appeal mechanism which extends review to outside the facility shall be considered nongrievable." 7 N.Y.C.R.R. § 701.3(e)(1). Similarly, "an individual decision or disposition resulting from a disciplinary proceeding ... is not grievable." 7 N.Y.C.R.R. § 701.3(e)(2). However, "[t]he policies, rules, and procedures of any program or procedure, including those above, are grievable." 7 N.Y.C.R.R. § 701.3(e)(3); *see also* N.Y. Dep't Corr. Serv. Directive No. 4040 at III.E.

Generally, if a prisoner has failed to follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies. *Ruggiero v. County of Orange,* 467 F.3d 170, 175 (2d Cir.2006) (citing *Porter,* 534 U.S. at 524). However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004), *accord, Ruggiero,* 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

With regard to this third inquiry, the Court notes that, *under certain circumstances,* an inmate may exhaust his administrative remedies by raising his claim during a related *disciplinary proceeding. Giano v. Goord,* 380 F.3d

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

670, 678-79 (2d Cir.2004); *Johnson v. Testman,* 380 F.3d 691, 697 (2d Cir.2004).[FN7] However, in essence, the circumstances in question include instances in which (1) the inmate reasonably believed that his "only available remedy" was to raise his claim as part of a tier disciplinary hearing,[FN8] *and* (2) the inmate articulated and pursued his claim in the disciplinary proceeding in a manner that afforded prison officials the time and opportunity to thoroughly investigate that claim.[FN9] Some district courts have found the first requirement not present where (a) there was nothing objectively confusing about the DOCS regulations governing the grievability of his claim,[FN10] (b) the inmate was specifically informed that the claim in question was grievable,[FN11] (c) the inmate separately pursued the proper grievance process by filing a grievance with the IGRC,[FN12] (d) by initially alleging that he did appeal his claim to CORC (albeit without proof), the inmate has indicated that, during the time in question, he understood the correct procedure for exhaustion,[FN13] and/or (e) before and after the incident in question, the inmate pursued similar claims through filing a grievance with the IGRC.[FN14] Other district courts have found the second requirement not present where (a) the inmate's mention of his claim during the disciplinary hearing was so insubstantial that prison officials did not subsequently investigate that claim,[FN15] and/or (b) the inmate did not appeal his disciplinary hearing conviction.[FN16]

FN7. The Court recognizes that the Supreme Court's decision in *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006), may have changed the law regarding possible exceptions to the exhaustion requirement (and thus the possibility that exhaustion might occur through the disciplinary process). Specifically, in *Woodford,* the Supreme Court held that the PLRA required "proper" exhaustion as a prerequisite to filing a section 1983 action in federal court. *Woodford,* 548 U.S. at 93. "Proper" exhaustion means that the inmate must complete the administrative review process *in accordance with the applicable procedural rules,* as a prerequisite to bringing suit in federal court. *Id.* at 88-103 (emphasis added). It is unclear whether *Woodford* has overruled any decisions that recognize "exceptions" to the exhaustion requirement. Out of special solicitude to Plaintiff, the Court will assume that *Woodford* has not overruled the Second Circuit's

*Giano-Testman* line of cases.

FN8. *Giano,* 380 F.3d at 678 ("[W]hile Giano was required to exhaust available administrative remedies before filing suit, his failure to do so was justified by his reasonable belief that DOCS regulations foreclosed such recourse."); *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia,* whether prisoner was justified in believing that his complaints in the disciplinary appeal procedurally exhausted his administrative remedies because the prison's remedial system was confusing).

FN9. *Testman,* 380 F.3d at 696-98 (remanding case so that district court could consider, *inter alia.* whether prisoner's submissions in the disciplinary appeals process exhausted his remedies "in a substantive sense" by "afford[ing] corrections officials time and opportunity to address complaints internally"); *Chavis v. Goord,* 00-CV-1418, 2007 WL 2903950, at *9 (N.D.N.Y. Oct.1, 2007) (Kahn, J.) ("[T]o be considered proper, exhaustion must occur in both a substantive sense, meaning that prison officials are somehow placed on notice of an inmate's complaint, and procedurally, in that it must be presented within the framework of some established procedure that would permit both investigation and, if appropriate, remediation.") [citation omitted]. The Court joins the above-described two requirements in the conjunctive because the Second Circuit has recognized that mere notice to prison officials through informal channels, without more, does not suffice to satisfy the PLRA procedural exhaustion requirement. *See Macias v. Zenk,* No. 04-6131, 495 F.3d 37, at *43-44 (2d Cir.2007) (recognizing that *Woodford v. Ngo,* 548 U.S. 81 [2006], overruled *Braham v. Casey,* 425 F.3d 177 [2d Cir.2005], to the extent that *Braham* held that "informal complaints" would suffice to exhaust a claim).

FN10. *See, e.g., Reynoso v. Swezey,* 423 F.Supp.2d 73, 75 (W.D.N.Y.2006), *aff'd,* 238 F.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

App'x 660 (2d Cir.2007) (unpublished order), *cert. denied,* 552 U.S. 1207, 128 S.Ct. 1278, 170 L.Ed.2d 109 (2008); *Holland v. James,* 05-CV-5346, 2009 WL 691946, at *3 (S.D.N.Y. March 6, 2009); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008); *cf. Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *5 & n. 23 (N.D.N.Y. July 11, 2007) (McAvoy, J.) (reciting this point of law in context of failure to appeal grievance determination to CORC).

FN11. *See, e.g., Johnson v. Barney,* 04-CV-10204, 2007 WL 2597666, at *2 (S.D.N.Y. Aug.30, 2007); *Reynoso,* 423 F.Supp.2d at 75-76.

FN12. *See, e.g., Reynoso,* 423 F.Supp.2d at 75 ("There is no evidence that plaintiff was confused or misled about the proper method for raising his claims. In fact, the record shows exactly the opposite: plaintiff did file a grievance about the incident. He simply failed to appeal the denial of that grievance to CORC."); *Tapp v. Kitchen,* 02-CV-6658, 2004 WL 2403827, at *9 (W.D.N.Y. Oct.26, 2004) ("In the instant case, however, plaintiff does not and cannot claim to have believed that his only available remedy was to raise his complaint as part of his disciplinary hearing, since he also filed a grievance with the Inspector General, and also claims to have filed both an inmate grievance and a separate complaint with the facility superintendent."); *cf. Muniz,* 2007 WL 2027912, at *5 & n. 23 ("Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC?").

FN13. *See, e.g., Petrusch v. Oliloushi,* 03-CV-6369, 2005 WL 2420352, at *5 (W.D.N.Y. Sept.30, 2005) ("[A]s to his grievance, which is the subject of this lawsuit, plaintiff does not appear to be contending that he believed the Superintendent's denial constituted exhaustion, since by initially claiming that he did appeal to CORC, albeit without proof, he has demonstrated his knowledge of the correct procedure for exhaustion.").

FN14. *See, e.g., Benjamin v. Comm'r N.Y. State DOCS,* 02-CV-1703, 2007 WL 2319126, at *14 (S.D.N.Y. Aug.10, 2007) ("Benjamin cannot claim that he believed that appealing his disciplinary proceeding was the only available remedy at his disposal in light of the numerous grievances he has filed during his incarceration at Green Haven [both before and after the incident in question]."), *vacated in part on other grounds,* No. 07-3845, 293 F. App'x 69 (2d Cir.2008).

FN15. *See, e.g., Chavis,* 2007 WL 2903950, at *9 ("The focus of a disciplinary hearing is upon the conduct of the inmate, and not that of prison officials.... While the mention of a constitutional claim during plaintiff's disciplinary hearing could potentially have satisfied his substantive exhaustion requirement by virtue of his having notified prison officials of the nature of his claims, he did not fulfill his procedural exhaustion requirement [under the circumstances due to his] ... mere utterance of his claims during the course of a disciplinary hearing .... [T]here is nothing in the record to suggest that when the issues of interference with plaintiff's religious free exercise rights or alleged retaliation for having voiced his concerns were in any way investigated by prison officials.") [citations omitted].

FN16. *See, e.g., Colon v. Furlani,* 07-CV-6022, 2008 WL 5000521, at *2 (W.D.N.Y. Nov.19, 2008) ("Colon was found guilty of harassment based on a letter that he wrote to defendant Bordinaro, concerning some of the events giving rise to his failure-to-protect claim, but it does not appear that he appealed that disposition.... While under some circumstances an inmate may be able to satisfy the exhaustion requirement by

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

appealing from a disciplinary hearing decision ..., plaintiff did not do so here, and this claim is therefore barred under the PLRA.") [citations omitted]; *Cassano v. Powers,* 02-CV-6639, 2005 WL 1926013, at *5 (W.D.N.Y. Aug.10, 2005) ("[E]ven assuming plaintiff believed that his proper recourse was to raise [his] complaint at his disciplinary hearing, rather than using the Inmate Grievance Program, he did not exhaust that process. That is, plaintiff has not provided any evidence that he appealed his Tier III hearing conviction. Since plaintiff did not pursue even the disciplinary appeal process, he can not have made submissions in the disciplinary process that were sufficient, in a substantive sense, to exhaust his remedies under § 1997e(a).") [internal quotation marks and citation omitted].

**\*4** Finally, two points bear mentioning regarding exhaustion. First, given that non-exhaustion is an affirmative defense, the defendant bears the burden of showing that a prisoner has failed to exhaust his available administrative remedies. *See, e.g., Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *4 (S.D.N.Y. July 25, 2008).* However, once a defendant has adduced reliable evidence that administrative remedies were available to Plaintiff and that Plaintiff nevertheless failed to exhaust those administrative remedies, Plaintiff must then "counter" Defendants' assertion by showing exhaustion, unavailability, estoppel, or "special circumstances." [FN17]

FN17. *See Hemphill,* 380 F.3d at 686 (describing the three-part inquiry appropriate in cases where a prisoner plaintiff plausibly seeks to "counter" defendants' contention that the prisoner failed to exhaust his available administrative remedies under the PLRA); *Verley v. Wright,* 02-CV-1182, 2007 WL 2822199, at *8 (S.D.N.Y. Sept.27, 2007) ("[P]laintiff has failed to demonstrate that the administrative remedies were not, in fact, 'actually available to him.' "); *Winston v. Woodward,* 05-CV-3385, 2008 WL 2263191, at *10 (S.D.N.Y. May 30, 2008) (finding that the plaintiff "failed to meet his burden under *Hemphill* of demonstrating 'special circumstances' "); *see also Ramirez v. Martinez,* 04-CV-1034, 2009 WL 2496647, at *4 (M.D.Pa.

Aug.14, 2009) ("In order to effectively oppose defendants' exhaustion argument, the plaintiff has to make a showing in regard to each of his claims."); *Washington v. Proffit,* 04-CV-0671, 2005 WL 1176587, at *1 (W.D.Va. May 17, 2005) ("[I]t is plaintiff's duty, at an evidentiary hearing, "to establish by a preponderance of the evidence that he had exhausted his administrative remedies or that any defendant had hindered or prevented him from doing so within the period fixed by the Jail's procedures for filing a grievance.").

Second, the Court recognizes that there is case law from within the Second Circuit supporting the view that the exhaustion issue is one of fact, which should be determined by a jury, rather than by the Court. [FN18] However, there is also case law from within the Second Circuit supporting the view that the exhaustion issue is one of law, which should be determined by the Court, rather than by a jury. [FN19] After carefully reviewing the case law, the Court finds that the latter case law-which includes cases from the Second Circuit and this District-outweighs the former case law. [FN20] (The Court notes that the latter case law includes cases from the Second Circuit and this District.) [FN21] More importantly, the Court finds that the latter cases are better reasoned than are the former cases. In particular, the Court relies on the reasons articulated by the Second Circuit in 1999: "Where administrative remedies are created by statute or regulation affecting the governance of prisons, ... the answer depends on the meaning of the relevant statute or regulation." *Snider v. Melindez,* 199 F.3d 108, 113-14 (2d Cir.1999). The Court relies also on the several reasons articulated by Judge Richard A. Posner in a recent Seventh Circuit decision: most notably, the fact that the exhaustion-of-administrative-remedies inquiry does not address the merits of, or deadlines governing, the plaintiff's claim but an issue of "judicial traffic control" (i.e., what forum a dispute is to be resolved in), which is never an issue for a jury but always an issue for a judge. *See Pavey v. Conley,* 544 F.3d 739, 740-42 (7th Cir.2008) (en banc), *cert. denied,* --- U.S. ----, 129 S.Ct. 1620, 173 L.Ed.2d 995 (2009). The Court notes that the First, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth and Eleventh Circuits appear to agree with the ultimate conclusion of the Second and Seventh Circuits that the exhaustion issue is properly decided by a judge, not a jury. [FN22]

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

FN18. *See, e.g., Lunney v. Brureton,* 04-CV-2438, 2007 WL 1544629, at *10 n. 4 (S.D.N.Y. May 29, 2007) ("There is certainly case law that supports the view that exhaustion should be determined by the Court rather than by a jury. As the Supreme Court has recently affirmed, however, exhaustion is an 'affirmative defense,' much like a statute of limitations defense. Where there are disputed factual questions regarding an affirmative defense such as a statute of limitations defense, the Second Circuit has stated that 'issues of fact as to the application of that defense must be submitted to a jury.' Thus, it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court."); *Finch v. Servello,* 06-CV-1448, 2008 WL 4527758, at *8 n. 5 (N.D.N.Y. Sept.29, 2008) (McAvoy, J.) (citing *Lunney* and noting that "it is not clear that factual disputes regarding the exhaustion defense should ultimately be decided by the Court").

FN19. *See, e.g., Harrison v. Goord,* 07-CV-1806, 2009 WL 1605770, at *7 n. 7 (S.D.N.Y. June 9, 2009) (recognizing that "[t]here is authority ... for the position that where questions of fact exist as to whether a plaintiff has exhausted administrative remedies, such fact questions are for the Court, rather than a jury, to decide ...."); *Amador v. Superintend. of Dept. of Corr. Servs.,* 03-CV-0650, 2007 WL 4326747, at *5 n. 7 (S.D.N.Y. Dec.4, 2007) ("It is unclear whether factual disputes regarding the exhaustion defense should ultimately be decided by the court or by a jury.... [T]here is ... case law ... supporting the view that exhaustion should be determined by the court and not a jury."), *appeal pending,* No. 08-2079-pr (2d Cir. argued July 15, 2009).

FN20. *See, e.g., Mastroianni v. Reilly,* 602 F.Supp.2d 425, 438 (E.D.N.Y.2009) (noting that the magistrate judge held an evidentiary hearing "on the issue of exhaustion"); *Sease v. Phillips,* 06-CV-3663, 2008 WL 2901966, *3 n. 2 (S.D.N.Y. July 25, 2008) (finding that "the better approach is for the judge, and not the jury, to decide any contested issues of fact relating to the

defense of failure to exhaust administrative remedies."); *Amador,* 2007 WL 4326747, at *5 n. 7 ("[T]here is ... case law, which in my view is more persuasive and on point, supporting the view that exhaustion should be determined by the court and not a jury. I find it proper that this issue be decided by the court."); *Enigwe v. Zenk,* 03-CV-0854, 2006 WL 2654985, at *4 (E.D.N.Y. Sept.15, 2006) (finding that, at the summary judgment "stage of the proceedings, a genuine question of fact exists with respect to whether [plaintiff] should be excused from exhausting his administrative remedies with regard to claims relating to his confinement at MDC Brooklyn," and therefore "direct[ing] that a hearing be held" before a judge, to resolve this issue); *Dukes v. S.H.U. C.O. John Doe # 1,* 03-CV-4639, 2006 WL 1628487, at *6 (S.D.N.Y. June 12, 2006) (ordering an "evidentiary hearing [before a judge] on the issue of whether prison officials failed to assign grievance numbers to [plaintiff]'s grievances and, if so, whether that rendered further administrative remedies unavailable, estopped the Defendants from asserting non-exhaustion, or justified [plaintiff]'s failure to appeal to the CORC"); *Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) ("The Court could have *sua sponte* dismiss[ed] this action as the record is unmistakably clear that an appropriate administrative procedure was available to him, that he was required to exhaust his administrative remedies, and that he failed to do so as required by the PLRA.... In this case, plaintiff has been afforded notice and given an opportunity to respond to the exhaustion issue and his failure remains clear."); *Roland v. Murphy,* 289 F.Supp.2d 321, 323 (E.D.N.Y.2003) "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.") [internal quotation marks and citation omitted]; *Evans v. Jonathan,* 253 F.Supp.2d 505, 509 (W.D.N.Y.2003) ( "[W]hether the plaintiff has exhausted his administrative remedies is a question for the Court to decide as a matter of law.").

FN21. *See, e.g., Snider v. Melindez,* 199 F.3d

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

108, 113-14 (2d Cir.1999) ("Whether an administrative remedy was available to a prisoner in a particular prison or prison system, and whether such remedy was applicable to the grievance underlying the prisoner's suit, are not questions of fact. They either are, or inevitably contain, questions of law. Where administrative remedies are created by statute or regulation affecting the governance of prisons, the existence of the administrative remedy is purely a question of law. The answer depends on the meaning of the relevant statute or regulation."), *accord, Mojias v. Johnson,* 351 F.3d 606, 608-11 (2d Cir.2003) (citing relevant language from *Snider v. Melindez,* and later stating that a district court could *sua sponte* dismiss a prisoner's civil rights complaint for failure to exhaust his available administrative remedies if it gave him notice and an opportunity to be heard); *DeBlasio v. Moriarty,* 05-CV-1143, Minute Entry (N.D.N.Y. filed Dec. 9, 2008) (McCurn, J.) (indicating that judge held pre-trial evidentiary hearing on whether plaintiff had exhausted administrative remedies before filing action); *Pierre v. County of Broome,* 05-CV-0332, 2007 WL 625978, at *1 n. 1 (N.D.N.Y. Feb.23, 2007) (McAvoy, J.) (noting that "[t]he court held an evidentiary hearing on October 25, 2006 concerning the issue of whether Plaintiff had exhausted administrative remedies"); *Hill v. Chanalor,* 419 F.Supp.2d 255, 257-59 (N.D.N.Y. March 8, 2006) (Kahn, J.) (*sua sponte* dismissing a prisoner's civil rights complaint, pretrial, for failure to exhaust his available administrative remedies after it gave him notice and an opportunity to be heard); *Raines v. Pickman,* 103 F.Supp.2d 552, 555 (N.D.N.Y.2000) (Mordue, J.) ("[I]n order for the Court to dismiss for failing to exhaust administrative remedies, the Court must be shown that such a remedy exists for an inmate beating in the grievance context. This is an issue of law for the Court to determine.").

FN22. *See Casanova v. Dubois,* 289 F.3d 142, 147 (1st Cir.2002); *Hill v. Smith,* 186 F. App'x 271, 273-74 (3d Cir.2006); *Mitchell v. Horn,* 318 F.3d 523, 529 (3d Cir.2003); *Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 682-83

(4th Cir.2005); *Dillon v. Rogers,* No. 08-30419, 2010 WL 378306, at *7 (5th Cir. Feb.4, 2010); *Taylor v. U.S.,* 161 F. App'x 483, 486 (6th Cir.2005); *Larkins v. Wilkinson,* 172 F.3d 48, at *1 (6th Cir.1998); *Husley v. Belken,* 57 F. App'x 281, 281 (8th Cir.2003); *Ponder v. Wackenhut Corr. Corp.,* 23 F. App'x 631, 631-32 (8th Cir.2002); *Wyatt v. Terhune,* 315 F.3d 1108, 1119-20 (9th Cir.2003), *cert. denied,* 540 U.S. 810 (2003); *Freeman v. Watkins,* 479 F.3d 1257, 1260 (10th Cir.2007); *Alloway v. Ward,* 188 F. App'x 663, 666 (6th Cir.2006); *Bryant v. Rich,* 530 F.3d 1368, 1373-76 (11th Cir.), *cert. denied,* --- U.S. ----, 129 S.Ct. 733, 172 L.Ed.2d 734 (2008).

## II. ANALYSIS

As an initial matter, Plaintiff argues that he exhausted his administrative remedies regarding the claims at issue in this action, by filing a grievance regarding those claims, and then appealing the non-response to that grievance all the way to CORC. Because the Court rejects this argument based on the evidence adduced at the hearing, the Court proceeds to an analysis of the three-step exhaustion inquiry established by the Second Circuit.

## A. Availability of Administrative Remedies

**\*5** New York prison inmates are subject to an Inmate Grievance Program established by DOCS and recognized as an "available" remedy for purposes of the PLRA. *See Mingues v. Nelson,* 96-CV-5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb.20, 2004) (citing *Mojias v. Johnson,* 351 F.3d 606 (2d Cir.2003), and *Snider v. Melindez,* 199 F.3d 108, 112-13 [2d Cir.1999] ). There are different circumstances under which the grievance procedure is deemed not to have been available to an inmate plaintiff. *Hemphill,* 380 F.3d at 687-88. For example, courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." *Hargrove v. Riley,* 04-CV-4587, 2007 WL 389003, at *8 (E.D.N.Y. Jan.31, 2007) (internal citations omitted). When testing the availability of administrative remedies in the face of claims that undue

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available." *Hemphill,* 380F.3d at 688 (quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at \*8.

Here, after carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that administrative remedies were "available" to Plaintiff during the time in question. The Court makes this finding for the following four reasons.

First, in his sworn Complaint (which has the force and effect of an affidavit), Plaintiff stated, "Yes," in response to the question, "Is there a prisoner grievance procedure at this facility ." (Dkt. No. 1, ¶ 4.a.) [FN23] Second, both Darin Williams (the corrections officer in charge of the special housing unit during the relevant time period) and Sally Reams (the Inmate grievance program supervisor during the relevant time period) testified credibly, at the exhaustion hearing, that there was a working grievance program at Great Meadow Correctional Facility during the time in question. (Hearing Tr. at 10, 12, 14-21, 40-54.) Third, Plaintiff testified, at the exhaustion hearing that, during this approximate time period (the August to November of 2000), he filed at least three other grievances Great Meadow Correctional Facility, to which he received responses from the inmate grievance clerk, the Superintendent, and CORC. (*Id.* at 154, 157-58, 169-70; *see also* Hearing Exs. D-4, D-5, P-8, P-13, P-14.) [FN24] Fourth, the Court finds the relevant portions of Plaintiff's hearing testimony regarding the grievance at issue in this action to be incredible due to various omissions and inconsistencies in that testimony, and his demeanor during the hearing. (*Id.* at 127-34.) [FN25]

FN23. The Court notes that, in his Complaint, Plaintiff also swore that his "grievance was denied." (Dkt. No. 1, ¶ 4.b.ii.) However, during the exhaustion hearing, Plaintiff testified that he never received a response to his grievance from any member of DOCS.

FN24. In addition, the documentary evidence adduced at the hearing establishes that, in actuality, Plaintiff filed ten other grievances during this time period (and several appeals from the denials of those grievances). The first of these grievances (Grievance Number GM-30651-00), filed on August 25, 2000, regarded Plaintiff's request for medications. (Hearing Exs. D-4, D-5.) The second of these grievances (Grievance Number GM-30691-00), filed on September 1, 2000, regarded Plaintiff's request for copies. (Hearing Ex. D-4.) The third of these grievances (Grievance Number GM-30729-00), filed on September 11, 2000, regarded the use of full restrains against Plaintiff. (*Id.; see also* Hearing Ex. P-14.) The fourth of these grievances, filed on October 19, 2000 (Grievance Number GM-30901-00), regarded Plaintiff's request for the repair of his cell sink. (Hearing Exs. D-4, D-5.) The fifth of these grievances (Grievance Number GM-30901-00), also filed on October 19, 2000, regarded Plaintiff's request for the clean up of his cell. (Hearing Ex. D-4.) The sixth of these grievances (Grievance Number GM-31040-00), filed on November 17, 2000, regarded the review of records. (*Id.*) The seventh of these grievances (Grievance Number GM-31041-00), also filed on November 17, 2000, regarded Plaintiff's request for medical attention. (*Id.;* see also Hearing Ex. P-13) The eighth of these grievances (Grievance Number GM-31048-00), filed on November 20, 2000, regarded the rotation of books. (Hearing Ex. D-14) The ninth of these grievances (Grievance Number GM-31040-00), filed on November 27, 2000, regarded the review of records (and was consolidated with his earlier grievance on the same subject). (*Id.*) The tenth of these grievances (Grievance Number GM-31070-00), filed on November 27, 2000, regarded Plaintiff's eyeglasses. (*Id.*)

FN25. For example, Plaintiff was unable to identify the corrections officers to whom he handed his grievance and appeals for mailing. (*Id.* at 127-34.) Moreover, Plaintiff did not convincingly explain why the grievance and appeals at issue in this action did not make it through the mailing process, while his numerous other grievances and appeals did make it through

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

the mailing process. (*Id.* at 154-171.) In addition, Plaintiff acknowledged that it was his belief, during this time period, that an inmate was not required to exhaust his administrative remedies in matters involving the use of excessive force; yet, according to Plaintiff, he decided to exhaust his administrative remedies on his excessive force claim anyway. (*Id.* at 148-49.)

**B. Estoppel**

After carefully considering the evidence submitted at the hearing in this action on March 1, 2010, the Court finds that Defendants did not forfeit the affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that inhibited Plaintiff's exhaustion of remedies. For example, Defendants' Answer timely asserted this affirmative defense. (Dkt. No. 35, ¶ 17.) Moreover, Plaintiff failed to offer any credible evidence at the hearing that *Defendant* s in any way interfered with Plaintiff's ability to file grievances during the time in question. (Hearing Tr. at 127-34, 157-58, 169-70.) Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.[FN26]

FN26. *See Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir.2006) (holding that defendants were not estopped from asserting the affirmative defense of non-exhaustion where the conduct plaintiff alleged kept him from filing a grievance-that he was not given the manual on how to grieve-was not attributable to the defendants and plaintiff "point[ed] to no affirmative act by prison officials that would have prevented him from pursuing administrative remedies"); *Murray v. Palmer,* 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("I have found no evidence sufficient to create a genuine issue of triable fact on the issue of whether Defendants, *through their own actions,* have inhibited Plaintiff exhaustion of remedies so as to estop one or more Defendants from raising Plaintiff's failure to exhaust as a defense.")

[emphasis in original]; *Shaheen v. McIntyre,* 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (McAvoy, J. adopting Report-Recommendation of Lowe, M.J.) (finding defendants not estopped from raising Plaintiff's non-exhaustion as a defense based on plaintiff's allegation that [he] was inhibited (through non-responsiveness) by [ ] unnamed officials at Coxsackie C.F.'s Inmate Grievance Program (or perhaps the Grievance Review Committee), and Coxsackie C.F. Deputy Superintendent of Security Graham" because plaintiff's complaint and "opposition papers ... fail to contain any evidence placing blame on Defendants for the (alleged) failure to address his grievances and complaint letters"); *Smith v. Woods,* 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Hurd, J. adopting Report-Recommendation of Lowe, M.J.) (finding that defendants are not estopped from relying on the defense of non-exhaustion because "no evidence (or even an argument) exists that any Defendant ... inhibit[ed] Plaintiff's exhaustion of remedies; Plaintiff merely argues that a non-party to this action (the IGRC Supervisor) advised him that his allegedly defective bunk bed was not a grievable matter."); *cf. Warren v. Purcell,* 03-CV-8736, 2004 WL 1970642, at *6 (S.D.N.Y. Sept.3, 2004) (finding that conflicting statements [offered by a non-party]-that the prisoner needed to refile [his grievance] and that the prisoner should await the results of DOCS's investigation-estopped the defendants from relying on the defense on non-exhaustion, or "[a]lternatively, ... provided ... a 'special circumstance' under which the plaintiff's failure to pursue the appellate procedures specified in the IGP was amply justified."); *Brown v. Koenigsmann,* 01-CV-10013, 2005 WL 1925649, at *1-2 (S.D.N.Y. Aug.10, 2005) ("Plaintiff does not assert that Dr. Koeingsmann personally was responsible for [the failure of anyone from the Inmate Grievance Program to address plaintiff's appeal]. [However,] *Ziemba [v. Wezner,* 366 F.3d 161 (2d Cir.2004)] does not require a showing that Dr. Koenigsmann is personally responsible for plaintiff's failure to complete exhaustion [in order for Dr. Koenigsmann to be estopped from asserting the affirmative defense of failure to exhaust

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

administrative remedies], as long as someone employed by DOCS is. If that reading of Ziemba is incorrect, however, ... then the circumstances here must be regarded as special, and as justifying the incompleteness of exhaustion, since a decision by CORC is hardly something plaintiff could have accomplished on his own.").

**C. Special Circumstances**

**\*6** There are a variety of special circumstances that may excuse a prisoner's failure to exhaust his available administrative remedies, including (but not limited to) the following:

(1) The facility's "failure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance appeal process unavailable to him." *Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "[s]uch facts support a finding that defendants are estopped from relying on the exhaustion defense, as well as "special circumstances" excusing plaintiff's failure to exhaust");

(2) Other individuals' "threats [to the plaintiff] of physical retaliation and reasonable misinterpretation of the statutory requirements of the appeals process." *Clarke v. Thornton,* 515 F.Supp.2d 435, 439 (S.D.N.Y.2007) (noting also that "[a] correctional facility's failure to make forms or administrative opinions "available" to the prisoner does not relieve the inmate from this burden."); and

(3) When plaintiff tries "to exhaust prison grievance procedures[, and] although each of his efforts, alone, may not have fully complied, together his efforts sufficiently informed prison officials of his grievance and led to a thorough investigation of the grievance." *Hairston v. LaMarche,* 05-CV-6642, 2006 WL 2309592, at *8 (S.D.N.Y. Aug.10, 2006).

After carefully considering the issue, the Court finds that there exists, in this action, no "special circumstances"

justifying Plaintiff's failure to comply with the administrative procedural requirements. Construed with the utmost of special leniency, Plaintiff's hearing testimony, and his counsel's cross-examination of Defendants' witnesses, raise the specter of two excuses for not having exhausted his available administrative remedies before he (allegedly) mailed his Complaint in this action on August 14, 2003:(1) that exhaustion was not possible because of the administrative procedures that DOCS has implemented regarding inmate grievances; and/or (2) that an unspecified number of unidentified corrections officers (who are not Defendants in this action) somehow interfered with the delivery of his grievance and appeals. For example, Plaintiff testified at the exhaustion hearing that he handed his grievance and appeals to various corrections officers making rounds where he was being housed, and that, if his grievance and/or appeals were never received, it must have been because his letters were not properly delivered. (Hearing Tr. at 126-36.)

With regard to these excuses, the Court finds that, while these excuses could constitute special circumstances justifying an inmate's failure to exhaust his available administrative remedies in certain situations,[FN27] these excuses are not available to Plaintiff in the current action because, as stated in Part II.A. of this Decision and Order, the credible testimony before the Court indicates that Plaintiff did not hand his grievance and appeals to various corrections officers with regard to the claims in question. *See, supra,* Part II.A. of this Decision and Order.[FN28]

FN27. *See, e.g., Sandlin v. Poole,* 575 F.Supp.2d 484, 488 (W.D.N.Y.2008) (noting that "refusal to accept or forward plaintiff's appeals ... effectively render[s] the grievance appeal process unavailable to him").

FN28. The Court notes that, even if Plaintiff did (as he testified) hand to a corrections officer for mailing a letter to the Superintendent on September 13, 2000, appealing from the IGRC's failure to decide his grievance of August 22, 2000, within nine working days (i.e., by September 5, 2000), it appears that such an appeal would have been filed two days too late under DOCS Directive 4040, which requires that appeal to be filed within four working days of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 1235591 (N.D.N.Y.)
(Cite as: 2010 WL 1235591 (N.D.N.Y.))

> IGRC's failure to decide his grievance (i.e., by September 11, 2000). (*See* Hearing Tr. 127-34; Hearing Ex. P-1, at 5-7 [attaching ¶¶ V.A, V.B. of DOCS Directive 4040, dated 6/8/98].)

**\*7** For all these reasons, the Court finds that Plaintiff's proffered excuse does not constitute a special circumstance justifying his failure to exhaust his available administrative remedies before filing this action.

**ACCORDINGLY,** it is

**ORDERED** that Plaintiff's Second Amended Complaint (Dkt. No. 10) is ***DISMISSED* in its entirety without prejudice** for failure to exhaust his available administrative remedies before filing this action, pursuant to the PLRA; and it is further

**ORDERED** that the Clerk of the Court shall enter judgment for Defendants and close the file in this action.

N.D.N.Y.,2010.
Murray v. Palmer
Slip Copy, 2010 WL 1235591 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

**H**
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.
ELMA RT and NAGYKOROS CANNING FACTORY
RT, Plaintiffs,
v.
LANDESMANN INTERNATIONAL MARKETING
CORPORATION, Landesmann International Marketing
Services GmbH, Mark Landesmann, individually, and
Tamas Batizi, individually, Defendants.
**No. 98 CIV. 3662 LMM.**

March 22, 2000.

MEMORANDUM AND ORDER

MCKENNA, D.J.

**\*1** Plaintiffs Elma RT ("Elma") and Nagykoros Canning
Factory RT ("Nagykoros"), both Hungarian companies,
brought this suit against defendants Landesmann
International Marketing Corporation ("LIMC"), Mark
Landesmann ("Landesmann"), Landesmann International
Marketing Services GmbH ("LIMS") and Tamas Batizi
("Batizi"), based on contracts for the sale of apple juice
concentrate by plaintiffs to defendants. LIMC is a
Delaware corporation with its principal place of business
in New York, and Landesmann is LIMC's sole owner and
CEO. LIMS is an Austrian corporation with a place of
business in the United States, and Batizi is LIMS's
managing director. The citizenship of Landesmann and
Batizi is not specifically alleged, but the former is alleged
to have been born in Austria but to reside in the United
States, while the latter is alleged to be located in Austria.

Plaintiffs assert both federal question and diversity subject
matter jurisdiction. Federal question subject matter
jurisdiction is supplied by a claim under the Racketeer and
Corrupt Organizations Act ("RICO"). On the face of the

amended complaint, however, diversity subject matter
jurisdiction is not available, since both of the plaintiffs are
alien corporations and at least one of the defendants,
LIMS, is an alien as well. *Lloyds Bank PLC v. Norkin,* 817
F.Supp. 414, 417 (S.D.N.Y.1993) (collecting cases).

In their amended complaint, plaintiffs allege that LIMC
committed breach of contract, fraud, and conversion.
Plaintiff Nagykoros also seeks consequential damages
against LIMC. In addition, plaintiffs jointly claim that
defendants violated RICO, 18 U.S.C. § 1962(c).

Defendants move to dismiss plaintiffs' amended complaint
on three grounds. First, they argue it is actually a
supplemental complaint, which was served without leave
of the court, in violation of Fed.R.Civ.P. 15(d) ("Rule
15(d)"). Second, they claim the RICO and conversion
counts fail to state a claim under Fed.R.Civ.P. 12(b)(6)
("Rule 12(b)(6)"). Finally, they argue that the RICO count
fails to plead fraud with particularity under Fed.R.Civ.P.
9(b) ("Rule 9(b)"). For the reasons set forth below, the
Court denies defendants' motion to dismiss the complaint
under Rule 15(d), but grants the motion to dismiss the
conversion and RICO claims under Rule 12(b)(6).
Because the RICO count is dismissed, the Court need not
address whether that claim is pleaded with sufficient
particularity under Rule 9(b).

*I. Background*

A. Plaintiff Elma

The following background is based upon plaintiffs'
amended complaint, which is based partially on
information and belief.

On November 14, 1997, Landesmann entered into a
contract with Elma whereby Elma agreed to provide
LIMC with thirty containers (approximately six hundred
tons) of apple juice concentrate. Landesmann agreed to
pay fifty percent of the contract price upon dispatch, and
the remaining fifty percent within thirty-five days of the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

Bill of Lading.

**\*2** Pursuant to the contract, Elma delivered thirty containers of concentrate to LIMC, which accepted them without objection. LIMC made the initial payment for one-half the total amount owed. However, LIMC made no further payments to Elma. Instead, on February 9, 1998 (approximately the day on which the remaining payments were due) Landesmann informed Elma that LIMC was rejecting all thirty containers on quality grounds. Landesmann further demanded replacement of the concentrate and immediate reimbursement for all payments already made by LIMC, including shipping costs.

In response, Elma directed LIMC not to dispose of the concentrate. In addition, Elma requested: 1) an independent laboratory be named for testing of the concentrate, with costs to be split equally between ELMA and LIMC; 2) proof that the concentrate was handled properly in transit and subsequent storage; and 3) that LIMC disclose the location of the concentrate.

Landesmann, however, agreed to permit inspection only under the following conditions: 1) LIMC retain the sole right to name any testing facility; 2) Elma bear sole responsibility for payment of the testing costs; 3) the testing facility be allowed to disclose the results only to LIMC; and 4) the identity and location of the inventory not be disclosed to Elma. Elma objected to these demands, but agreed to replace the concentrate. Landesmann notified Elma by letter that he would accept replacement only if it was tendered in the New York/New Jersey area, instead of in Hungary, the location specified in the contract. In addition, Landesmann demanded full reimbursement for all expenses and costs, including financing. Finally, he demanded that Elma arrange, test, and send a substantial portion of the replacement cargo within three business days of receiving Landesmann's letter. When Elma refused these demands, Landesmann resold the concentrate.

B. Plaintiff Nagykoros

The facts alleged by Nagykoros are similar to those alleged by Elma. In November of 1997, LIMC entered into three separate contracts with Nagykoros whereby Nagykoros agreed to provide LIMC with fifty containers of apple juice concentrate. Fifty percent of the contract price was to be paid after dispatch and transfer of possession, and the remaining fifty percent was to be paid within forty-five days after arrival. Pursuant to the agreement, Nagykoros delivered the fifty containers to LIMC, which received them without objection. LIMC then paid for one-half of the amount due on the first ten containers delivered. On February 4, 1998, however, Landesmann notified Nagykoros that LIMC was rejecting all fifty containers of concentrate on quality grounds.

Nagykoros directed Landesmann not to dispose of the concentrate, and informed him that, under Hungarian law, Nagykoros would suffer severe consequential damages if the contract was not fulfilled. Nagykoros also requested information to enable the stock of concentrate to be properly examined, suggested a neutral quality control agency for testing, and offered to pay for the testing if Landesmann's claim proved justified. Landesmann refused to permit inspection and testing of the apple juice concentrate unless: 1) the quality control agency be ordered that it was working on defendants' behalf; 2) Nagykoros prepay the control agency; and 3) the control agency keep the location of the inventory confidential.

**\*3** After weeks of inconclusive attempts between the parties to negotiate, Nagykoros informed Landesmann that if the parties did not reach a settlement of some kind, the Hungarian Ministry of Agriculture would fine Nagykoros approximately $150,000, and Nagykoros would possibly default on bank loans. Landesmann, however, proceeded to resell the concentrate.

*II. Discussion*

A. Rule 15(d)

Defendants argue that plaintiffs' amended complaint alleges events which occurred after the original complaint was filed, and therefore is actually a supplemental complaint which, to be filed, requires leave of the Court under Rule 15(d). While plaintiffs dispute that theirs is a

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

supplemental complaint, the Court need not decide which party is correct. Even assuming the complaint is properly labeled "supplemental," there is no compelling reason why this mislabeling should be fatal. Absent undue delay, bad faith, dilatory tactics, undue prejudice in being served with the proposed pleading, or futility, motions to serve a supplemental pleading will be freely granted. See *Forman v. Davis,* 371 U.S. 178, 182 (1962). The fact that a complaint is improperly labeled as "amended" instead of "supplemental" should not prevent the Court from considering the merits of the pleading. See *Sorel v. G & U, Inc.,* 103 F.R.D. 69, 73 (S.D.N.Y.1984). Thus, plaintiffs' motion to dismiss on this ground is denied.

B. Rule 12(b)(6) Standards

On a motion to dismiss under Rule 12(b)(6), a court must accept the truth of and draw all reasonable inferences from the well-pleaded factual allegations. *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir.1993). The Court's task is to "assess the legal feasibility of the complaint [and] not ... assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980); see also *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 124 (2d Cir.1991). A complaint should only be dismissed "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." ' *Valmonte v. Bane,* 18 F.3d 992, 998 (2d Cir.1994)(quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

C. Conversion

Plaintiffs allege that defendants committed conversion by refusing to pay the balance due for the concentrate, not accepting replacement, not allowing return of the rejected concentrate, and proceeding to re-sell the concentrate without plaintiffs' consent. Defendants in turn move under Rule 12(b)(6) to dismiss plaintiffs' conversion claim, arguing that it merely reasserts their breach of contract claim. This motion is granted.

Conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to

the exclusion of the owner's rights. *Vigilant Ins. Co. of America v. Housing Auth. of El Paso, Texas,* 87 N.Y.2d 36, 44 (1995). Under New York law, it is well established that an action for conversion cannot be validly maintained where a plaintiff seeks damages merely for breach of contract. See *Fraser v. Doubleday & Co.,* 587 F.Supp. 1284, 1288 (S.D.N.Y.1984). To sustain a conversion claim, a plaintiff must allege acts that constitute unlawful or wrongful behavior separate from a violation of contractual rights. See *id.; see also In re Chateaugay Corp.,* 10 F.3d 944, 958 (2d Cir.1993) (holding that a tort claim will not arise where plaintiff is essentially seeking enforcement of the bargain); *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 316 (1995) (holding that a defendant may be liable in tort where it breaches a duty of reasonable care distinct from its contractual obligations, and where it engages in tortious conduct separate and apart from its failure to fulfill its contractual obligations).

**4** To determine whether an action for conversion (or any other tort) exists in addition to an action for breach of contract, a court must first ask whether "the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent." W. Page Keeton, et al., *Prosser & Keeton on the Law of Torts* § 92 (5th ed.1984). In other words, the Court must determine whether defendants had a duty separate from any duties imposed by defendants' contractual obligations. If no such duty exists, then contract is the only theory upon which liability can rest. *Id.*

In the present case, defendants' duty to return the concentrate, accept replacement, and refrain from resale exists solely because of the contract between the parties. Outside the contract, there was no pre-existing obligation imposed by law which required defendants to honor plaintiffs' requests. This is apparent by the fact that if plaintiffs are successful on their breach of contract claim, they will be fully compensated for the balance due on the concentrate delivered to defendants, and therefore, no additional damages would be available to them under a theory of conversion.[FN1] See *Fraser,* 587 F.Supp. at 1288. Plaintiffs' argument that defendants' conduct amounted to conversion because it violated the Uniform Commercial Code ("U.C.C.") does not sway the Court otherwise. Indeed, this argument actually lends credence to the conclusion that any remedies they may be owed exist

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

under a breach of contract claim alone, since the U.C.C. governs contract, not tort, disputes.

> FN1. Punitive damages may be awarded for conversion, but the defendants must allege that defendants acted with malice or reckless disregard of plaintiffs' rights. *See Ashare v. Mirkin, Barre, Saltzstein & Gordon,* 435 N.Y.S.2d 438, 441 (Sup.Ct.1980), *modified on appeal to delete punitive damages,* 441 N.Y.S.2d 408 (2d Dep't.1981), *aff'd,* 54 N.Y.2d 891 (1981). Plaintiffs have failed to allege malice or reckless disregard of their rights.

For the reasons stated above, plaintiffs' conversion claim is dismissed.

D. RICO

Plaintiffs also allege that defendants' conduct violated RICO. To state a claim for damages under 18 U.S.C. § 1962(c), a complaint must specifically allege:

(1) the existence of an enterprise which affects interstate or foreign commerce;

(2) that the defendants were "employed by" or "associated with" the enterprise;

(3) that the defendants participated in the conduct of the enterprise's affairs; and

(4) that the participation was through a pattern of racketeering activity.

*Clifford v. Hughson,* 992 F.Supp. 661, 665 (S.D.N.Y.1998) (quoting *Town of West Hartford v. Operation Rescue,* 915 F.2d 92, 100 (2d Cir.1990)).

Defendants argue that plaintiffs have failed to properly allege the existence of an "enterprise." Additionally, defendants argue that the amended complaint fails to allege the predicate acts [FN2] and "continuity" needed to show a "pattern of racketeering activity." They therefore move to dismiss plaintiffs' RICO claim under Rule 12(b)(6). Since the Court finds that plaintiffs have failed to allege "continuity," the RICO claim is dismissed.

> FN2. The predicate acts alleged in this case are mail and wire fraud.

Plaintiffs must allege "continuity" as a prerequisite for the existence of a "pattern of racketeering activity." *See H.J Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 230 (1989). In other words, the predicate acts must be related, and must constitute or threaten long-term criminal activity. *Id.* Such continuity can be either "closed" or "open-ended." *Id.* Plaintiffs apparently concede that closed-ended continuity is not present in this case. [FN3] Therefore, the issue before the Court is whether the requirements of open-ended continuity have been satisfied.

> FN3. Closed-ended continuity is established by proving a series of related predicate acts extending over a substantial period of time. *H.J. Inc.,* 492 U.S. at 230 (holding that predicate acts extending over a few weeks or months and threatening no future criminal conduct did not satisfy the requirement of continuity). The time period involved here, four months, clearly cannot be called "substantial."

**5** Open-ended continuity requires the threat of long-term racketeering activity. *Id.* This threat is indicated when the predicate acts themselves involve a distinct threat of such future racketeering activity, are part of the regular way of doing business for an ongoing entity (be it a criminal association or legitimate business), or are a regular means of conducting or participating in an ongoing RICO enterprise. *Id.* Ordinarily, however, courts will not find a threat of future racketeering in "cases concerning alleged racketeering activity in furtherance of endeavors that are not inherently unlawful, such as frauds in the sale of property ...." *United States v. Aulicino,* 44 F.3d 1102, 1111 (2d Cir.1995).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)
(Cite as: 2000 WL 297197 (S.D.N.Y.))

In the present case, plaintiffs have inadequately pleaded open-ended continuity. In conclusory fashion, they allege only that "the fraudulent activities of the Enterprise continue to this day." (Compl.¶ 250). However, they offer no specificity as to what the fraudulent activities involve. Moreover, they have not claimed that the alleged "enterprise" depends on the commission of fraudulent acts "in the conduct of its day to day affairs," a factor courts have often looked to in determining whether fraudulent activity constitutes an entity's "regular way of doing business." *See, e.g., Mead v. Schaub,* 757 F.Supp. 319, 323 (S.D.N.Y.1991). Furthermore, plaintiffs fail to allege that defendants pursued an "inherently unlawful" goal. Under the facts alleged in the complaint, the only endeavor that could be attributed to defendants' actions is the desire to resell goods for a profit, which is the lawful goal of nearly every business. As noted above, unless an "inherently unlawful" pursuit is involved, continuity is not ordinarily inferred.

For all the above reasons, the Court dismisses plaintiffs' RICO claim. [FN4]

> **FN4.** Because the Court grants defendants' motion to dismiss the RICO claim for lack of "continuity," it is unnecessary to decide whether plaintiffs have alleged the existence of an "enterprise" distinct from defendants or the predicate acts needed to establish a "pattern of racketeering activity." It is also unnecessary to decide whether the alleged predicate acts were pleaded with sufficient particularity under Rule 9(b). While the Court declines to opine as to the validity of these arguments, it appears likely that, in addition to the complaint's shortcomings in alleging continuity, it is also deficient in the other areas challenged by defendants.

### III. Conclusion

For the foregoing reasons, defendants' motion to dismiss the amended complaint pursuant to Rule 15(d) is denied. However, defendants motion to dismiss plaintiffs' conversion and RICO claims under Rule 12(b)(6) is granted.

With the dismissal of the RICO claim, the Court does not have federal subject matter jurisdiction, and, for the reason set forth above, it does not have diversity subject matter jurisdiction. The Court declines, pursuant to 28 U.S.C. § 1367(c)(3), to exercise supplemental jurisdiction over plaintiffs' remaining claims. Accordingly, the amended complaint is dismissed.

The Court grants plaintiffs leave to file a second amended complaint within 30 days of the date hereof.

SO ORDERED

S.D.N.Y.,2000.
Elma RT v. Landesmann Intern. Marketing Corp.
Not Reported in F.Supp.2d, 2000 WL 297197 (S.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.