IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

EVERTON BAILEY,

                    Plaintiff,

                                        Civ. Action No.
                                        9:09-CV-0742 (GLS/DEP)

        v.

M. FORTIER,

                    Defendant.

_____

<u>APPEARANCES</u>:                    <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

HANCOCK ESTABROOK LLP          MICHAEL J. SCIOTTI, ESQ.
1500 AXA Tower I               ROBERT THORPE, ESQ.
Syracuse, NY 13221

<u>FOR DEFENDANT</u>:

HON. RICHARD S. HARTUNIAN      CHARLES E. ROBERTS, ESQ.
United States Attorney         Assistant U.S. Attorney
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261-7168


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Everton Bailey, a federal prison inmate, has commenced this *Bivens*[1] action against defendant Michelle Fortier, a corrections officer stationed at the prison facility in which Bailey was confined at the relevant times, alleging deprivation of his civil rights. Bailey's claims are based upon Fortier's alleged failure to protect him from an assault by a cellmate, despite having registered prior complaints expressing fear for his safety.

Currently at the forefront of the action is the threshold question of whether Bailey, who admits that he did not file a grievance following the procedures in place at Bureau of Prisons ("BOP") facilities, should be excused from the requirement of exhausting administrative remedies before commencing suit due to the alleged refusal of prison officials to provide him with the forms necessary to file a grievance. Because I find, based upon an evidentiary hearing conducted, that Bailey was not prevented by the actions of prison officials from filing a grievance regarding his claim against Fortier, and that he has offered no special circumstances providing a basis to excuse his failure to exhaust administrative remedies, I recommend that his complaint be dismissed on

---

[1]      *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S. Ct. 1999 (1971).

2

this procedural basis, without addressing its merits.

I.     BACKGROUND

Bailey is a federal prison inmate currently being held in the custody of the BOP as a result of a 2007 criminal conviction entered in the United States District Court for the Eastern District of Pennsylvania. *See generally* Complaint (Dkt. No. 1); *see also* VanWeelden Decl. (Dkt. No. 10-4) ¶ 5; June 20, 2012 Hearing Transcript (Dkt. No. 44) at p. 84.[2] While he is presently housed in another BOP facility, at times relevant to this litigation Bailey was designated by the BOP to the Ray Brook Federal Correctional Institution ("FCI Ray Brook"), located in Ray Brook, New York. *Id.*

On the morning of February 23, 2009, while housed in a six-person cell in the Mohawk Housing Unit at FCI Ray Brook, Bailey was confronted and physically assaulted by one of his cellmates after being accused of stealing that inmate's prayer oil. Complaint (Dkt. No. 1) ¶¶ 8-9; *see also* VanWeelden Decl. (Dkt. No. 10-4) Exh. D. Bailey reported the incident to Fortier, and requested that he be moved to another cell. Complaint (Dkt. No. 1) ¶ 10. That request was denied, and Bailey was directed by Fortier

---

[2]     The June 20, 2012 Hearing Transcript (Dkt. No. 44) will hereinafter be cited as "Tr. ___".

3

to return to his cell in light of an impending inmate count. *Id*. at ¶ 11.

Following the inmate count, Bailey again was accosted by the same inmate, who on this occasion threw hot oil from a ceramic mug onto his face.[3]  Complaint (Dkt. No. 1) ¶ 13; VanWeelden Decl. (Dkt. No. 10-4) Exh. D; Tr. 100, 145.  Bailey suffered second degree burns to his face resulting in his being hospitalized at an outside medical facility for a period of fourteen days.  Complaint (Dkt. No. 1) ¶¶ 13-14; Tr. 32, 84-85.  Upon his return to FCI Ray Brook, Bailey was placed in a special housing unit ("SHU") cell, where he remained until he was transferred to another BOP facility.  Tr. 59-60, 85.

The BOP has established an Administrative Remedy Program ("ARP"), comprised of a four-step administrative process through which inmates can seek formal internal review of any complaint regarding any aspect of their imprisonment.  Tr. 10; 28 C.F.R. § 542.10 *et seq.*; *see also* *Macias v. Zenk*, 495 F.3d 37, 42 (2d Cir. 2007).  In accordance with the established ARP protocol, an inmate must first attempt informal resolution of his or her complaint by presenting the issue informally to staff, and staff must attempt to resolve the issue.  28 C.F.R. § 542.13(a); *see also*

---

[3]      According to Bailey, there were no corrections officers present in his cell unit at the time of the assault.  Complaint (Dkt. No. 1) ¶ 13.

*Johnson v. Testman*, 380 F.3d 691, 693 (2d Cir. 2004). This informal, initial procedure typically begins with the filing of a "cop-out," which can be submitted either on a BP-8 form available to inmates through several sources, including their assigned counselors, or on paper of any other description. Tr. 10, 22, 27, 66-67, 129, 142.

If the complaint cannot be resolved informally, the inmate may next submit a formal written Administrative Remedy Request ("ARR") to the warden of the facility, utilizing a BP-9 form, within twenty calendar days of the event that generated the inmate's complaint.[4] Tr. 22, 32, 44; 28 C.F.R. § 542.14(a); *see also Johnson*, 380 F.3d at 693. That twenty-day period, however, can be extended in appropriate circumstances.[5] Tr. 33, 54, 144. If that formal request is denied, the inmate may next appeal the matter to the appropriate BOP Regional Director, utilizing a BP-10 form, within twenty calendar days of the date the grievance is denied by the facility

---

[4] Plaintiff was aware of the twenty-day limitation for filing a BP-9 form to initiate the formal grievance process. Tr. 103.

[5] Here, the record demonstrates that in light of his circumstances, including the fourteen-day period of hospitalization following the incident, Bailey almost certainly would have been granted relief from that requirement had such a request been made. *See* Tr. 43, 144. I note, parenthetically, that the handbook provided to inmates at FCI Ray Brook does not address the possibility of requesting an extension of the twenty-day time limit for filing a BP-9. *See* Tr. 34, 43.

5

warden.  Tr. 22; 28 C.F.R. § 542.15(a); *see also Johnson*, 380 F.3d at 693.  An unfavorable decision from the Regional Director can then be appealed to the General Counsel's office, utilizing a BP-11 form, within twenty calendar days of the date of the Regional Director's response.  Tr. 22; 28 C.F.R. § 542.15(a).

Despite the existence of the ARP, Bailey did not avail himself of that process by filing a grievance regarding the assault or the defendant's alleged failure to protect him from it.  Tr. 101-02, 106.  Bailey claims that he requested the appropriate forms for commencing the grievance process from several prison workers, including Hawley Snyder, Barbara Darrah, and the warden at FCI Ray Brook.  Tr. 86-88, 91, 93-95, 107-09. Employees at FCI Ray Brook, however, uniformly testified that Bailey never requested the appropriate grievance forms from them.  *See* Tr. 72, 131, 146-47, 153, 155, 168; *see also* Tr. 49 (Robin Van Weelden); 161 (Jean Marie Diehl); 166 (Michelle Gonyea).  I credit the testimony of defendant's witnesses and find that Bailey failed to ask his corrections counselor, or any other BOP employee at FCI Ray Brook, for the necessary forms to commence the grievance process.

The record also reflects that Bailey had abundant opportunity to

secure the necessary grievance forms.  In February and March of 2009, he was assigned a unit team that included Barbara Darrah, his unit manager; Michelle Gonyea, a case worker; Hawley Snyder, his assigned corrections counselor; and one other corrections counselor.[6]  Tr. 46, 86, 140-41.  Members of Bailey's unit team, particularly his corrections counselor, were in frequent contact with him.  *See, e.g.,* Tr. 126, 129-30, 140-41, 165.

Various other BOP officials were also in regular contact with Bailey, making periodic rounds of the FCI Ray Brook SHU.  Tr. 35.  For example, at the times relevant to this litigation, the facility's warden typically visited the SHU every Wednesday morning, normally accompanied by Robin Van Weelden, who in February 2009 served as a legal assistant, as well as one or two associate wardens, a corrections captain, and unit team members.  Tr. 35, 55.  When making those rounds the group would proceed from cell to cell, knocking on doors and asking whether an inmate in a particular cell wished to voice any needs.  Tr. 57.  In addition, Barbara Darrah, as a unit manager, was required to visit inmates in the SHU twice weekly, although she testified that she was in that portion of the facility

---

[6] Jean Marie Diehl took over as plaintiff's correction counselor in or about September 2009, shortly before Snyder's retirement from the BOP.  Tr. 140, 163.

"pretty much daily." Tr. 126. When visiting the SHU, Darrah generally carried with her a folder of various forms, including BP-8, BP-9, BP-10, BP-11 and cop-out forms, earning her the nickname "the form lady." Tr. 70-71, 120, 124-27, 131. Like the warden and the warden's group, when visiting the SHU facility Darrah normally would proceed from cell-to-cell. Tr. 128. Similarly Michelle Gonyea, as plaintiff's case manager during February and March of 2009, was required to visit the SHU at least once weekly. Tr. 165.

Despite all of those visits and requests as to whether he needed anything, Bailey did not ask any of those individuals for the forms necessary to grieve Fortier's alleged failure to protect him from harm. Tr. 161-62, 166, 49-50, 72, 132, 144, 154-55, 161, 166.

As previously indicated, plaintiff was absent from FCI Ray Brook receiving outside treatment for his injuries during the fourteen-day period immediately following the inmate assault. In accordance with FCI Ray Brook policy requiring visits by prison officials to any inmate hospitalized for more than five days, Darrah, as plaintiff's unit manager, visited him in or about March of 2009, while he was a patient at the Adirondack Medical Center in Saranac Lake, in order to insure that his needs were being met.

Tr. 133.  When asked on that occasion whether he needed anything,

Bailey replied, "No."[7]  *Id.*

## II.    PROCEDURAL HISTORY

Bailey commenced this action on June 29, 2009.  Dkt. No. 1.  His

complaint identifies Corrections Officer M. Fortier as the sole named

defendant, and alleges that she violated his constitutional rights by failing

to protect him from foreseeable harm.  *Id*.

On January 8, 2010, prior to answering, Fortier moved to dismiss

Bailey's complaint for failure to state a claim upon which relief may be

granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

or, alternatively, for summary judgment pursuant to Rule 56.  Dkt. No. 10.

The sole basis for Fortier's motion was her contention that Bailey's

complaint is subject to dismissal based upon his failure to exhaust

available administrative remedies before commencing suit, as required

under 42 U.S.C. § 1997e(a).  That motion resulted in my issuance of a

report on August 30, 2010, recommending that the motion be denied,

based upon the existence of genuine disputes of material fact to be

---

[8]    During the hearing Bailey testified that he did not recall Darrah visiting him.  *See* Tr. 114.  Once again, I credit the testimony of Darrah over that of the Bailey with respect to this issue.

resolved before addressing whether a proper basis for excusing the governing exhaustion requirement had been demonstrated.  Dkt. No. 19. That recommendation was adopted by Chief District Judge Gary L. Sharpe on October 12, 2010.  Dkt. No. 21.

Following the issuance and acceptance of my report and recommendation, the parties were afforded the opportunity to engage in discovery, and a scheduling order was entered requiring, *inter alia*, that any additional dispositive motions be filed on or before October 3, 2011. *See* Dkt. No. 23.  All deadlines under that scheduling order have passed, without the filing of any additional motions, and the case is now trial-ready.  In light of the existence of a threshold procedural issue regarding exhaustion, the matter was referred to me for the purpose of conducting an evidentiary hearing, pursuant to *Messa v. Goord*, 652 F.3d 305 (2d Cir. 2011), in order to develop the record concerning Bailey's efforts to satisfy his exhaustion requirement.  *See* Text Entry 11/02/11.  That hearing was conducted on June 20, 2012, *see* Text Entry 6/20/12, and, following the close of the hearing, decision was reserved pending briefing by the parties.[8,9]

---

[8]      The hearing was conducted by video conference, with Bailey participating and testifying from the Kentucky federal correctional facility in which he is currently

III.    <u>DISCUSSION</u>

A.    <u>Governing Legal Principles</u>

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which imposes several restrictions on the ability of prisoners to maintain federal civil rights actions, expressly requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive

---

being held, pursuant to Rule 43(a) of the Federal Rules of Civil Procedure.  *See Rivera v. Santirocco*, 814 F.2d 859, 862 (2d Cir. 1987).  At the outset of the hearing I placed upon the record the factors which I considered in declining to exercise my discretion to require that Bailey be produced in person for the evidentiary hearing.  *See* Tr. 3.

[9]     Attorney Michael J. Sciotti, Esq., of the firm of Hancock & Estabrook, LLP, was appointed in January 2012 to represent the plaintiff in this action, *pro bono,* at the hearing.  The court wishes to express its thanks to Attorney Sciotti and his co-counsel, Robert Thorpe, Esq., for their energetic and diligent efforts on behalf of the plaintiff.

force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.

Ct. 983, 992 (2002).   An inmate plaintiff's complaint is subject to dismissal

if the evidence establishes that he or she failed to properly exhaust

available remedies prior to commencing the action, his or her complaint is

subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL

2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also*

*Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the

PLRA requires "proper exhaustion" of available remedies).  "Proper

exhaustion" requires a plaintiff to procedurally exhaust his or her claims by

"compl[ying] with the system's critical procedural rules."  *Woodford*, 548

U.S. at 95, 126 S. Ct. at 2388; *see also Macias*, 495 F.3d at 43 (citing

*Woodford*).  Complete exhaustion has not occurred, for purposes of the

PLRA, until all of the steps of that available process have been taken.

*Macias*, 495 F.3d at 44; *see also Johnson v. Rowley*, 569 F.3d 40, 45 (2d

Cir. 2009); *Strong v. Lapin*, No. 90-CV-3522, 2010 WL 276206, at *4

(E.D.N.Y. Jan. 15, 2010) ("Until the BOP'S Central Office considers the

appeal, no administrative remedy is considered to be fully exhausted.").

    In a series of decisions rendered since the enactment of the PLRA,

the Second Circuit has crafted a three-part test for determining whether

dismissal of an inmate plaintiff's complaint is warranted in the event of a failure to satisfy the PLRA's exhaustion requirement. *Macias,* 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004). Under the prescribed rubric, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times. *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686. If such a remedy existed and was available, the court must next examine whether the defendant should be deemed to have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it, or whether, through the defendant's own actions preventing the plaintiff from exhausting otherwise available remedies, he or she should be estopped from asserting failure to exhaust as a defense. *Id.* In the event the proffered defense survives these first two levels of scrutiny, the court must determine whether the plaintiff has established the existence of special circumstances sufficient "to justify the failure to comply with applicable administrative procedural requirements.[10,11] *Id.*

---

[10] In *Macias*, which, like this action, involved an Eighth Amendment claim under *Bivens*, as well as claims under the Federal Court Claims Act, 28 U.S.C. § 2671 *et seq.*, defendants asserted that plaintiff's complaint was subject to dismissal under the PLRA based upon his failure to exhaust available administrative remedies. *Macias*, 495 F.3d at 40. Reiterating the importance of exhaustion in both a substantive and a procedural sense, the Second Circuit concluded that, while a prisoner may have substantively exhausted remedies by making informal complaints regarding the

B.    <u>Burden of Proof</u>

Before applying the foregoing legal principles, I must first consider

who bears the burden of proof, and whether that burden shifts throughout

the analysis prescribed under *Hemphill*.

As an affirmative defense, *Jones v. Bock*, 549 U.S. 199, 216, 127 S.

Ct. 910 (2007), exhaustion is a claim upon which the party asserting it

typically bears the ultimate burden of proving its essential elements by a

preponderance of the evidence.  *Soria v. Girdich,* No. 9:04-CV-727, 2007

WL 4790807, at *2 (N.D.N.Y. Dec. 2007) (DiBianco, M.J.) (citing  *McCoy*

*v. Goord*, 255 F. Supp. 2d 233, 247 (S.D.N.Y. 2003)); *McEachin v. Selsky*,

---

conditions at issue, the PLRA, as illuminated by *Woodford*, 548 U.S. 81, 126 S. Ct. 2378*,* requires proper procedural exhaustion through the available grievance channels. *Id.* at 41.  The court left open, however, the possibility that, notwithstanding the Supreme Court's decision in *Woodford*, a defendant could be precluded from asserting failure to exhaust available administrative remedies in the event of a finding that threats by prison officials may have deterred compliance with the PLRA exhaustion requirements, including under *Hemphill*.  *Id.* at 44-45.  The court in *Macias* also noted that the plaintiff in that case did not assert that the available internal remedial scheme was so confusing as to excuse his failure to avail himself of that process, thereby obviating the need for the court to determine what effect, if any, *Woodford* would have upon the *Hemphill* holding to the effect that a reasonable misinterpretation of the available scheme could justify an inmate's failure to follow the procedural rules.  *See* *Amador v. Superintendents of Dep't of Correctional Serv.*, No. 03 CIV. 0650 (KTD/CWG), 2007 WL 4326747, at *6 (S.D.N.Y. Dec. 4, 2007).  It therefore appears that the teachings of *Hemphill* remain intact, at least with regard to the first two points of inquiry.  *Id.* at *7.

[11]    In practicality, these three prongs of the prescribed test, though perhaps intellectually distinct, plainly admit of significant overlap.  *See Hargrove*, 2007 WL 389003, at *8 n.14; *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

No. 9:04-CV-83(FJS/RFT), 2005 WL 2128851, at *4 (N.D.N.Y. Aug. 30, 2005) (Scullin, C.J.) (citing *Howard v. Goord*, No. 98-CV-7471, 1999 WL 1288679, *3 (E.D.N.Y. Dec. 28, 1999)), *aff'd in part, vacated in part*, 225 F. App'x 36 (2d Cir. 2007). The issue is somewhat complicated, however, by consideration of the three-part analysis mandated by *Hemphill* and related cases because that line of cases incorporates concepts – such as estoppel, for example – that typically require the party asserting them to bear the ultimate burden of proof. *See e.g., Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007) ("The plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel . . . ."); *In re Heflin*, 464 B.R. 545, 554 (D. Conn. 2011) ("The burden of providing every element of an estoppel is upon the party seeking to set up the estoppel.") (citing *Comm'r v. Union Pac. R.R. Co.*, 86 F.2d 637, 640 (2d Cir.1936)).

Also complicating matters is the fact that several courts have held that once a defendant satisfies the burden of demonstrating that an inmate has failed to exhaust administrative remedies, it then becomes incumbent upon the plaintiff to counter with a showing of unavailability, estoppel, or special circumstances. *See, e.g., Murray v. Palmer*, No. 9:03-CV-1010

(GTS/GHL), 2010 WL 1235591, at * 4 and n.17 (N.D.N.Y. Mar. 31, 2010) (Suddaby, J.); *see also Calloway v. Grimshaw*, No. 9:09-CV-1354, 2011 WL 4345299, at *5 and n.5  (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.) (citing cases); *report and recommendation adopted*, 2011 WL 4345296 (N.D.N.Y. Sep. 15, 2011) (McAvoy, S.J.); *Cohn v. KeySpan Corp.*, 713 F. Supp. 2d 143, 155 (E.D.N.Y. 2010) (finding that, in the employment discrimination context, defendants bear the burden of establishing the affirmative defense of failure to timely exhaust his administrative remedies, but once defendants have done so, the plaintiff must plead and prove facts supporting equitable avoidance of the defense.).  Those decisions, while referencing the burden of proof on an affirmative defense, seem to primarily address an inmate's burden of *production*, or of going forward, to show facts that would form the basis for finding of unavailability, estoppel, or a finding of special circumstances, rather than speaking to the ultimate burden of *persuasion*.

I have been unable to uncover any cases squarely holding that the defendant bears the ultimate burden of proof with regard to all elements of a *Hemphill* analysis.  In the final analysis, however, *Hemphill* addresses all of the elements a court is required to consider when analyzing an

exhaustion defense. *See Macias*, 495 F.3d at 41 ("In *Hemphill* we "read together" [a series of cases] and formulated a three-part *test* . . . .") (emphasis added). Therefore, I recommend a finding that, while the burden of production may shift to the plaintiff when a court undertakes a *Hemphill* analysis, the ultimate burden of proof with respect to the exhaustion defense remains, at all times, with the defendant. *See Soria*, 2007 WL 4790807, at *2 ("[A]s with other affirmative defenses, the defendant has the burden of proof to show that plaintiff failed to exhaust his administrative remedies.").

C.    Application of Governing Legal Principles

1.    Availability of Administrative Remedy

In this instance, the question of whether the ARP was available to Bailey is at the heart of the exhaustion analysis. The hearing testimony confirmed, and Bailey admitted, that at all times relevant to this litigation, there was an inmate grievance procedure in place at FCI Ray Brook. This, however, does not necessarily mean that it was "available" to the plaintiff.

Bailey contends that the grievance process was not available to him in light of the alleged refusal of prison officials to provide him with the

forms necessary to file an ARR and pursue the grievance to culmination.

Having considered the competing testimony, however, I conclude that

Fortier has established, by a preponderance of the evidence, that the

forms necessary to pursue a grievance in accordance with the ARP in

place at FCI Ray Brook were available to Bailey through several sources,

but were not requested. As such, Fortier has satisfied the first *Hemphill*

factor.

2.    <u>Presentation of Defense/Estoppel</u>

The focus of the second prong of the *Hemphill* analysis is upon

"whether the defendants may have forfeited the affirmative defense of

non-exhaustion by failing to raise or preserve it, or whether the

defendants' own actions inhibiting the inmate's exhaustion of remedies

may estop one or more of the defendants from raising the plaintiff's failure

to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted).

In her answer, Fortier raised exhaustion as a defense in a timely fashion.

*See* Answer (Dkt. No. 22) Second Defense ("Plaintiff clearly failed to

exhaust his administrative remedies, as required by the Prison Litigation

Reform Act, 42 U.S.C. § 1997e(a)."). Bailey argues, however, that his

failure to follow the prescribed grievance process was a direct result of the

refusal of prison officials to cooperate in his efforts to grieve the matter.

"'Generally, a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of other individuals.'" *Atkins v. Menard*, No. 9:11-CV-9366, 2012 WL 4026840, at *3 (N.D.N.Y. Sept. 12, 2012) (Suddaby, J.) (citing *Murray*, 2010 WL 1235591, at *5 and n.26 (collecting cases)). Put differently, a plaintiff must allege that a defendant named in the lawsuit acted to interfere with his ability to exhaust in order to establish a basis to estop that defendant from invoking the exhaustion defense. *Calloway*, 2011 WL 4345299, at *4 (citing *Bennett v. James*, 737 F. Supp. 2d 219, 226 (S.D.N.Y. 2010), *aff'd*, 441 F. App'x 816 (2d Cir. 2011)) (other citations omitted).

The question of whether, in this instance, prison officials should be estopped from asserting failure to exhaust as an affirmative defense as a result of their conduct is inextricably intertwined with the question of availability of the remedy. Assuming, however, that this presents a distinct inquiry, the court must examine whether, through her conduct, Fortier has provided a basis to estop her from asserting an exhaustion defense.

In this instance, Bailey does not allege that Fortier engaged in a

campaign to preclude him from filing a grievance regarding her actions. Instead, his focus is upon the alleged refusal of other officials at FCI Ray Brook to provide him with necessary forms and cooperate in his efforts to present his grievance against Fortier.  Accordingly, Bailey has failed to present any evidence that would support an estoppel against the defendant from raising the issue of exhaustion.  *Atkins*, 2012 WL 4026840, at * 3.  Therefore, I conclude that Fortier has proven, by a preponderance of the evidence, that she did not, through her own actions, preclude Bailey from taking advantage of the ARP and therefore should not be estopped from asserting the defense.

### 3.    Special Circumstances

The third, catchall factor that must be considered under the Second Circuit's prescribed exhaustion rubric centers upon whether special circumstances sufficient to justify excusing the plaintiff's failure to exhaust administrative remedies have been demonstrated.  *Hemphill,* 380 F.3d at 689; *see also Giano,* 380 F.3d at 676-77; *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test is where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of

prison officials and leads him or her to conclude that the dispute is not grievable. *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*). Special circumstances may also exist when a facility's "[f]ailure to provide grievance deposit boxes, denial of forms and writing materials, and a refusal to accept or forward plaintiff's appeals-which effectively rendered the grievance process unavailable to him." *Murray,* 2010 WL 1235591, at *6 (quoting *Sandlin v. Poole,* 488 (W.D.N.Y. 2008) (noting that "[s]uch facts support a finding that defendant's are estopped from relying on exhaustion defense as 'special circumstances' excusing plaintiff's failure to exhaust")).

During the evidentiary hearing, Bailey testified to his awareness of the existence of the ARP at FCI Ray Brook. *See, e.g.,* Tr. 102. Bailey's testimony regarding his alleged efforts to secure the forms necessary to pursue the grievance plainly evidences his knowledge of the requirement that he exhaust available administrative remedies, and negates a finding of any reasonable belief on his part that the dispute in issue was not grievable and could not have been presented through the BOP's internal grievance process. Accordingly, again allocating the ultimate burden of proof on the issue of special circumstances to the defendant, I

nonetheless conclude that she has demonstrated, by a preponderance of the evidence, the absence of any special circumstances that would serve to excuse plaintiff's failure to exhaust administrative remedies.

IV.    SUMMARY AND RECOMMENDATION

The credible testimony and evidence adduced at the recent hearing, held to address the merits of defendant's exhaustion defense, establishes that (1) Bailey failed to avail himself of the BOP grievance process, which was available to him, before commencing this action; (2) Fortier did not, through her actions, preclude Bailey from filing a grievance regarding the claims set forth in his complaint, or otherwise engage in conduct for which she should be estopped from asserting failure to exhaust as an affirmative defense; and (3) Bailey has offered no special circumstances warranting that he be excused from the PLRA's exhaustion requirement.  Accordingly, it is therefore hereby respectfully

RECOMMENDED, that plaintiff's complaint in this action be DISMISSED, based upon his failure to comply with the exhaustion requirements of 42 U.S.C. § 1997e(a).

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections must be filed with the Clerk of the Court within FOURTEEN days of service of this report.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.


Dated:      October 4, 2012
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge